CULLEN AND DYKMAN, LLP
Michelle McMahon
44 Wall St.
New York, NY 10282
212-510-2296
mmcmahon@cullenanddykman.com

Thomas R. Slome
100 Quentin Roosevelt Boulevard
Garden City, New York 11530-4850
516-296-9165
tslome@cullenanddykman.com

Attorneys for Newell Funding, LLC

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

In re:

Bronx Miracle Gospel Tabernacle Word
of Faith Ministries, Inc.,

Debtor.

-------------------------------------------------------------X

Chapter 11
Case No.: 19-12447 (SMB)

### DECLARATION OF BRUCE MINKOFF

    I, BRUCE MINKOFF, hereby declare, pursuant to the penalties of perjury under 28

U.S.C.§ 1746, that the following statements are true and correct:

    1.     I am associated with Robinowitz Cohlan Dubow & Doherty LLP ("RCD&D"),

co-counsel for Newell Funding, LLC ("Newell"), a secured creditor of Debtor Bronx Miracle

Gospel Tabernacle Word of Faith Ministries, Inc. f/k/a Bronx Miracle Gospel Tabernacle, Inc.

(the "Debtor"). I make this Declaration in support of Newell's motion for appointment of a

Trustee under section 1104(a)(1) and (2) of the Bankruptcy Code and granting Newell relief

from the Stay under 362(d)(1), (2) and (4) of the Bankruptcy Code (the "Motion"). Capitalized

terms used but not defined in this Declaration shall have the meanings ascribed to them in the Motion.

2.       RCD&D served as counsel for Newell with respect to each of the legal proceedings set forth below. I am fully familiar with the facts and circumstances set forth herein.

**The Mortgage**

3.       On March 6, 2008, Newell made a loan to the Debtor in the principal amount of $425,000 (the "Loan") secured by a mortgage (the "Mortgage") upon the real property at 2910 Barnes Avenue, Bronx, New York, 10467 (the "Property"). The Loan matured on March 5, 2009. The Debtor did not repay the Loan.

4.       The Debtor's principal, Rev. Dr. Keith Elijah Thompson ("Rev. Thompson") and his wife, Yvonne Thompson, guaranteed the Loan (the "Guarantors").

**The Foreclosure Action**

5.       On January 23, 2015, Newell commenced a mortgage foreclosure action and was granted a judgment of foreclosure on March 2, 2017 (the "Judgment"), which determined that the amount owed to Newell was $1,196,033.99, together with interest from October 16, 2015 and additional amounts provided for in the Judgment. A copy pf the Judgment is attached hereto as Exhibit A. The first foreclosure sale date for the Property was scheduled for May 22, 2017. The Debtor sought and was denied a stay of the sale on May 19, 2017 by the State Court Judge who had granted the Judgment. On the day of the sale, the Debtor filed its first bankruptcy case.

**The Debtor's Prior Bankruptcy Case and Vacatur of the Automatic Stay**

6.       On May 22, 2017, the Debtor filed its first voluntary petition seeking relief under Chapter 11 of the Bankruptcy Code (the "First Chapter 11"), docketed as Case No. 17-11395 (SMB).

7. The Debtor did not initially retain counsel and did not timely file its schedules or statement of financial affairs (a "SOFA"). As a result, on June 9, 2017, the Office of the United States Trustee (the "U.S. Trustee") filed a motion to dismiss the Debtor's bankruptcy case for cause. The U.S. Trustee dismissed the motion when the Debtor retained counsel and filed its schedules and SOFA in July 2017.

8. The Debtor was also delinquent in filing its monthly operating reports. It did not file its monthly operating reports for the first four months of its First Chapter 11 until October 2017.

9. Other than setting a deadline to file proofs of claim, the Debtor took no other action to progress its bankruptcy case or formulate or confirm a plan of reorganization.

10. After six months of no affirmative action in the First Chapter 11, Newell filed a motion for relief from the automatic stay. The Debtor did not oppose the relief requested and on December 13, 2017, the motion was granted.

**The Second Scheduled Foreclosure Sale and Further State Court Action**

11. On December 14, 2017, after Newell was granted relief from the automatic stay in the Debtor's First Chapter 11 and while the Debtor's First Chapter 11 was still open, Newell noticed the second sale date for the Property for February 5, 2018.

12. On February 2, 2018, the Debtor filed an order to show cause in State Court initiating a motion to vacate the Judgment and sought to stay the sale. The State Court Judge assigned to the case who had granted the Judgment and denied May 2017 stay application, Justice Barbato, was not available to hear the February 2018 stay application. The stay application was presented to a different State Court Judge who, having no familiarity with the case, granted the application and stayed the sale, resulting in cancellation of the sale.

13.     The Debtor's motion to vacate the Judgment was ultimately decided by Justice Barbato, who denied the motion and lifted the stay by order issued on April 26, 2018 and entered on May 7, 2018 (the "April 2018 Decision"). In its April 2018 Decision, the State Court rejected the Debtor's attempt to vacate the foreclosure and to bring claims against Newell. A copy of the April 2018 Decision is attached hereto as Exhibit B.

14.     As more fully discussed below, on May 9, 2018, Newell noticed a third foreclosure sale date for the Property for June 25, 2018. Two days before sale, Rev. Thompson filed a personal bankruptcy case.

**Activity in the First Chapter 11 After the Stay Was Vacated**

15.     On January 8, 2018, the U.S. Trustee filed its second motion to dismiss the Debtor's First Chapter 11. The U.S. Trustee based its motion on the facts that Newell had been granted relief from the stay to exercise its right under the Judgment to sell the Property, there was a continuing loss to the estate and no likelihood of rehabilitation.

16.     On May 24, 2018, the Court granted the U.S. Trustee's motion and dismissed the Debtor's First Chapter 11 [Dkt. No. 64] (the "Dismissal Decision"). A copy of the Dismissal Decision is attached hereto has Exhibit C. In the Dismissal Decision, the Court rejected the Debtor's claims that it could rehabilitate because it could successfully challenge the Judgment and assert claims against Newell and that it also had malpractice claims against its attorney in the foreclosure proceeding (the "Malpractice Claims"). The Court held that the Debtor's ability to contest the Judgment and its claims against Newell had been adjudicated by the State Court and denied. *Id.* at 5. The Court held that as a result the Debtor could not base its rehabilitation on its claims against Newell. *Id.* Moreover, the Court held that the Debtor's alleged Malpractice Claims are speculative and could not be liquidated to fund a successful reorganization within a

4

reasonable time. *Id.*

**The Third Scheduled Foreclosure Sale**

17.     On June 22, 2018, the Debtor presented yet another order to show cause to the State Court, this time seeking a stay of the foreclosure sale scheduled for June 25, 2018 at 2:00 p.m. and to initiate another motion to vacate the foreclosure Judgment. The order to show cause did not disclose the previous motion to vacate the Judgment which had been denied by the order issued on April 26, 2018 and entered May 7, 2018.

18.     Justice Barbato was not available to hear the stay application, so the stay application was presented to a State Court Judge who had no familiarity with the matter. The Judge to whom the application was presented denied the stay request, but signed the order to show cause, thereby initiating another motion to vacate the Judgment. The Judge made the order to show cause returnable on June 25, 2018 at 9:30 a.m. so that Justice Barbato could decide the stay request before the scheduled time for the sale.

19.     I appeared in the State Court on June 25, 2018. While I was waiting for the case to be called, I found out that Rev. Thompson, who was at the time a Guarantor of the Loan, had filed a voluntary petition for bankruptcy relief, as discussed below, which stayed the sale scheduled for June 25, 2018.

20.     When the case was called on June 25, 2018 and Justice Barbato was informed of the bankruptcy filing, he marked the motion as stayed and instructed the attorneys to notify the court when the bankruptcy stay was lifted so that a new return date for the motion and a schedule for submission of papers could be set.

**Rev. Thompson's Personal Bankruptcy and Vacatur of the Automatic Stay**

21.     On June 22, 2018, Rev. Thompson filed a voluntary petition for relief under

Chapter 7 of the Bankruptcy Code, docketed as Case No. 18-11898 (MEW).

22.    On September 5, 2018, Newell filed a motion for relief from the automatic stay. Rev. Thompson did not oppose the relief requested and on October 2, 2018, the motion was granted. The order granting this relief also released Rev. Thompson from his guaranty.

**Further State Court Action and Fourth Scheduled Foreclosure Sale**

23.    After relief from the stay was granted in Rev. Thompson's bankruptcy case, a return date for the motion to vacate the Judgment which had been initiated by the order to show cause signed on June 22, 2018 and stayed by Rev. Thompson's bankruptcy case was scheduled for November 26, 2018.

24.    Newell opposed the motion and cross-moved to dismiss the Guarantors from the foreclosure proceeding and to release their guaranties. By Order dated May 3, 2019 and entered on May 7, 2019, the Debtor's motion was denied, Newell's cross-motion was granted, the Guarantors were dismissed from the foreclosure proceeding and the guaranties were released (the "May 2019 Decision"). A copy of the May 2019 Decision is attached hereto as Exhibit D.

25.    On June 14, 2019, Newell noticed the fourth sale date for the Property for July 29, 2019. The day before the sale, the Debtor filed this case staying the sale of the Property yet again.

**The Debtor's Alleged Claims Against Newell and Efforts to Vacate the Judgment**

26.    The Debtor has repeatedly tried to assert claims against Newell related to the foreclosure and to vacate the foreclosure, which have been rejected multiple times by the State Court and were rejected by this Court. In its Dismissal Decision, this Court held that such claims were foreclosed by the Judgment. The Court also noted that the Debtor nonetheless attempted to bring such claims and vacate the Judgment before the State Court, and both were denied by the

State Court each time. The State Court specifically found that the Court had heard and denied such claims when it issued its original summary judgment ruling resulting in the Judgment and that the Debtor did not allege any new facts that would entitle it to relief from that judgment. After Debtor's First Chapter 11 case was dismissed, the issues were raised again and denied by the May 2019 Order.

27. The Debtor's allegations against Newell were raised multiple times in State Court and are barred by at least three separate determinations by the State Court – the Judgment, the April 2018 Decision and the May 2019 Decision. The same allegations were also raised before this Court in its First Chapter 11 and were rejected in the Dismissal Decision. Therefore, Debtor's allegations against Newell are barred by at least four separate judicial determinations.

28. Although the Debtor has scheduled claims totaling $2.8 million held by 829 Holding Corp. and Keysss Corp.,[1] who are also listed as co-debtors on a debt owed to Newell on Schedule H, I am not aware of any current liability owed to Newell or the Debtor by those entities.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 5, 2019

BRUCE MINKOFF

---

[1] Upon information and belief this is a typo and the correct spelling of the entity name is Kyesss Corp.

# EXHIBIT A

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

United Lawyers

NEWELL FUNDING, LLC,

                              Plaintiff,

              -against-

BRONX MIRACLE GOSPEL TABERNACLE WORD OF
FAITH MINISTRIES, INC. F/K/A BRONX MIRACLE
GOSPEL TABERNACLE, INC., NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD, APPROVED
OIL CO., KEITH ELIJAH THOMPSON, AND YVONNE
M. THOMPSON,

                              Defendants.

Index No. 380007/15
Date filed: 1/23/15

JUDGMENT OF
FORECLOSURE AND SALE
WITH NOTICE OF ENTRY

        PLEASE TAKE NOTICE that the within is a true copy of the Judgment of Foreclosure

and Sale entered in the office of the Clerk of the County of Bronx on March 3, 2017.

Dated: White Plains, New York
       March 15, 2017

                              ROBINOWITZ COHLAN DUBOW & DOHERTY LLP

              By:     _____

                              JOHN T. DOHERTY, ESQ.
                              Attorneys for Plaintiff
                              199 Main Street
                              White Plains, New York 10601
                              (914) 949-2826

OFFICE OF THE
BRONX COUNTY CLERK
RECORD ROOM
2017 MAR 17 A 10: 03

1

TO:

Ira Clair, Esq.
Clair & Gjertsen, Esqs.
Attorneys for Defendants Bronx Miracle Gospel Tabernacle
Word of Faith Ministries, Inc. f/k/a Bronx Miracle Gospel Tabernacle, Inc.
Keith Elijah Thompson and Yvonne M. Thompson
720 White Plains Road
Scarsdale, New York 10583


Approved Oil Co.
6717 Fourth Avenue
Brooklyn, New York 11220

New York City Environmental Control Board
City Corporation Counsel
100 Church Street
New York, New York 10007

**PART 21**

| Case Disposed | ☐ |
| Settle Order | ☐ |
| Schedule Appearance | ☐ |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX:

------------------------------------------------------------X

NEWELL FUNDING, LLC

          -against-

BRONX MIRACLE GOSPEL

------------------------------------------------------------X

Index №.   **0380007/2015**

Hon..**HON, BEN R. BARBATO** ,

                Justice.

The following papers numbered 1 to _____ Read on this motion, **JUDGMENT OF FORECLOSURE & SALE**
Noticed on **December 10 2015** and duly submitted as No. _____ on the Motion Calendar of _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion - Order to Show Cause - Exhibits and Affidavits Annexed | |
| Answering Affidavit and Exhibits | |
| Replying Affidavit and Exhibits | |
|                 Affidavits and Exhibits | |
| Pleadings - Exhibit | |
| Stipulation(s) - Referee's Report - Minutes | |
| Filed Papers | |
| Memoranda of Law | |

Upon the foregoing papers this

Motion is Respectfully Referred to:
Justice:
Dated:

**Motion is decided in accordance
with memorandum decision filed
herewith**.

Dated: **8 / 2 / 17**

Hon. _____
            **HON. BEN R. BARBATO, J.S.C.**

At an IAS Part of the Supreme Court of the
State of New York in and for the County of
Bronx at the Courthouse, located at 851
Grand Concourse, Bronx, New York 10451
on the _2_ day of __March__, 201 7

PRESENT:

    HON. BEN R. BARBATO
    <u>JUSTICE OF THE SUPREME COURT</u>

---

NEWELL FUNDING, LLC,

                      Plaintiff,

    -against-

BRONX MIRACLE GOSPEL TABERNACLE WORD OF
FAITH MINISTRIES, INC. F/K/A BRONX MIRACLE
GOSPEL TABERNACLE, INC., NEW YORK CITY
ENVIRONMENTAL CONTROL BOARD, APPROVED OIL
CO., KEITH ELIJAH THOMPSON, YVONNE M.
THOMPSON, "JOHN DOE #1" through "JOHN DOE #10",
the names of the last ten Defendants being fictitious, the true
identity being unknown to the Plaintiff and intended to be
tenants and persons in possession of the premises described in
the complaint or having or claiming an interest upon the
mortgaged premises described in the complaint,

                      Defendants.

Index No. 380007/15
Date Filed: 1/23/15

JUDGMENT OF
FORECLOSURE AND
SALE

RECEIVED BY:

MAR 03 2017

Judgment Department

---

    ON reading the Summons, Verified Complaint, and Notice of Pendency in this action duly

filed herein on January 23, 2015 and upon all proceedings had herein; and on reading and filing the

Affirmation of Regularity of John T. Doherty, Esq., dated November 16, 2015 showing that all of

the Defendants herein have been duly served within this State with the Summons and Verified

Complaint in this action; that Defendant Bronx Miracle Gospel Tabernacle Word of Faith Ministries,

Inc., Defendant Keith Elijah Thompson, Defendant Yvonne M. Thompson having served an Answer

1

with Affirmative Defenses and Counterclaims; Defendant New York City Environmental Control Board and Defendant Approved Oil Co. having defaulted in pleading and appearance, and as to those Defendants who have been duly served with the Summons and Verified Complaint and who have not appeared herein, more than thirty days having elapsed since service upon them was complete; and no answer or motion directed to the Complaint, or otherwise, having been interposed by or on behalf of any Defendant; and that the time to do so has not been extended by consent or by Order of this Court; and that no Defendant is an infant, incompetent, absentee or is in the military service; and the Notice of Pendency filed herein on January 23, 2015 contains correctly and truly all of the particulars required by law to be stated in such notice; and upon the Order of Reference entered in this action on October 7, 2015 appointing Lisa Beth D'Alessio, Esq. as Referee in this action to ascertain and compute the amount due, and to examine and report whether the mortgaged premises should be sold in one or more parcels; and on reading and filing the Referee's Oath and Report of Computation dated October 29, 2015 from which it appears that the sum of $1,196,033.99 was due to the Plaintiff as of October 15, 2015, and that the mortgaged premises may be sold in one parcel,

NOW ON Motion of ROBINOWITZ COHLAN DUBOW & DOHERTY LLP, the attorneys for the Plaintiff, it is

ORDERED that the motion is granted, and it is further

ORDERED, ADJUDGED AND DECREED, that the Report of Referee of Lisa Beth D'Alessio, Esq., Referee, dated October 29, 2015 be and hereby is in all respects ratified and confirmed; and it is further

2

ORDERED, ADJUDGED AND DECREED that the mortgaged premises described in the complaint in this action and as hereafter described, or such part thereof as may be sufficient to discharge the mortgage debt, the expenses of the sale and the costs of this action as provided by the Real Property Actions and Proceedings Law be sold, in one parcel, at public auction at Bronx Supreme Court, 851 Grand Concourse, Bronx, New York in Room 600 at 2:00 on any Monday, *EXCEPT Holidays* by and under the direction of Lisa Beth D'Alessio, Esq. is hereby appointed Referee for that purpose; that the said Referee give public notice of the time and place of such sale in accordance with RPAPL §231 in ~~the~~ New York Law *Journal AND Bronx Press Review* and that the plaintiff or any other parties to this action may become the purchaser or purchasers at such sale; that in case the plaintiff shall become the purchaser at the said sale, plaintiff shall not be required to make any deposit thereon; that said Referee execute to the purchaser or purchasers on such a sale a deed of the premises sold; that in the event a party other than the plaintiff becomes the purchaser or purchasers at such sale, the closing of title shall be had thirty days after such sale unless otherwise stipulated by all parties to the sale; and it is further

ORDERED, ADJUDGED AND DECREED, that said Referee on receiving the proceeds of such sale shall forthwith pay therefrom, in accordance with their priority according to law, the taxes, assessments, sewer rents or water rates which are or may become liens on the premises at the time of sale with such interest or penalties which may have lawfully accrued thereon to the date of payment; and it is further

ORDERED, ADJUDGED AND DECREED, that the Referee then deposit the balance of said proceeds of sale in his/her own name as Referee in *AN FDIC-INSURED BANK OF THE STATE OF New York REFEREE'S CHOICE WITHIN THE*; and shall thereafter make the following payments and his/her

3

checks drawn for the purpose shall be paid by said depository:

FIRST: The statutory fees of said Referee in the sum of $ 750. xx/100

SECOND: The expenses of the sale and the advertising expenses as shown on the bills presented and certified by said Referee to be correct, duplicate copies of which shall be annexed to the Report of Sale.

THIRD: Said Referee shall also pay to the plaintiff or plaintiff's attorney the sum of $ 1655.00 adjudged to the plaintiff for costs and disbursements in this action to be taxed by the clerk and inserted herein, with interest thereon from the date hereof, together with an additional allowance of $ 300 xx/100 hereby awarded to the plaintiff in addition to costs, with interest thereon from the date hereof, and also the sum of $1,196,033.99, the said amount so reported due as aforesaid, together with interest thereon from October 16, 2015 at the contract rate set forth in the Promissory Note, together with $ 14,500.00 hereby awarded to the plaintiff as reasonable legal fees herein, together with any advances as provided for in the note and mortgage, which plaintiff has made for taxes, insurance, principal and interest and any other charges due to prior mortgage, or to maintain the premises pending consummation of this foreclosure sale, not previously included in the computation and upon presentation of receipts for said expenditures to the Referee, all together with interest thereon computed at the rate provided for in the note and mortgage foreclosed herein.

4

FOURTH:    If such Referee intends to apply for a further allowance for his/her fees in addition to those provided for herein, an application shall be made to the court therefor upon due notice to those parties entitled thereto.

That in case the plaintiff be the purchaser of said mortgaged premises at said sale, or in the event that the rights of the purchasers at said sale and the terms of sale under this judgment shall be assigned to and be acquired by the plaintiff, and a valid assignment thereof filed with said Referee, said Referee shall not require the plaintiff to pay in cash the entire amount bid at said sale, but shall execute and deliver to the plaintiff or its assignee, a deed or deeds of the premises sold upon the payment to said Referee of the amounts specified above in items marked "FIRST" and "SECOND" and the amounts of the aforesaid taxes, assessments, sewer rents and water rates, with interest and penalties thereon, or in lieu of the payment of said last mentioned amounts, upon filing with said Referee receipts of the proper municipal authorities showing payment thereof, that the balance of the amount bid, after deducting therefrom the aforesaid amounts paid by the plaintiff for Referee's fees, advertising expenses, taxes, assessments, sewer rents and water rates shall be allowed to the plaintiff and applied by said Referee upon the amounts due to the plaintiff as specified in item marked "THIRD"; that if after so applying the balance of the amount bid, there shall be a surplus over and above the said amounts to the plaintiff, the plaintiff shall pay to the said Referee, upon delivery to plaintiff of said Referee's deed, the amount of such surplus, that said Referee on receiving said several amounts from the plaintiff shall forthwith pay therefrom said taxes, assessments, sewer rents, water rates, with interest and penalties thereon, unless the same have already been paid, and shall then deposit the balance.

That said Referee take the receipt of the plaintiff or plaintiff's attorney for the amounts paid as hereinbefore directed in item marked "THIRD", and file it with his/her report of sale; that he/she deposit the surplus monies, if any, with the Bronx County Clerk within five days after the same shall be received and be ascertainable, to the credit to this action, to be withdrawn only on the order of the court, signed by a Justice of the Court; that said Referee make his/her report of such sale under oath showing the disposition of the proceeds of the sale and accompanied by the vouchers of the person to whom the payment were made and file it with the Bronx County Clerk within thirty days after completing the sale and executing the property conveyance to the purchaser and that if the proceeds of such sale be insufficient to pay the amount reported due to the plaintiff with interest and costs as aforesaid, the plaintiff shall recover from Defendant Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. f/k/a Bronx Miracle Gospel Tabernacle, Inc. who became the owner of the Note and Mortgage and Defendants Keith Elijah Thompson and Yvonne M. Thompson, who executed the General Guaranty, the whole deficiency or so much thereof as the Court may determine to be just and equitable of the residue of the mortgaged debt remaining unsatisfied after a sale of the mortgaged premises and the application of the proceeds thereof, provided a motion for a deficiency judgment shall be made as prescribed by section 1371 of the Real Property Actions and Proceedings Law within the time limited therein, and the amount thereof is determined and awarded by an order of this Court as provided for in said section; and it is further,

ORDERED, ADJUDGED AND DECREED, that the purchaser or purchasers at said sale be let into possession on production or delivery of the Referee's deed or deeds; and it is further;

6

**ORDERED, ADJUDGED AND DECREED**, that each and all of the defendants in this action and all persons claiming under them, or any or either of them, after the filing of such notice of pendency of this action, be and they are hereby forever barred and foreclosed of all right, claim, lien, title, interest and equity of redemption in the said mortgaged premises and each and every part thereof; and it is further;

**ORDERED, ADJUDGED AND DECREED**, that said premises are to be sold in "as is" physical order and condition, subject to any state of facts that an inspection of the premises would disclose; any state of facts that an accurate survey of the premises would show; any covenants, restrictions, declarations, reservations, easements, rights of way and public utility agreements of record, if any, any building and zoning ordinances of the municipality in which the mortgaged premises are located and possible violations of same, any rights of tenants or person in possession of the subject premises; prior lien(s) of record, if any, except those liens addressed in section 1354 of the Real Property Actions and Proceedings Law; and equity of redemption of the United States of America to redeem the premises within 120 days from the date of sale; and it further

**ORDERED**, that a copy of this Judgment with Notice of Entry shall be served upon the owner of the equity of redemption, any tenants named in this action and any other party entitled to notice.

7

The mortgaged premises to be foreclosed herein is commonly known as 2910 Barnes

Avenue, Bronx, New York 10467 (Borough and County of Bronx, City and State of New York,

Block 2440, Lot 10). A description of said mortgaged premises is annexed hereto and made a part

hereof as Schedule A.

ORDERED, that the Plaintiff shall serve
a copy of the Notice of Sale upon the
Ex-Parte Office at least ten (10) days
prior to the scheduled sale date.

ENTER,

HONORABLE BEN R. BARBATO
Justice of the Supreme Court

Luis M. Diaz
County Clerk

8

## SCHEDULE A

### DESCRIPTION OF MORTGAGED PREMISES

ALL that certain plot, piece or parcel of land, known and designated as Lots 563, 564, 579 & 580 in Block 0 as shown on map entitled, "Map of the Mace Homestead, situated at Williamsbridge in the 24th Ward, New York City, Borough of the Bronx, made by Douglas Knox, dated June 1, 1910 and filed in the Office of the Register of New York County, as September 23, 1910, as Map No. 1447", which said lots are now more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Barnes Avenue, 50 feet wide distant 100 feet northerly from the corner formed by the intersection of the easterly side of Barnes Avenue with the northerly side of Arnow Avenue, 80 feet wide;

RUNNING THENCE easterly at right angles to the easterly side of Barnes Avenue, 200 feet to the westerly side of Matthews Avenue, 50 feet wide;

THENCE northerly and along the westerly side of Matthews Avenue and parallel with the easterly side of Barnes Avenue, 50 feet;

THENCE westerly at right angles to the last mentioned course, 200 feet to the easterly side of Barnes Avenue;

THENCE southerly along the easterly side of Barnes Avenue, 50 feet to the point and place of BEGINNING.

Index No. _____    Year 20__

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX

NEWELL FUNDING, LLC,

                                                Plaintiff.

— against —

BRONX MIRACLE GOSPEL TABERNACLE WORD OF FAITH MINISTRIES, ET AL.

                                                Defendants.

## JUDGMENT OF FORECLOSURE AND SALE

ROBINOWITZ COHLAN DUBOW & DOHERTY LLP

Attorneys for
                    Plaintiff

199 MAIN STREET
WHITE PLAINS, NEW YORK 10601
(914) 949-2226
FAX (914) 949-2012.

Pursuant to 22 NYCRR 130-1.1-a, the undersigned, an attorney admitted to practice in the courts of New York State, certifies that, upon information and belief and reasonable inquiry, (1) the contentions contained in the annexed document are not frivolous and that (2) if the annexed document is an initiating pleading, (i) the matter was not obtained through illegal conduct, or that if it was, the attorney or other persons responsible for the illegal conduct are not participating in the matter or sharing in any fee earned therefrom and that (ii) if the matter involves potential claims for personal injury or wrongful death, the matter was not obtained in violation of 22 NYCRR 1200.41-a.

Dated: _____         Signature _____

                        Print Signer's Name _____

                                                is hereby admitted.

Service of a copy of the within

Dated: _____

                        Attorney(s) for _____

PLEASE TAKE NOTICE

☐ that the within is a (certified) true copy of a
NOTICE OF   entered in the office of the clerk of the within-named Court on
ENTRY                                                          20

☐ that an Order of which the within is a true copy will be presented for settlement to the
NOTICE OF   Hon.                          , one of the judges of the within-named Court,
SETTLEMENT  at
            on                          20      , at          M

Dated: _____

                        ROBINOWITZ COHLAN DUBOW & DOHERTY LLP
            Attorneys for

                                199 MAIN STREET
                                WHITE PLAINS, NEW YORK 10601
To:

Attorney(s) for

STATE OF NEW YORK, COUNTY OF            ss:

I, the undersigned, am an attorney admitted to practice in the courts of New York, and

□ Attorney's Certification
certify that the annexed

has been compared by me with the original and found to be a true and complete copy thereof.

□ Attorney's Verification by Affirmation

Check Applicable Box
say that: I am the attorney of record, or of counsel with the attorney(s) of record, for

. I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true. My belief, as to those matters therein not stated upon knowledge, is based upon the following.

The reason I make this affirmation instead of         is

I affirm that the foregoing statements are true under penalties of perjury.

Dated:                       _____

*(Print signer's name below signature)*

STATE OF NEW YORK, COUNTY OF            ss:

being sworn says: I am

□ Individual Verification

Check Applicable Box
in the action herein; I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

the                     of

□ Corporate Verification
a corporation, one of the parties to the action; I have read the annexed

know the contents thereof and the same are true to my knowledge, except those matters therein which are stated to be alleged on information and belief, and as to those matters I believe them to be true.

My belief, as to those matters therein not stated upon knowledge, is based upon the following:

Sworn to before me on           , 20         _____

*(Print signer's name below signature)*

_____

STATE OF NEW YORK, COUNTY OF            ss:

being sworn says: I am not a party to the action, am over 18 years of

age and reside at

On                , 20   , I served a true copy of the annexed

in the following manner:

□ Service by Mail

Check Applicable Box
by mailing the same in a sealed envelope, with postage prepaid thereon, in a post-office or official depository of the U.S. Postal Service, addressed to the address of the addressee(s) indicated below, which has been designated for service by the addressee(s) or, if no such address has been designated, is the last-known address of the addressee(s):

□ Personal Service
by delivering the same personally to the persons at the address indicated below:

□ Service by Facsimile
by transmitting the same to the attorney by facsimile transmission to the facsimile telephone number designated by the attorney for that purpose. In doing so, I received a signal from the equipment of the attorney served indicating that the transmission was received, and mailed a copy of same to that attorney, in a sealed envelope, with postage prepaid thereon, in a post office or official depository of the U.S. Postal Service, addressed to the address of the addressee(s) as indicated below, which has been designated for service by the addressee(s) or, if no such address has been designated, is the last-known address of the addressee(s):

□ Service by Electronic Means
by transmitting the same to the attorney by electronic means upon the party's written consent. In doing so, I indicated in the subject matter heading that the matter being transmitted electronically is related to a court proceeding:

□ Overnight Delivery Service
by depositing the same with an overnight delivery service in a wrapper properly addressed, the address having been designated by the addressee(s) for that purpose or, if none is designated, to the last-known address of addressee(s). Said delivery was made prior to the latest time designated by the overnight delivery service for overnight delivery. The address and delivery service are indicated below:

Sworn to before me on           , 20

_____

_____

*(Print signer's name below signature)*

# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
------------------------------------------------------------X
Newell Funding, LLC.,

                                      **MEMORANDUM DECISION**
               Plaintiff(s),           Index No. 380007/2015
   -against-

Bronx Miracle Gospel Tabernacle Word of Faith
Ministries, Inc., f/k/a Bronx Miracle Tabernacle, Inc.,
New York City Environmental Control Board, Approved
Oil Company, Keith Elijah Thompson, Yvonne M.
Thompson, et al.,


               Defendant(s).
------------------------------------------------------------X
HON. BEN R. BARBATO:

## RELIEF SOUGHT

     In this matter, defendant Bronx Miracle Gospel Word of Faith Ministries, Inc ("Bronx
Miracle"), a charitable domestic religious corporation, and individual defendants Keith Elijah
Thompson and Yvonne M. Thompson move to stay the foreclosure sale regarding the premises
located at 2910 Barnes Avenue ("the premises") and to vacate the judgment of foreclosure and
sale previously signed by this court. Bronx Miracle alleges, in essence, that it is the victim of a
fraudulent scheme by the plaintiff Newell Funding, LLC ("plaintiff") to deprive it of these
premises, and certain other properties; further, that the original loan it obtained on the premises
was in violation of Religious Corporation Law ("RCL")12(1) in that the approval of neither a
court, nor the New York State Attorney General was not obtained prior to the transaction.

     Plaintiff opposes and seeks to have the foreclosure sale go forward.

     For the reasons set forth herein, the motion is denied.


## PROCEDURAL HISTORY

     The note and mortgage at issue here were executed on March 6, 2008 relative to the
purchase of the premises, which were to be used as a house of worship by the congregation of
Bronx Miracle, of which defendant Keith Elijah Thompson was the pastor. The note was in the
amount of $425,000, and a mortgage was given to the plaintiff to secure that debt. The note

1

provided for monthly payments at an interest rate of 15%, and the note was to mature in one year.

Plaintiff alleges that Bronx Miracle is in default of its obligations under the note beginning with the payment which was due on September 1, 2008. The instant action was begun by the filing of a summons and complaint and a notice of pendency, on January 23, 2015. Defendant Bronx Miracle, as well as individual defendants Keith Elijah Thompson and Yvonne M. Thompson filed an answer with counterclaims on or about March 19, 2015.

On May 28, 2015, plaintiff moved for summary judgment and an order for a referee to compute. This relief was granted by order of this Court dated October 5, 2015. Plaintiff later moved for a judgment of foreclosure and sale, which was granted by this court pursuant to its order dated March 2, 2017. On May 22, 2017, Bronx Miracle sought to move by order to show cause to stay the sale, but this court declined to sign such order to show cause.

The instant motion was brought by order to show cause dated February 2, 2018, which sought to stay the foreclosure sale which, at that point, was scheduled for February 5, 2018. That order to show cause was signed by a different judge of this court (Franco, J.), who was the "duty judge" at that time.

CONTENTIONS OF THE PARTIES

Bronx Miracle argues that the judgment of foreclosure and sale should be vacated and set aside due to the failure of the plaintiff to comply with RCL §12 (1), which requires approval by the attorney general's office when a house of worship seeks to engage in certain financial transactions. It claims, moreover, that plaintiff engaged in a fraudulent scheme to avoid oversight by the attorney general's office, in an attempt to deprive Bronx Miracle and the Thompson defendants of these premises, as well as two other pieces of property.

Specifically, Bronx Miracle addresses three different pieces of property, which it claims plaintiff is trying to take away as part of this scheme. These properties are 829 Burke Avenue ("829"), a small apartment building; 785 Burke Avenue ("785"), a mixed use building; and the premises at issue here, 2910 Barnes Avenue ("2910"), which is its house of worship , and which had been purchased from the Jewish Center of Williamsbridge when the underlying transaction was entered into.

2

On January 22, 2007, 829 Holding Corporation, a for-profit corporation of which defendant Keith Elijah Thompson was president, took out a loan for $350,000 from the plaintiff, and executed a mortgage to secure that debt, relative to 829. On March 6, 2008, Kyess Corporation, a for-profit corporation of which defendant Keith Elijah Thompson was president, took out a loan for $325,000 from plaintiff and executed a mortgage relative to 785. Also on March 6, 2008, Bronx Miracle, a not-for-profit charitable corporation entered into a loan agreement with plaintiff for $425,000, and executed a mortgage to secure that debt relative to Bronx Miracle's purchase of 2910.

In his affidavit in support of the instant motion, defendant Keith Elijah Thompson states that he is the pastor of the congregation of Bronx Miracle, as well as the president of the other above referenced corporations. He states that after their respective loans were entered into, 829 and 785 were turned over to a management company called "A Place For Everyone" (" the management company"). It was his belief that the rents from 829 and 785 to be collected by the company were to be used to make the mortgage payments on 2910. He claimed that he never was provided with any accounting from the management company, and that he only found out that the payments were not being made when he discovered that both 829 and 785 had been sold by the plaintiff without his consent. He assumed that the mortgage payment for 2910 was being made from the rental receipts from both 829 and 785, because all three loans were interrelated as evidenced by a forbearance agreement he entered into with plaintiff in 2009.

Because of the scheme which he alleges plaintiff has conducted, he argues that it is trying to deprive his congregation of their house of worship located at 2910, which he believes is valued at $4 million.

Plaintiff argues that the "law of the case" precludes Bronx Miracle from obtaining the relief it seeks since these arguments had been made in its opposition to the motion for summary judgment and it is not now, by its own admission, seeking to reargue or renew the decision which granted that motion.

In any event, plaintiff contends that the requirement for oversight by a court or the attorney general, as mandated in RCL §12 (1), is inapplicable here because the transaction which Bronx Miracle entered into was for the purchase of the premises at 2910, the kind of transaction which is specifically exempted from oversight under that section.

3

Plaintiff denies that it is involved in a scheme to take away properties from Bronx Miracle and the individual defendants. Rather, it claims that mismanagement of these properties by the individual defendants has led to certain foreclosures and sales[1]. Both 829 and 785 were never owned by Bronx Miracle and therefore would not have been the subject of attorney general review. The loan taken out on 829 was done by a for-profit corporation of which defendant Keith Elijah Thompson was an officer, which was also the case for the loan taken out on 785, which was a second mortgage. These loans, as well as the one in the instant premises, were all of one-year duration and were designed to be "bridge loans" to allow for different financing to be obtained. The use of corporations was necessary, plaintiff contends, because defendant Keith Elijah Thompson had not filed income tax returns for many years so that financing could not be obtained by him in any other way.

There was no "agreement" that the rental receipts from 829 and 785 were to be used to pay the mortgage payment on 2910.[2] The two forbearance agreements which were entered into between plaintiff, Bronx Miracle, and Keith Elijah Thompson deal with all three debts, but did not state anything about the use of rental receipts from one property being utilized to make the mortgage payment of another. Plaintiff states that Bronx Miracle leased 2910 to a preschool and that those rental payments were to be used to service the mortgage debt on the premises, but none were ever paid to it.

As to the claim that no accountings have ever been given by the management company to defendant Keith Elijah Thompson, plaintiff states that it was not aware that any were ever requested; further, that the management company was one which was chosen by Thompson because it was run by a member of his congregation.[3]

Plaintiff argues that because of the mismanagement of 829 and 785, it was forced to protect its interest in those properties by purchasing a tax lien that had been levied on the former, and also purchase the first mortgage on 785 when that went into foreclosure.

---

[1] Plaintiff also cites properties previously owned by Bronx Miracle at 815-821 Burke Avenue, which went into foreclosure and were ultimately sold, as additional evidence of mismanagement. Plaintiff was not involved in that financial transaction, however.

[2] Assignments of leases were executed relative to both 785 and 829, but these were specifically to be used for the payment of the debt on each of those premises, not for the mortgage payments which were due on 2910.

[3] Plaintiff also argues that the management company was located at 785 and was allowed to operate there by Thompson rent free. Apparently, Thompson's mother also resided in that building and was not required to pay rent.

Plaintiff contends that the sale of 829 in 2011 was done in accordance with the forbearance agreement which was entered into in 2009 when the mortgage payments on that property were not forthcoming. As to the instant premises, plaintiff states that a second forbearance agreement entered into in 2012 gives it the right to sell 2910, subject to the approval of the attorney general, in the case of default. Plaintiff argues that Bronx Miracle and Thompson have not been cooperative with reference to potential buyers of the premises, forcing plaintiff to initiate this foreclosure case.

Plaintiff denies that it is trying to deprive Bronx Miracle of its premises, and further disputes the underlying value of those premises as alleged by defendant Thompson. Rather than being worth $4 million as he claims, plaintiff notes that Bronx Miracle entered into a bankruptcy proceeding in 2017 (later withdrawn) during which the premises were valued by an appraisal company at approximately $710,000. It notes that after the school tenant departed from the premises they sustained significant damage because of a burst water pipe.

## DISCUSSION

Bronx Miracle claims that it is moving to have the judgment of foreclosure vacated due to an alleged violation of RCL §12(1). It specifically states that it is not moving to reargue the prior decision of this court which granted summary judgment to the plaintiff. That decision was dated October 5, 2015. Consequently, such a motion would be time barred in any event. See, CPLR § 2221(d)(3).

Even though it does not claim to be such, the instant motion may be treated as one to renew since Bronx Miracle is seeking to have this court vacate its prior decision. CPLR § 2221(e) states that a motion for leave to renew:

1. shall be identified specifically as such;

2. shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and

3. shall contain reasonable justification for the failure to present such facts on the prior motion

5

Here, Bronx Miracle's motion is not specifically identified as such, but may be considered as one since it deals with the court reconsidering a prior decision. (See, Estrow v. Wilson, 30 AD2d 646 [1st Dept. 1968][motion to "reconsider" may be treated as motion to renew]; Castro v. Wilson, 79 AD2d 1014 [2d Dept. 1984]).

An application to renew must be based upon additional material facts which existed at the time that the prior motion was made but which were not then known to the party seeking leave to renew and a valid excuse must be offered for not supplying such facts (Tishman Constr. Corp. v City of New York, 280 AD2d 374, 376 [1st Dept 2001]). A request for renewal should be rejected when the moving party fails to offer a reasonable excuse for not submitting the new material on the previous motion (Cuccia v City of NY, 306 AD2d 2, 2-3 [1st Dept 2003].)

Here, Bronx Miracle does not present any facts which are new from the time this court granted summary judgment. Indeed, defendant Keith Elijah Thompson, in his affidavit opposing the motion for summary judgment specifically argued that the plaintiff was engaged in a fraudulent scheme to deprive Bronx Miracle and he and his wife of the properties previously referred to. This court specifically rejected those arguments in granting summary judgment to the plaintiff. While his affidavit in support of the instant motion is somewhat more extensive, it makes the same argument based upon the same perceived set of facts.

Although not specifically denominated as such, Bronx Miracle's motion may be considered as one brought pursuant to CPLR §5015(a)(3) which states in pertinent part:

(a) On Motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:

3. fraud, misrepresentation, or other misconduct of an adverse party;

While Bronx miracle certainly argues that there was misconduct on the part of the plaintiff, which could conceivably be argued as a legitimate ground under the above section, this issue has already been determined by this court when it granted plaintiff summary judgment. As Bronx Miracle admits, it did not move to reargue this court's decision and apparently did not appeal from it. The purpose of this section is to provide the court with power to relieve an order or judgment obtained through misconduct which the injured party was not aware of, and could not bring to the court's attention. Here, however, Bronx Miracle has already made its arguments as to its claim of misconduct by the plaintiff, and this court disagreed. Therefore, Bronx Miracle has already had the opportunity for the court to consider its claims and provides no new facts or

evidence which would compel this court to revisit its decision. Indeed, a party may even be prevented from having an order or judgment vacated on the grounds of "fraud, misrepresentation, or other misconduct" if it fails to timely move on these grounds when it becomes aware of such conduct. (Lambert v. Schreiber, 95 AD3d 1282 [2d Dept. 2012]). Such is not the case with Bronx Miracle here; it has had the opportunity to have this court consider its arguments regarding misconduct by the plaintiff, but the same were rejected.

In any event, Bronx Miracle's argument that the underlying transaction constituted a violation of the Religious Corporation Law is unavailing. Section 12 (1) of that law states:

> 1. A religious corporation shall not sell, mortgage or lease for a term exceeding five years any of its real property without applying for and obtaining leave of the court or the attorney general therefor pursuant to section five hundred eleven of the not-for-profit corporation law as that section is modified by paragraph (d-1) of subdivision one of section two-b of this chapter or section five hundred eleven-a of the not-for-profit corporation law, except that a religious corporation may execute a purchase money mortgage or a purchase money security agreement creating a security interest in personal property purchased by it without obtaining leave of the court therefor. (emphasis added)

Here, there is no question that the loan taken out by Bronx Miracle, and the mortgage it executed to the plaintiff to secure that debt, related to the purchase of the premises from The Jewish Center of Williamsbridge. As such a transaction, it did not come under the requirement embodied in RCL §12 (1) for approval by a court or the attorney general. Contrary to the argument by Bronx Miracle, to be considered a "purchase money mortgage", it is not necessary that the plaintiff be the seller if the funds at issue were utilized to make a purchase. (Barone v Frie, 99 AD2d 129, 131 [2d Dept 1984]["A mortgage given to secure money, borrowed for the purpose of purchasing real property, is generally held to be a purchase-money mortgage, notwithstanding that the mortgage was given to a person other than the seller"]).

Finally, as to the claim by Bronx Miracle, a corporation, that the underlying loan was usurious, Gen. Obligations Law §5-521 states, in pertinent part:

> 1. No corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed to include all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships.

3. The provisions of subdivision one of this section shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law.

As incorporated in the above section, Penal Law §190. 40 states:

A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

The terms of the original loan Taken out by Bronx Miracle, as well as the default rate of interest, do not exceed the percentages indicated above. Accordingly, the argument that the loan violated the usury statute is without merit.

## CONCLUSION

The motion is denied. The judgment of foreclosure and sale is not vacated and the sale of the premises may proceed.

Dated: 4/20/18

HON. BEN R. BARBATO

8

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
In re:                                                      :          Chapter 11
                                                            :
BRONX MIRACLE GOSPEL TABERNACLE                             :
WORD OF FAITH MINISTRIES f/k/a                              :          Case No. 17-11395 (SMB)
BRONX MIRACLE GOSPEL TABERNACLE,                            :
                                                            :
                          Debtor.                           :
------------------------------------------------------------X

## MEMORANDUM DECISION GRANTING MOTION TO DISMISS CASE

### A P P E A R A N C E S

**CARDENAS ISLAM & ASSOCIATES, PLLC**
*Attorneys for Debtor*
175-61 Hillside Avenue, Suite 302
Jamaica, New York 11432

       Barak P. Cardenas, Esq.
          Of Counsel

**WILLIAM K. HARRINGTON**
United States Trustee
U.S. Federal Office Building
201 Varick Street, Rm 1006
New York, New York 10014

       Serene K. Nakano, Esq.
          Of Counsel.

**ROBINOWITZ COHLAN DUBOW & DOHERTY LLP**
Attorneys for Newell Funding, LLC
199 Main Street
White Plains, New York 10601

       Bruce Minkoff, Esq.
          Of Counsel

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

      The United States Trustee has moved to dismiss this chapter 11 case.  His motion

is supported by Newell Funding, LLC ("Newell"), the sole secured creditor of the

debtor's principal asset, and is opposed by the debtor. For the reasons that follow, the

motion is granted.

### BACKGROUND

The debtor is a not-for-profit religious corporation that filed this chapter 11 case

*pro se* on May 22, 2017. After retaining counsel, it filed Schedules (ECF Doc. # 15)

indicating that its principal asset was real estate (the "Property") worth $3.5 million

located in the Bronx. The Property was encumbered by a mortgage in the sum of $1.1

million held by Newell, and the Schedules did not list Newell's secured claim as

contingent, unliquidated or disputed. In addition, the debtor did not schedule any

causes of action or claims against third parties. The Schedules were signed under the

penalty of perjury by Rev. Dr. Keith Elijah Thompson, the president of the debtor.

On November 13, 2017, Newell moved for relief from the automatic stay. (ECF

Doc. # 29.) The motion for stay relief revealed that Newell had made a $425,000 loan

secured by the Property on March 5, 2008, and the loan matured one year later. The

debtor defaulted, Newell commenced a mortgage foreclosure action, and the state court

granted a Judgment of Foreclosure on March 2, 2017 which included a money judgment

in the sum of $1,196,033.99 (the "Judgment"). Newell subsequently filed a proof of

claim in the amount of $1,381,054.53, and submitted an appraisal in connection with its

motion for stay relief ascribing a value of $710,000.00 to the Property.

The debtor responded to Newell's motion acknowledging that it would have to

return to state court for the relief it needed. (*See Affidavit of Dr. Keith Elijah*

*Thompson in Response to the Motion of Newell Funding for Relief from the Automatic*

*Stay*, sworn to Dec. 5, 2017 ("*Response*") (ECF Doc. # 30).) Rev. Thompson stated his

belief that the Judgment "was entered upon false information provided to the State

Court," (*id.* ¶ 15), and concluded:

> I am prepared to take this matter back to the State Court where the Church
> will be able to pursue all of its State Court remedies as I am currently in
> possession of newly discovered information to challenge the Judgment
> and I believe that at this time it is in the best interest of the Church that
> the Church seeks recourse in the State Court in order to attack the
> Judgment.

(*Id.* ¶ 16.) In light of the debtor's position, the Court granted stay relief to Newell to

complete the foreclosure and permit the debtor to pursue the claims identified in the

*Response*. (ECF Doc. # 33.)

The U.S. Trustee thereafter moved to dismiss the case on January 8, 2018.[1] He

argued that the Court had granted stay relief regarding the Property, there was

substantial loss to the estate and there was no likelihood of rehabilitation.

(*Memorandum of Law in Support of Motion of the United States Trustee to Dismiss*

*this Case*, dated Jan. 8, 2018 (ECF Doc. # 38-4).)

The debtor, through new counsel, opposed the motion to dismiss. (*See Letter*

*from Barak P. Cardenas, Esq. to the Court*, dated May 11, 2018.) It contended that

there had been no diminution to the estate and there was a reasonable likelihood of

rehabilitation. Specifically, the debtor asserted that Newell had converted and/or failed

to allocate to the debtor certain alleged excess rents pledged by Rev. Thompson that

were generated by properties he personally owned. The debtor also asserted that it had

---

[1]    Because the debtor is a not-for-profit corporation its case cannot be converted to chapter 7 unless
the debtor requests conversion. 11 U.S.C. § 1112(c).

3

a legal malpractice claim against its attorney in the state court foreclosure action for
failing to raise the debtor's lack of authority to enter into the Newell mortgage and a day
care center that was formerly a tenant on the Property.

## DISCUSSION

Bankruptcy Code § 1112(b) authorizes a court to dismiss a chapter 11 case for
cause. "Cause" includes a "substantial or continuing loss to or diminution of the estate
and the absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112 (b)(4)(A).
The last monthly operating report filed by the debtor covering November 2017, (ECF
Doc. # 51), showed a cumulative net operating loss of $45,140.29 since the Petition
Date. Adding in the unpaid chapter 11 expenses, the cumulative net loss totaled
$82,838.29. By memorandum endorsement and order signed May 7, 2018, the Court
granted the debtor's request to have until May 18, 2018 to file the remaining monthly
operating reports, (ECF Doc. # 56), but the debtor failed to comply. Instead, the debtor
submitted a second request to extend the deadline to file the monthly operating reports
until five days after the Court decides the motion to dismiss. (ECF Doc. # 63.) The
granting of the motion to dismiss moots this request which is otherwise unacceptable
because all chapter 11 debtors must disclose the results of their operations by filing
monthly operating reports, but based on what the debtor has filed, I find that the estate
is suffering a continuing loss and diminution.

I also find that it is not reasonably likely that the debtor will be able to
rehabilitate. "If the debtor or some other party in interest is unable or unwilling to put
together a convincing business plan within a *reasonable amount of time*, and can offer
neither a valid justification for the failure to do so nor a reasonable prospect of being

4

able to accomplish the task *in the near future,* there is often little reason to proceed with the reorganization." 7 COLLIER ON BANKRUPTCY ¶ 1112.04 (6th ed. 2018) (emphasis added). The debtor filed this case one year ago, and the Court has granted Newell relief from the automatic stay to complete the foreclosure of the debtor's principal asset, the Property. Further, the main thrust of the debtor's opposition is that it owes Newell less than the Judgment (or nothing) based on Newell's misconduct and the debtor's lack of authority to enter into the mortgage. However, these claims are foreclosed by the Judgment. Moreover, the debtor recently moved in state court to vacate the Judgment based on the same claims it makes here. In a decision dated Apr. 26, 2018, (ECF Doc. # 57-1), the state court denied the motion, concluding that the allegations regarding Newell's misconduct had already been determined by the court when it granted Newell's motion for summary judgment. In addition, the state court rejected the debtor's arguments that the mortgage was unauthorized and the underlying debt was usurious. It concluded that "[t]he judgment of foreclosure and sale is not vacated and the sale of the premises may proceed."

The debtor cannot, therefore, base its prospects for rehabilitation on its claims against Newall. Additionally, the claims of professional malpractice against the debtor's state court attorney and its former tenant are speculative, will take years to litigate, and do not provide the basis for a successful rehabilitation within a reasonable time in the near future.

At bottom, this chapter 11 case no longer serves any purpose. The debtor filed the case to stay the foreclosure sale and refinance its debt. (*Affidavit Pursuant to Local Bankruptcy Rule 1007-2,* sworn to July 12, 2017, at ¶ 6 ("[F]acing the prospect of a

5

foreclosure sale of its Church Property, Petitioner had no alternative but to seek protection under Chapter 11 of the Bankruptcy Code in order to obtain time to refinance the indebtedness to Newell or to complete the negotiation of the development of the property where the developer would assist Petitioner with the necessary funding to resolve its obligations with Newell.") (ECF Doc. # 14.)  The Court granted relief from the stay, the foreclosure will proceed, and the debtor has been unable to refinance its debt to Newell in the year since the Petition Date.  The debtor can continue to pursue any remedies it may have against Newell or anyone else in state court, but cannot remain in chapter 11 while it does so.

The motion is granted, and the U.S. Trustee is directed to submit an order dismissing this chapter 11 case.

Dated:  New York, New York
        May 23, 2018

                                        /s/ Stuart M. Bernstein
                                        STUART M. BERNSTEIN
                                        United States Bankruptcy Judge

# EXHIBIT D

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------x
Newell Funding, LLC,

                                    Plaintiff,

            -against-                                         DECISION AND ORDER
Bronx Miracle Gospel Tabernacle Word of Faith                Present: Hon. Doris Gonzalez
Ministries Inc., etc., et al.,                               Index No. 380007/201 5

                                    Defendants.
-----------------------------------------------------------------x
Recitation, as required by CPLR 2219(a), of the papers considered in the review of motion(s) and/or
cross-motion(s), as indicated below:

**Papers**                                                   **Numbered**
Order to Show Cause, Cross-Motion, Others                    1 -- 4

      Defendant Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. (hereinafter, "Bronx Miracle") moves to vacate the judgment of foreclosure and sale, and reargue and renew the prior motion for summary judgment. Plaintiff cross-moves to discontinue the action against certain named parties.

      This Court granted summary judgment to the plaintiff by Order dated October 5, 2015 (Barbato, J.) Defendant Bronx Miracle subsequently moved, in essence, to reargue and renew the prior motion, arguing, inter alia, that the underlying loan was usurious. Justice Barbato considered these arguments and rejected them in an Order dated April 26, 2018, from which an appeal has been taken.

      Defendant again moves to reargue. To the extent reargument is sought, it is denied.

      Defendant seeks to renew based on alleged new facts which defendant asserts establish criminal usury, in that defendant was required to secure payment of an additional mortgage as part of the transaction, making the actual interest rate criminally usurious. However, usury was raised in the defendant's answer, and all of the facts as to the structuring of the transaction were known from the inception of the mortgage, as well as throughout this action and at the time the prior motions were made. Defendant's motion to "renew" is based on any new facts not known to defendant at the time of the prior motions. (*Board of Directors of Windsor Owners Corp. v Platt,* 138 A.D.3d 500, 501, 28 N.Y.S.3d 307, 307 [1st Dept. 2016].)

      Defendant has been represented by counsel throughout the course of this litigation, has sought relief under the Bankruptcy Code, and has had a full and fair opportunity to litigate all of the issues raised. Justice Barbato specifically rejected the claim of usury, which constitutes the

law of the case. Defendant failed to establish that the plaintiff engaged in any fraud, misrepresentation, or other misconduct warranting vacatur of the judgment based on CPLR 5015(a)(3) (*see Bank of N.Y. Mellon Trust Co., N.A. v Sukhu*, 163 AD3d 748, 751, 83 N.Y.S.3d 70), or that the judgment should be vacated in the interests of substantial justice (*Deutsche Bank Natl. Trust Co. v Conway*, 2019 N.Y. App. Div. LEXIS 897, 2019 NY Slip Op 00853 [2d Dept. 2019].)

The cross-motion is unopposed.

Those arguments not addressed herein are found to be without merit.

Accordingly, it is

ORDERED that the motion is denied, and it is further

ORDERED that the cross-motion is granted.

This constitutes the Decision and Order of the Court.

A separate Order has been executed amending the judgment herein.

Dated: 5/03/19

_____
Hon. Doris Gonzalez, J.S.C.

2