SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF BRONX
-----------------------------------------------------------------X

Newell Funding, LLC.,

                             Plaintiff(s),

-against-

Bronx Miracle Gospel Tabernacle Word of Faith
Ministries, Inc., f/k/a Bronx Miracle Tabernacle, Inc.,
New York City Environmental Control Board, Approved
Oil Company, Keith Elijah Thompson, Yvonne M.
Thompson, et al.,

                             Defendant(s).
-----------------------------------------------------------------X



**MEMORANDUM DECISION**
Index No. 380007/2015

HON. BEN R. BARBATO:

## RELIEF SOUGHT

In this matter, defendant Bronx Miracle Gospel Word of Faith Ministries, Inc ("Bronx Miracle"), a charitable domestic religious corporation, and individual defendants Keith Elijah Thompson and Yvonne M. Thompson move to stay the foreclosure sale regarding the premises located at 2910 Barnes Avenue ("the premises") and to vacate the judgment of foreclosure and sale previously signed by this court. Bronx Miracle alleges, in essence, that it is the victim of a fraudulent scheme by the plaintiff Newell Funding, LLC ("plaintiff") to deprive it of these premises, and certain other properties; further, that the original loan it obtained on the premises was in violation of Religious Corporation Law ("RCL")12(1) in that the approval of neither a court, nor the New York State Attorney General was not obtained prior to the transaction.

Plaintiff opposes and seeks to have the foreclosure sale go forward.

For the reasons set forth herein, the motion is denied.

## PROCEDURAL HISTORY

The note and mortgage at issue here were executed on March 6, 2008 relative to the purchase of the premises, which were to be used as a house of worship by the congregation of Bronx Miracle, of which defendant Keith Elijah Thompson was the pastor. The note was in the amount of $425,000, and a mortgage was given to the plaintiff to secure that debt. The note

1

provided for monthly payments at an interest rate of 15%, and the note was to mature in one year.

Plaintiff alleges that Bronx Miracle is in default of its obligations under the note beginning with the payment which was due on September 1, 2008. The instant action was begun by the filing of a summons and complaint and a notice of pendency, on January 23, 2015. Defendant Bronx Miracle, as well as individual defendants Keith Elijah Thompson and Yvonne M. Thompson filed an answer with counterclaims on or about March 19, 2015.

On May 28, 2015, plaintiff moved for summary judgment and an order for a referee to compute. This relief was granted by order of this Court dated October 5, 2015. Plaintiff later moved for a judgment of foreclosure and sale, which was granted by this court pursuant to its order dated March 2, 2017. On May 22, 2017, Bronx Miracle sought to move by order to show cause to stay the sale, but this court declined to sign such order to show cause.

The instant motion was brought by order to show cause dated February 2, 2018, which sought to stay the foreclosure sale which, at that point, was scheduled for February 5, 2018. That order to show cause was signed by a different judge of this court (Franco, J.), who was the "duty judge" at that time.

## CONTENTIONS OF THE PARTIES

Bronx Miracle argues that the judgment of foreclosure and sale should be vacated and set aside due to the failure of the plaintiff to comply with RCL §12 (1), which requires approval by the attorney general's office when a house of worship seeks to engage in certain financial transactions. It claims, moreover, that plaintiff engaged in a fraudulent scheme to avoid oversight by the attorney general's office, in an attempt to deprive Bronx Miracle and the Thompson defendants of these premises, as well as two other pieces of property.

Specifically, Bronx Miracle addresses three different pieces of property, which it claims plaintiff is trying to take away as part of this scheme. These properties are 829 Burke Avenue ("829"), a small apartment building; 785 Burke Avenue ("785"), a mixed use building; and the premises at issue here, 2910 Barnes Avenue ("2910"), which is its house of worship, and which had been purchased from the Jewish Center of Williamsbridge when the underlying transaction was entered into.

2

On January 22, 2007, 829 Holding Corporation, a for-profit corporation of which defendant Keith Elijah Thompson was president, took out a loan for $350,000 from the plaintiff, and executed a mortgage to secure that debt, relative to 829. On March 6, 2008, Kyess Corporation, a for-profit corporation of which defendant Keith Elijah Thompson was president, took out a loan for $325,000 from plaintiff and executed a mortgage relative to 785. Also on March 6, 2008, Bronx Miracle, a not-for-profit charitable corporation entered into a loan agreement with plaintiff for $425,000, and executed a mortgage to secure that debt relative to Bronx Miracle's purchase of 2910.

In his affidavit in support of the instant motion, defendant Keith Elijah Thompson states that he is the pastor of the congregation of Bronx Miracle, as well as the president of the other above referenced corporations. He states that after their respective loans were entered into, 829 and 785 were turned over to a management company called "A Place For Everyone" (" the management company"). It was his belief that the rents from 829 and 785 to be collected by the company were to be used to make the mortgage payments on 2910. He claimed that he never was provided with any accounting from the management company, and that he only found out that the payments were not being made when he discovered that both 829 and 785 had been sold by the plaintiff without his consent. He assumed that the mortgage payment for 2910 was being made from the rental receipts from both 829 and 785, because all three loans were interrelated as evidenced by a forbearance agreement he entered into with plaintiff in 2009.

Because of the scheme which he alleges plaintiff has conducted, he argues that it is trying to deprive his congregation of their house of worship located at 2910, which he believes is valued at $4 million.

Plaintiff argues that the "law of the case" precludes Bronx Miracle from obtaining the relief it seeks since these arguments had been made in its opposition to the motion for summary judgment and it is not now, by its own admission, seeking to reargue or renew the decision which granted that motion.

In any event, plaintiff contends that the requirement for oversight by a court or the attorney general, as mandated in RCL §12 (1), is inapplicable here because the transaction which Bronx Miracle entered into was for the purchase of the premises at 2910, the kind of transaction which is specifically exempted from oversight under that section.

3

Plaintiff denies that it is involved in a scheme to take away properties from Bronx Miracle and the individual defendants. Rather, it claims that mismanagement of these properties by the individual defendants has led to certain foreclosures and sales[1]. Both 829 and 785 were never owned by Bronx Miracle and therefore would not have been the subject of attorney general review. The loan taken out on 829 was done by a for-profit corporation of which defendant Keith Elijah Thompson was an officer, which was also the case for the loan taken out on 785, which was a second mortgage. These loans, as well as the one in the instant premises, were all of one-year duration and were designed to be "bridge loans" to allow for different financing to be obtained. The use of corporations was necessary, plaintiff contends, because defendant Keith Elijah Thompson had not filed income tax returns for many years so that financing could not be obtained by him in any other way.

There was no "agreement" that the rental receipts from 829 and 785 were to be used to pay the mortgage payment on 2910.[2] The two forbearance agreements which were entered into between plaintiff, Bronx Miracle, and Keith Elijah Thompson deal with all three debts, but did not state anything about the use of rental receipts from one property being utilized to make the mortgage payment of another. Plaintiff states that Bronx Miracle leased 2910 to a preschool and that those rental payments were to be used to service the mortgage debt on the premises, but none were ever paid to it.

As to the claim that no accountings have ever been given by the management company to defendant Keith Elijah Thompson, plaintiff states that it was not aware that any were ever requested; further, that the management company was one which was chosen by Thompson because it was run by a member of his congregation.[3]

Plaintiff argues that because of the mismanagement of 829 and 785, it was forced to protect its interest in those properties by purchasing a tax lien that had been levied on the former, and also purchase the first mortgage on 785 when that went into foreclosure.

---

[1] Plaintiff also cites properties previously owned by Bronx Miracle at 815-821 Burke Avenue, which went into foreclosure and were ultimately sold, as additional evidence of mismanagement. Plaintiff was not involved in that financial transaction, however.

[2] Assignments of leases were executed relative to both 785 and 829, but these were specifically to be used for the payment of the debt on each of those premises, not for the mortgage payments which were due on 2910.

[3] Plaintiff also argues that the management company was located at 785 and was allowed to operate there by Thompson rent free. Apparently, Thompson's mother also resided in that building and was not required to pay rent.

4

Plaintiff contends that the sale of 829 in 2011 was done in accordance with the forbearance agreement which was entered into in 2009 when the mortgage payments on that property were not forthcoming. As to the instant premises, plaintiff states that a second forbearance agreement entered into in 2012 gives it the right to sell 2910, subject to the approval of the attorney general, in the case of default. Plaintiff argues that Bronx Miracle and Thompson have not been cooperative with reference to potential buyers of the premises, forcing plaintiff to initiate this foreclosure case.

Plaintiff denies that it is trying to deprive Bronx Miracle of its premises, and further disputes the underlying value of those premises as alleged by defendant Thompson. Rather than being worth $4 million as he claims, plaintiff notes that Bronx Miracle entered into a bankruptcy proceeding in 2017 (later withdrawn) during which the premises were valued by an appraisal company at approximately $710,000. It notes that after the school tenant departed from the premises they sustained significant damage because of a burst water pipe.

## DISCUSSION

Bronx Miracle claims that it is moving to have the judgment of foreclosure vacated due to an alleged violation of RCL §12(1). It specifically states that it is not moving to reargue the prior decision of this court which granted summary judgment to the plaintiff. That decision was dated October 5, 2015. Consequently, such a motion would be time barred in any event. See, CPLR § 2221(d)(3).

Even though it does not claim to be such, the instant motion may be treated as one to renew since Bronx Miracle is seeking to have this court vacate its prior decision. CPLR § 2221(e) states that a motion for leave to renew:

1. shall be identified specifically as such;

2. shall be based upon new facts not offered on the prior motion that would change the prior determination or shall demonstrate that there has been a change in the law that would change the prior determination; and

3. shall contain reasonable justification for the failure to present such facts on the prior motion

Here, Bronx Miracle's motion is not specifically identified as such, but may be considered as one since it deals with the court reconsidering a prior decision. (See, Estrow v. Wilson, 30 AD2d 646 [1st Dept. 1968][motion to "reconsider" may be treated as motion to renew]; Castro v. Wilson, 79 AD2d 1014 [2d Dept. 1984]).

An application to renew must be based upon additional material facts which existed at the time that the prior motion was made but which were not then known to the party seeking leave to renew and a valid excuse must be offered for not supplying such facts (Tishman Constr. Corp. v City of New York, 280 AD2d 374, 376 [1st Dept 2001]). A request for renewal should be rejected when the moving party fails to offer a reasonable excuse for not submitting the new material on the previous motion (Cuccia v City of NY, 306 AD2d 2, 2-3 [1st Dept 2003].)

Here, Bronx Miracle does not present any facts which are new from the time this court granted summary judgment. Indeed, defendant Keith Elijah Thompson, in his affidavit opposing the motion for summary judgment specifically argued that the plaintiff was engaged in a fraudulent scheme to deprive Bronx Miracle and he and his wife of the properties previously referred to. This court specifically rejected those arguments in granting summary judgment to the plaintiff. While his affidavit in support of the instant motion is somewhat more extensive, it makes the same argument based upon the same perceived set of facts.

Although not specifically denominated as such, Bronx Miracle's motion may be considered as one brought pursuant to CPLR §5015(a)(3) which states in pertinent part:

> (a) On Motion. The court which rendered a judgment or order may relieve a party from it upon such terms as may be just, on motion of any interested person with such notice as the court may direct, upon the ground of:
>
> 3. fraud, misrepresentation, or other misconduct of an adverse party;

While Bronx miracle certainly argues that there was misconduct on the part of the plaintiff, which could conceivably be argued as a legitimate ground under the above section, this issue has already been determined by this court when it granted plaintiff summary judgment. As Bronx Miracle admits, it did not move to reargue this court's decision and apparently did not appeal from it. The purpose of this section is to provide the court with power to relieve an order or judgment obtained through misconduct which the injured party was not aware of, and could not bring to the court's attention. Here, however, Bronx Miracle has already made its arguments as to its claim of misconduct by the plaintiff, and this court disagreed. Therefore, Bronx Miracle has already had the opportunity for the court to consider its claims and provides no new facts or

evidence which would compel this court to revisit its decision. Indeed, a party may even be prevented from having an order or judgment vacated on the grounds of "fraud, misrepresentation, or other misconduct" if it fails to timely move on these grounds when it becomes aware of such conduct. (Lambert v. Schreiber, 95 AD3d 1282 [2d Dept. 2012]). Such is not the case with Bronx Miracle here; it has had the opportunity to have this court consider its arguments regarding misconduct by the plaintiff, but the same were rejected.

In any event, Bronx Miracle's argument that the underlying transaction constituted a violation of the Religious Corporation Law is unavailing. Section 12 (1) of that law states:

> 1. A religious corporation shall not sell, mortgage or lease for a term exceeding five years any of its real property without applying for and obtaining leave of the court or the attorney general therefor pursuant to section five hundred eleven of the not-for-profit corporation law as that section is modified by paragraph (d-1) of subdivision one of section two-b of this chapter or section five hundred eleven-a of the not-for-profit corporation law, <u>except that a religious corporation may execute a purchase money mortgage or a purchase money security agreement creating a security interest in personal property purchased by it without obtaining leave of the court therefor.</u> (emphasis added)

Here, there is no question that the loan taken out by Bronx Miracle, and the mortgage it executed to the plaintiff to secure that debt, related to the purchase of the premises from The Jewish Center of Williamsbridge. As such a transaction, it did not come under the requirement embodied in RCL §12 (1) for approval by a court or the attorney general. Contrary to the argument by Bronx Miracle, to be considered a "purchase money mortgage", it is not necessary that the plaintiff be the seller if the funds at issue were utilized to make a purchase. (Barone v Frie, 99 AD2d 129, 131 [2d Dept 1984]["A mortgage given to secure money, borrowed for the purpose of purchasing real property, is generally held to be a purchase-money mortgage, notwithstanding that the mortgage was given to a person other than the seller"]).

Finally, as to the claim by Bronx Miracle, a corporation, that the underlying loan was usurious, Gen. Obligations Law §5-521 states, in pertinent part:

> 1. No corporation shall hereafter interpose the defense of usury in any action. The term corporation, as used in this section, shall be construed to include all associations, and joint-stock companies having any of the powers and privileges of corporations not possessed by individuals or partnerships.

3. The provisions of subdivision one of this section shall not apply to any action in which a corporation interposes a defense of criminal usury as described in section 190.40 of the penal law.

As incorporated in the above section, Penal Law §190. 40 states:

A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the loan or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.

The terms of the original loan Taken out by Bronx Miracle, as well as the default rate of interest, do not exceed the percentages indicated above. Accordingly, the argument that the loan violated the usury statute is without merit.

## CONCLUSION

The motion is denied. The judgment of foreclosure and sale is not vacated and the sale of the premises may proceed.

Dated: 4/26/18

HON. BEN R. BARBATO