**THIS AGREEMENT WAS PREPARED BY THE SELLER'S ATTORNEY.**
**THIS IS INTENDED TO BE A LEGALLY BINDING CONTRACT ONCE IT IS SIGNED BY BOTH PARTIES. PURCHASER MAY WANT TO HAVE THIS CONTRACT REVIEWED BY PURCHASER'S ATTORNEY BEFORE PURCHASER SIGNS IT. ONCE THIS CONTRACT IS FULLY SIGNED THERE SHALL BE NO FURTHER ATTORNEY REVIEW.**

# 2910 Barnes Avenue
## PURCHASE AND SALE AGREEMENT

THIS PURCHASE AND SALE AGREEMENT ("Agreement") dated June ___, 2020 is entered into by and between the Seller and Purchaser, both hereinafter defined, whereby the Seller agrees to sell and Purchaser agrees to buy the Property, hereinafter defined, upon the terms, conditions and provisions set forth below.

**1. PARTIES:** Deborah J. Piazza, as Chapter 11 Trustee of Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. *aka* Bronx Miracle Gospel Tabernacle, Inc. ("Seller")

Seller's Address: c/o Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Fl., New York, NY 10018

Seller's Counsel: Scott Markowitz
Jill Makower
Tarter Krinsky & Drogin LLP
1350 Broadway
New York, NY 10018
Tel: 212-216-8000
Fax: 212-216-8001
Email: smarkowitz@tarterkrinsky.com
jmakower@tarterkrinsky.com

**PURCHASER:**

PURCHASER(S): _____  _____
*(Print Name)*  *(Print Name)*

PURCHASER'S ADDRESS: _____

PURCHASER'S PHONE: Office: _____ Fax: _____
Home _____ E-mail: _____

SOCIAL SECURITY OR FEIN NUMBER: _____

PURCHASER'S ATTORNEY: _____

ADDRESS: _____

PHONE: _____ Fax: _____

**2. PROPERTY:** The real estate and improvements situated in the County of Bronx, State of New York consisting of that certain property commonly known as 2910 Barnes Avenue, Bronx, New York (Block 4550, Lot 10) (the "Property"); including without limitation all machinery, equipment, fixtures and appliances of

whatever nature which are affixed or attached to the Property (the "Fixtures"); all site plans, architectural renderings, plans and specifications, engineering plans, as-built drawings, floor plans, and other similar plans or diagrams, if any, which relate to the Property; and Seller's interest in all licenses, permits and warranties which relate to the Property and which may be assigned by Seller to Purchaser; all of the above hereinafter collectively called "Property."

**3.     CALCULATION & PAYMENT OF PURCHASE PRICE:**

|   |   |   |   |
|---|---|---|---|
| A. | High Bid Price | $ | _____ |
| B. | **Total Purchase Price** (equals High Bid Price) | $ | _____ |
| C. | **Initial Earnest Money** | $ | 150,000.00 |
| D. | **Additional Earnest Money** (equals B x 10% - C) | $ | _____ |

**4.     PURCHASE PRICE :**

A.      The **Total Purchase Price** for the Property (exclusive of adjustments and costs referred to in Paragraphs captioned Closing Adjustments and Costs) is the amount set forth in the above Paragraph (the "Total Purchase Price") payable in U.S. dollars by Purchaser as follows:

(1)     **Initial Earnest Money** in the amount set forth in the above Paragraph is due when Purchaser signs and submits this Agreement, and is payable in the form of a certified or cashier's check made payable to the order of **"Tarter Krinsky & Drogin LLP, as Escrow Agent"**, and delivered at the time of signing this Agreement, receipt of which is hereby acknowledged.

(2)     **Additional Earnest Money**: If the Initial Earnest Money is less than 10% of the Purchase Price as stated in above Paragraph, the Purchaser shall be required to make Additional Earnest Money, the amount of which, when taken together with the Initial Earnest Money, shall equal ten (10%) percent of the Total Purchase Price. The sum of the Initial Earnest Money and the Additional Earnest Money shall be referred to as the "Total Earnest Money." The Additional Earnest Money is payable a) by Purchaser's personal check if paid at the time of Purchaser's execution of this Agreement, subject to collection, or, b) by certified or cashier's check from a bank, made payable to the order of **"Tarter Krinsky & Drogin LLP, as Escrow Agent".** The aggregate of the Initial Earnest Money and Additional Earnest Money shall constitute the total Earnest Money and shall be held by the Escrow Agent in a non-interest bearing account unless requested otherwise in writing by Purchaser.

After the Earnest Money is paid to Escrow Agent, Purchaser may direct Escrow Agent to place the Earnest Money in an interest bearing account at a federally insured bank, the choice of which is the Escrowee's, within three (3) business days after receiving Purchaser's written direction to do so, which direction shall include Purchaser's income tax identification number. A service and administration charge not to exceed $100.00 will be charged by Escrow Agent to implement the opening, closing and Internal Revenue Service filing requirements with respect to such account. Notwithstanding the provisions of the foregoing Paragraph, the Escrow Agent shall not be obliged to deposit the Earnest Money in an interest-bearing account until receipt from the Purchaser of an IRS Form W-8 or W-9 setting forth the Purchaser's taxpayer identification number. Interest on the Earnest Money shall be reported for income tax purposes in all events as being for the account of the Purchaser, and shall be paid to Purchaser in all events, except in the event of Purchaser's default, in which case the interest shall follow the Earnest Money.

(3) The **Balance of the Purchase Price ("Balance")** plus or minus prorations and closing adjustments as set forth in this Agreement, if any, is due at the closing of this transaction ("Closing") and must be paid by official cashier's check from a bank, made payable to Deborah J. Piazza, Chapter 11 Trustee (the "Trustee"). All checks must be made payable directly to the order of the Trustee; no checks may be endorsed. Third party checks are not acceptable. In lieu of accepting checks, Seller reserves the right to require Purchaser to pay the balance of the Purchase Price by wire transfer to the Trustee's bank account.

B. The acceptance by Purchaser of the delivery of the deed at the closing shall be and be deemed to be full performance and discharge of every agreement and obligation (either express or implied) on the part of Seller to be performed pursuant to this Agreement and no representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

**5. SALE BASED ON ALL-CASH:**

A. **CASH PURCHASE:** This is an all-cash sale and purchase; and is NOT contingent upon obtaining financing even though Purchaser may apply to a lending institution of Purchaser's choice for a loan. Purchaser understands and agrees that neither its receipt of a commitment from such a lending institution, acceptance of such a commitment, nor satisfaction of any condition set forth in such a commitment shall in any way be a condition of Purchaser's obligations under this Agreement. Seller makes no representation or warranty as to Purchaser's ability to obtain financing.

**6. CLOSING LOCATION:** Closing will take place at the offices of Tarter Krinsky & Drogin LLP, 1350 Broadway, New York, NY 10018, or at another location designated by Seller in New York County.

**7. CLOSING DATE:** Closing will take place at 10:00 a.m. on **June ____, 2020** –The Purchaser must close on or before this date (the "Standard Closing Date").

In the event that Closing shall be delayed due to the fault of Purchaser and Purchaser requests a delay in Closing, then Seller in its sole discretion may elect, upon written notice to Purchaser, to extend the Closing, in which event Purchaser shall pay at Closing, in addition to all other sums then due hereunder, the sum of Five Hundred Dollars ($500) per day for each day or part thereof that the Closing is delayed after the Standard Closing Date, representing an adjournment fee. In addition, the Purchaser must deposit an additional ten (10%) percent of the Total Purchase Price which along with the Earnest Money will be non-refundable in the event Purchaser fails to close. Notwithstanding the foregoing, **TIME IS OF THE ESSENCE WITH AN OUTSIDE CLOSING DATE OF July ___, 2020.**

**8. CLOSING DOCUMENTS:**

A. At the Closing, Seller shall deliver to Purchaser, at Seller's sole cost and expense, the following:

(1) A duly executed and acknowledged Quit Claim Deed in recordable form conveying title in fee simple to all of the real estate, free and clear of any and all liens, encumbrances, but subject to the Permitted Title Exceptions;

(2) Customary owner's title affidavit;

(3) Internal Revenue Code reporting requirements or disclosure including FIRPTA;

(4) Seller shall by written assignment assign all Service Contracts, if any to Purchaser, (except any such contracts which by their terms are non-assignable) and Purchaser shall accept such assignment and agrees to discharge and assume all of the obligations and duties of landlord under the Service Contracts which accrue or arise for the period from and after the closing;

(5) Customary tax return(s), if any;

(6) Bill of Sale, without warranties, for any personal property being transferred free of liens or encumbrances;

(7) All other documents that are reasonably customary to close this transaction; in accordance with the terms and conditions of this Agreement;

B. At the Closing, Purchaser shall:

(1) Pay the cash portion of the Purchase Price including prorations and adjustments, if any;

(2) If Purchaser is a corporation or a limited liability company, deliver to Seller:

(a) Certified resolutions of the board of directors of Purchaser (or managing member) authorizing all the transactions contemplated by this Agreement;

(b) An incumbency certificate with respect to those officers (or managing member) of Purchaser executing any documents or instruments in connection with the transactions contemplated herein; and

(c) Certificate of Good Standing for the entity acquiring title from the Secretary of State or other appropriate governmental office of the state in which the entity was formed.

(3) If the entity acquiring title is a partnership, deliver to Seller a certified copy of the partnership agreement and all appropriate resolutions, partnership consents and evidence of authority of said entity;

(4) Execute such other and further documents necessary to close this transaction; in accordance with the terms and conditions of this Agreement;

**9. SALES EXPENSES TO BE PAID IN CASH AT OR PRIOR TO CLOSING:**

A. **SELLER'S EXPENSES:** All costs of releasing and recording any release of Mortgage required by the terms of this Agreement; state and local transfer taxes, if any, real estate brokerage fees and other expenses stipulated to be paid by Seller under provisions of this Agreement.

B. **PURCHASER'S EXPENSES:** All recording costs of the Mortgage, the Deed, and the Collateral Documents.

**10. PRORATIONS AND ADJUSTMENTS:** The following shall be prorated and adjusted between Seller and Purchaser as of the time of closing, except as otherwise expressly provided herein:

A. Water, electricity, sewer, gas, and other utility charges based, to extent practicable, on final meter readings and/or final invoices.

B. Amounts paid or payable under any assigned maintenance or other service contracts shall be prorated as of the time of closing.

C. Accrued general real estate taxes (if any) shall be prorated as of the time of closing. If such bills are not available, then such taxes shall be prorated on the basis of 100% of the most recent ascertainable tax bills.

D. Special Assessments - If at the time of Closing, the Property are affected by an assessment which is or may become payable in installments, then only those installments due prior to the date of the Closing shall be paid by the Seller, and all installments due subsequent to Closing shall be paid by Purchaser.

E. Such other items that are customarily prorated in transactions of this nature shall be ratably prorated as of the Closing Date. Except as expressly provided herein, all prorations shall be final. The covenants and agreements set forth in this Paragraph shall survive the closing for six (6) months.

F.  As of Closing, Purchaser shall be responsible for the transfer of accounts and establishment of all utility services to the real estate to the name of Purchaser, including the making of any new utility deposits with the utility providers.  Seller shall be entitled to receive a refund of utility service deposits, if any, covering the period prior to the Closing Date.

**11.  POSSESSION:**   The possession of the Property and the keys shall be delivered to Purchaser at Closing.

**12.  ACCESS TO PROPERTY:**  Seller shall allow Purchaser or Purchaser's representative access to the Property on reasonable notice and accompanied by the Trustee's representative no more than three (3) days prior to the scheduled Closing Date.

**13.  DEFAULT:**

A.  Unless otherwise provided for herein, if Purchaser fails to comply with the terms and conditions hereof, Seller may terminate this Agreement, in which event the Earnest Money, plus net accrued interest, if any, shall be due and payable to Seller as its liquidated damages.  Purchaser shall be liable for payment of both the Initial Earnest Money and Additional Earnest Money if not previously paid.  The parties agree that actual damages in the event of default are difficult to ascertain and further agree that the amount set forth as liquidated damages is a reasonable estimate of the damages to Seller in the event of Purchaser's default.  Such sum is intended to be liquidated damages, and not a penalty.

B.  If Seller defaults, Purchaser may elect to obtain a return of the Earnest Money and net accrued interest, if any, as liquidated damages and this Agreement shall terminate and neither party shall have any rights or obligations pursuant to this Agreement, or in the alternative, Purchaser shall have the right to an action for specific performance for Seller's breach of this Agreement, which shall be Purchaser's only other remedy. Purchaser acknowledges and agrees that under no circumstances shall Seller be liable for Purchaser's damages, consequential, actual, punitive, speculative, or otherwise.

**14.  ESCROW:**  The Earnest Money is deposited with Escrow Agent with the understanding that the Escrow Agent (a) does not assume or have any liability for performance or non-performance of any party and (b) has the right to require in writing from all signatories (i) a written release of liability of the Escrow Agent, except for gross negligence or fraud and (ii) authorization to disburse the Earnest Money at Closing as such disbursement is provided for herein.  At Closing, Earnest Money and accrued interest shall be applied to payment of the Purchase Price.  Any refund or payment of the Earnest Money under this Agreement pursuant to a default shall be reduced by the amount of any actual expenses incurred by Escrow Agent arising out of the acceptance and distribution of funds pursuant to a determination as to which party is entitled to such funds.

**15.  RIGHT TO NOTICE:**  Purchaser and Seller hereby agree that in the event Seller notifies Escrow Agent that Purchaser has breached this Agreement by reason of Purchaser's failure to timely deposit the Earnest Money or to timely close the transaction or for any other reason as set forth in this Agreement and that Seller has thereby elected to declare Purchaser's Earnest Money forfeited, the Escrow Agent shall notify the Purchaser as to the same.  Purchaser shall have five (5) business days from the date Escrow Agent notifies Purchaser of Seller's forfeiture notice to dispute Seller's notice.  In the event Purchaser fails to dispute such notice, within said five day period, then, Escrow Agent is hereby authorized by Purchaser and Seller to remit the Earnest Money and any accrued interest as directed by an order of the United States Bankruptcy court for the Southern District of New York, reduced by the Escrow Agent's actual expenses described above.  Purchaser hereby agrees to indemnify, save harmless and agree to defend Escrow Agent from and against any claims, demand, costs or damages (including reasonable attorney's fees) incurred by Escrow Agent and arising from or out of or with respect to Escrow Agent's complying with such demand by Seller.

In the event that a dispute shall arise as to the disposition of all or any portion of the Total Earnest Money held by the Escrow Agent, Escrow Agent shall either (i) hold the Total Earnest Money subject to final determination of said dispute by an order of the United States Bankruptcy court for the Southern District of New York or (ii) deposit the same with a court of competent jurisdiction, pending the decision of such court, and shall be entitled to instructions, as the case may be, with respect to the disposition of the Total Earnest Money.  Escrow Agent shall be entitled to consult with its counsel and be reimbursed for all reasonable expenses of such consultation with respect to his duties as Escrow Agent and shall be further entitled to all reasonable out-of-pocket expenses incurred in connection with the activities set forth in the preceding sentence.  All such expenses shall be paid by

the party whose position shall not be sustained.  Escrow Agent may act or refrain from acting in respect of any matter referred to herein, in full reliance upon and by and with the advice of counsel which may be selected by Escrow Agent (including any member of Escrow Agent's firm) and shall be fully protected in so acting or so refraining from acting upon the advice of such counsel.  Seller and Purchaser promise and agree to indemnify and save Escrow Agent harmless from any claims, every kind and nature of which may be incurred by Escrow Agent by reason of his acceptance of, and his performance under this Purchase and Sale Agreement except claims involving gross negligence, bad faith or willful misconduct.

**16.    REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER:**

   A. Seller hereby represents and warrants to Purchaser which representations and warranties shall be deemed made by Seller to Purchaser also as of the Closing Date that:

   (1) To the best of Seller's knowledge there are no parties in possession of any portion of the Property as lessees;

   (2) Seller is duly authorized and empowered to sell the Property, subject to Bankruptcy Court approval;

   (3) All obligations of Seller arising from the ownership and operation of the Property which accrue prior to the Closing Date, have been paid as they became due or will be paid at or prior to Closing. Except for obligations for which provisions are herein made for proration or other adjustments at Closing, there will be no obligations of Seller with respect to the Property outstanding as of the Closing Date;

   (4) Seller is not aware of any unrecorded liens caused by Seller against the Property which will not be satisfied at Closing;

   (5) Seller has received no notice of the commencement of any legal action against Seller for the damaging, taking or acquiring of all or any part of the Property, either temporarily or permanently, by condemnation or by exercise of the right of eminent domain.

   B. From the Effective Date of this Agreement until the Closing Date or earlier termination of this Agreement, Seller covenants to:

   (1) without the prior consent of Purchaser, not enter into any new written or oral service agreement or other agreement with respect to the Property, that will not be fully performed by Seller on or before the Closing Date, or that may not be canceled by Purchaser without liability at the Closing;

   (2) advise Purchaser promptly of any litigation, arbitration or administrative hearing before any governmental body or agency of which Seller is notified, concerning or affecting the Property which is instituted after the date hereof; and

   (3) not take, or omit to take any action that would have the effect of violating any of the material representations, warranties, covenants, and agreements of Seller contained in this Agreement.

   C. If any representation or warranty in this Agreement is known by Purchaser, prior to Closing, to be untrue to a material extent or Purchaser knows that any covenant has not been performed or is not remedied by Seller prior to Closing except those liens, charges or unpaid bills or expenses that can be remedied by funds paid by Seller at Closing out of the Purchase Price, Purchaser may as its sole remedy (i) terminate this Agreement whereupon the Earnest Money and accrued interest shall be refunded to Purchaser, and neither party shall have any further rights or obligations pursuant to this Agreement, or (ii) waive its objections and close the transaction without reduction of the Purchase Price.

**17. REPRESENTATION, WARRANTIES AND COVENANTS OF PURCHASER:** Purchaser represents, warrants and covenants to Seller as follows:

    A.    Purchaser is a sophisticated purchaser and has reviewed all materials and/or had all materials reviewed by its own experts and consultants;

    B.    Purchaser is purchasing the Property in its "AS IS, WHERE IS" condition with no warranties by Seller as to merchantability, suitability or fitness for any particular use, it being understood and agreed that Purchaser is relying solely on its own inspections, engineering studies and reports, economic and feasibility studies and examinations of the Property and Purchaser's own determination of the condition and value of the Property;

    C.    Purchaser has all requisite power and authority to consummate the transaction contemplated by this Agreement and has by proper proceedings duly authorized the execution and delivery of this Agreement and the consummation of the transaction contemplated hereby;

    D.    This Agreement when executed and delivered by Purchaser and Seller, will constitute the valid and binding agreement of Purchaser enforceable against Purchaser in accordance with its terms;

    E.    To Purchaser's knowledge, neither the execution and delivery of this Agreement nor the consummation of the transaction contemplated hereby will violate or be in conflict with (i) any applicable provisions of law, (ii) any order of any court or government agency having jurisdiction over the Purchaser, or (iii) any agreement or instrument to which Purchaser is a party or under which Purchaser is bound;

    F.    There are no actions, suits, claims or other proceedings pending or, to the best of Purchaser's knowledge, contemplated or threatened against Purchaser that could affect Purchaser's ability to perform its obligations under this Agreement;

    G.    Purchaser has sufficient funds available to consummate the Closing of the transaction described in this Agreement; and

    H.    From the Effective Date of this Agreement, Purchaser covenants to Seller that, in addition to the acts and deeds recited herein and contemplated to be performed, executed, and delivered by Purchaser, the Purchaser shall perform, execute, and deliver or cause to be performed, executed, and delivered at, prior to, or after the Closing, any and all further reasonable acts, deeds, and assurances as Seller or the Title Company may reasonably require in order to consummate the transactions contemplated herein.

**18. CONDITION OF AND DAMAGE TO PROPERTY:** The Property shall be conveyed in its present condition, ordinary wear and tear and damage by casualty excepted.

**19. CONDEMNATION:** If, prior to the Closing Date, condemnation proceedings are commenced against any material portion of the Property (except for road widening), Purchaser may, at its option, terminate this Agreement by written notice to Seller within ten (10) days after Purchaser is advised of the commencement of such condemnation proceedings and the Earnest Money shall be refunded to Purchaser, or Purchaser shall have the right to proceed to consummate the purchase of the Property, in which event Purchaser may appear and defend any such condemnation proceedings, and any award in condemnation shall become the Property of Purchaser and the Purchase Price shall not be reduced.

**20. RISK OF LOSS:** Seller shall bear the risk of loss or damage to the Property from fire or other casualty until closing.

    A.    If the cost of the damage to the Property due to fire or other casualty is equal to or less than 10% of the Purchase Price Purchaser shall proceed to consummate the transaction contemplated by this Agreement and Seller, shall proceed with the purchase of the Property, in which event Seller shall deliver possession of the Property to Purchaser at Closing together with

(i) all insurance proceeds received by Seller pursuant to the Insurance Policy (and which have not been spent by Seller in the repair or preservation of the Property)

(ii) an assignment of all rights and claims of Seller under the Insurance Policy

(iii) give to Purchaser a credit equal to the deductible that Purchaser will incur – but there shall be no other reduction or abatement of the total Purchase Price.

B. In the event of damage to or destruction of the Property by fire or other casualty, the aggregate cost of which exceeds 10% of the Purchaser Price, prior to closing, Purchaser may, at its option, within fifteen (15) days after notice thereof from Seller to Purchaser but in to event later than the Closing Date, either

(1) terminate this Agreement and all rights and obligations hereunder, in which event

(a) the Earnest Money and all interest accrued thereon shall be returned immediately to Purchaser,

(b) all funds and documents deposited by or on behalf of Purchaser into the Escrow shall be returned promptly to Purchaser by the Escrowee and

(c) all documents and other items deposited by Seller into the Escrow shall be returned promptly to Seller by the Escrowee; **OR**

(2) elect to proceed with the purchase of the Property as provided in the foregoing subclause (A).

C. Seller agrees to fully cooperate with and assist Purchaser in adjusting any loss and perfecting and pursuing any claim under the Insurance Policy, but Seller shall not be obligated to incur any expense in connection therewith.

D. After Closing the risk of loss shall be and is assumed by the Purchaser. Seller shall retain Seller's insurance until Closing, and it shall be the obligation of Purchaser to procure Purchaser's own policies of insurance to be effective from and after the date of Closing.

**21. BROKER'S COMMISSION**: Seller shall cause to be paid a broker's commission to **Tamerlain Realty Corp.** (hereinafter referred to as "Seller's Broker") in the amount of four (4%) percent of the High Bid Price, and Seller's Broker shall pay to [Buyer's Broker], if any, hereinafter referred to as "Buyer's Broker") an amount equal to two (2%) percent of the High Bid Price, and in such case pay Seller's Broker only two (2%) percent. Seller and Purchaser agree that all Broker's commissions shall be paid simultaneously with, and as a condition precedent to, any disbursements made at Closing. This Paragraph and disbursement instructions may not be amended or revoked without the prior written consent of Seller's Broker. Purchaser represents to the Seller that no Broker or Auctioneer other than Seller's Broker or Buyer's Broker, if any, as defined in this Paragraph was involved in submitting, showing or selling the Property to Purchaser and Seller and Purchaser hereto agree to indemnify the other party and all those parties claiming through them from and against any claims by any other broker other than Seller's Broker or Buyer's Broker, if any, with whom the indemnifying party may have dealt. The provisions of this Paragraph shall survive the closing.

**22. AGENCY DISCLOSURE:** The listing broker, **Tamerlain Realty Corp.** and its sales agents (Listing Company) represent Seller. The Listing Company owes duties of trust, loyalty and confidence to Seller only. While the Listing Company has a duty to treat Purchaser honestly, the Listing Company is Seller's agent and is acting on behalf of Seller and not Purchaser. Any Cooperating Broker will be recognized as a Buyer's agent (Buyer's Broker). BY SIGNING BELOW, PURCHASER ACKNOWLEDGES PRIOR TIMELY NOTICE BY LISTING OR SELLING COMPANY THAT LISTING COMPANY IS SELLER'S AGENT.

**23. CONSULT YOUR ATTORNEY:** THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT. READ IT CAREFULLY. NO REPRESENTATION OR RECOMMENDATION IS MADE BY SELLER, BROKER OR THEIR AGENTS OR EMPLOYEES AS TO THE LEGAL SUFFICIENCY,

LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS DOCUMENT OR THE TRANSACTION RELATING THERETO. THESE ARE QUESTIONS FOR YOUR ATTORNEY. CONSULT YOUR ATTORNEY BEFORE SIGNING. NEITHER THE SELLER NOR THE BROKER CAN GIVE YOU ANY LEGAL ADVICE.

**24. DISCLAIMER:**

    A. EXCEPT AS OTHERWISE SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HEREBY SPECIFICALLY DISCLAIMS ANY WARRANTY, GUARANTY, OR REPRESENTATION, ORAL OR WRITTEN, PAST, PRESENT, OR FUTURE OF, AS TO, OR CONCERNING THE NATURE AND CONDITION OF THE PROPERTY, INCLUDING, WITHOUT LIMITATION, THE WATER, SOIL, AND GEOLOGY, AND THE SUITABILITY THEREOF AND OF THE PROPERTY FOR ANY AND ALL ACTIVITIES AND USES WHICH PURCHASER MAY ELECT TO CONDUCT THEREON.

    B. EXCEPT AS SPECIFICALLY STATED IN THIS AGREEMENT, SELLER HAS NOT MADE AND IS NOT MAKING ANY REPRESENTATION OR WARRANTY REGARDING MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE, ENVIRONMENTAL CONDITIONS, ZONING OR THE AVAILABILITY OF UTILITIES OR PERMITS.

    C. PURCHASER ACKNOWLEDGES THAT HAVING BEEN GIVEN A SUFFICIENT OPPORTUNITY TO INSPECT THE PROPERTY, AND TO REVIEW THE BIDDERS' INFORMATION PACKET OR OTHER MATERIAL GIVEN TO PURCHASER, PURCHASER IS RELYING SOLELY ON ITS OWN INVESTIGATION OF THE PROPERTY AND FINANCIAL ANALYSIS OF THE REVENUE AND EXPENSES THAT MAY BE RECEIVED OR INCURRED IN ARRIVING AT ITS DECISION TO PURCHASE THE PROPERTY AND HAS NOT RELIED UPON ANY PLANS SELLING BROCHURES, ADVERTISEMENTS, REPRESENTATIONS WARRANTES, STATEMENTS OR ESTIMATES OF ANY NATURE WRITTEN OR ORAL BY SELLER OR SELLER'S AGENT IN DECIDING TO PURCHASE THE PROPERTY AT THE STATED PRICE.

    D. PURCHASER IS PURCHASING THE PROPERTY IN ITS PRESENT CONDITION, "AS IS, WHERE IS", AND SELLER HAS NO OBLIGATION TO CONSTRUCT ANY IMPROVEMENTS THEREON, OR TO PERFORM ANY OTHER ACT REGARDING THE PROPERTY, EXCEPT AS EXPRESSLY PROVIDED HEREIN.

    E. ANY FACTUAL INFORMATION SUCH AS PROPERTY DIMENSIONS, SQUARE FOOTAGE, OR SKETCHES SHOWN TO PURCHASER OR SET FORTH HEREIN ARE OR MAY BE APPROXIMATE AND PURCHASER REPRESENTS TO SELLER THAT THEY HAVE INSPECTED AND VERIFIED THE FACTS AND INFORMATION PRIOR TO THE EXECUTION OF THIS AGREEMENT. NO LIABILITY FOR ANY INACCURACIES, ERRORS OR OMISSIONS IS ASSUMED BY THE SELLER, THE BROKER OR OTHER AGENTS.

    F. THE REAL ESTATE SALESPERSONS AND BROKERS IN THIS TRANSACTION HAVE NO EXPERTISE WITH RESPECT TO ENVIRONMENTAL MATTERS. PROPER INSPECTIONS OF THE PROPERTY BY QUALIFIED EXPERTS ARE AN ABSOLUTE NECESSITY TO DETERMINE WHETHER OR NOT THERE ARE ANY CURRENT OR POTENTIAL ENVIRONMENTAL CONCERNS RELATING TO THE PROPERTY. THE REAL ESTATE SALESPERSONS AND BROKERS IN THIS TRANSACTION HAVE NOT MADE, NOR WILL THEY MAKE, ANY REPRESENTATIONS, EITHER EXPRESSED OR IMPLIED, REGARDING THE EXISTENCE OR NON-EXISTENCE OF ANY SUCH ENVIRONMENTAL CONCERNS IN OR ON THE PROPERTY. PROBLEMS INVOLVING ENVIRONMENTAL CONCERNS CAN BE EXTREMELY COSTLY TO CORRECT. IT IS THE RESPONSIBILITY OF PURCHASER TO RETAIN QUALIFIED EXPERTS TO DEAL WITH THE DETECTION AND CORRECTION OF SUCH MATTERS.

**25. NOTICES:** All notices, elections, consents, demands and communications (collectively called "Notices" or individually called "Notice") shall be in writing and delivered personally or by registered or certified mail return receipt requested, postage prepaid, express mail or mailgram and, if sent to Purchaser, addressed to Purchaser at Purchaser's address and, if sent to the Seller, addressed to the Seller at Seller's address each stated in this Agreement with a copy to the Broker whose address is stated in this Agreement. Copies of Notices shall be sent to the Attorneys for the respective parties, if identified on the signature page. Either party may, by written notice to the other, change the address to which notices are to be sent. Unless otherwise provided herein, all notices shall be deemed given when personal delivery is effected or when deposited in any branch, station or depository maintained by the U.S. Postal Service the express mail service or overnight courier within the United States of America, except that a Notice of a change of address shall be deemed given when actually received. Seller's affidavit of the date and time of deposit in a mailbox or with the express mail service or the postmark, whichever is earlier shall constitute evidence of the effective date when the notice has been given.

**26. NO RECORDING:** Neither this Agreement nor any type of memorandum thereof shall be recorded with the office of the Recorder of Deeds or with any other governmental agency, and any purported recordation or filing hereof by Purchaser shall constitute a default on the part of Purchaser.

**27. ENTIRE AGREEMENT:** This Agreement constitutes the entire agreement between the parties as to the subject matter hereof and supersedes all prior understandings and agreements. There are no representations, agreements arrangements or understandings oral or written between the parties, including the Broker, relating to the subject matter contained in this Agreement which is not fully expressed or referred to herein.

**28. SUCCESSORS AND ASSIGNS:**

    A.    The provisions of this Agreement shall bind and inure to the benefit of Purchaser and Purchaser's heirs, legal representatives, successors and permitted assigns and shall bind and inure to the benefit of the Seller and its successors and assigns. This Agreement may not be assigned by Purchaser without prior written consent of Seller.

    B.    The Seller's refusal to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against Seller.

**29. PURCHASER ASSIGNMENT TO TAKE TITLE:** Purchaser may request the conveyance be made to another, persons or entity ("Nominee"), upon notification in writing delivered to Seller at least ten days prior to the date of Closing. Purchaser's designation of a Nominee to take title to the Property shall not relieve the Purchaser of any obligation hereunder or liability. Any additional transfer taxes due as a result of the designation of a Nominee shall be Purchaser's obligation to pay.

**30. JOINT PURCHASERS:** The term "Purchaser" shall be read as "Purchasers" if more than one person is the Purchaser of the Property, in which case their obligations shall be joint and several.

**31. FURTHER ASSURANCES:** Either party shall execute, acknowledge and deliver to the other party such instruments and take such other actions, in addition to the instruments and actions specifically provided for herein at any time and from time to time after execution of this Agreement whether before or after the Closing, as such other party may reasonably request in order to effectuate the provisions of this Agreement or the transaction contemplated herein or to confirm or perfect any right to be created or transferred hereunder or pursuant to this transaction, provided that neither party shall be required to incur any material expense in connection therewith.

**32. SEVERABILITY:** If any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other persons or circumstances shall not be affected thereby. All other clauses or provisions of this Agreement, not found invalid or unenforceable shall be and remain valid and enforceable.

**33. TIME:** Time is of the essence of this Agreement.

**34. STRICT COMPLIANCE:** Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof,

irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

**35.  GOVERNING LAW:**  The provisions of this Agreement shall be governed by, and construed and enforced in accordance with the laws of the State of New York. The Purchaser consents to the jurisdiction of the United States Bankruptcy Court for the Southern District of New York to resolve any dispute under this Agreement or related to the sale of the Property.

**36.  WAIVER OF JURY TRIAL:**  **EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT OR THE RELATIONSHIP CREATED HEREBY**.  With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.

**37.  ATTORNEYS' FEES:**  A party to this Agreement who is the prevailing party in any legal proceeding against any other party brought under or with respect to this Agreement or the transaction contemplated hereby shall be additionally entitled to recover court costs and reasonable attorney's fees from the non-prevailing party.

**38.  GENDER:**  A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

**39.  CERTAIN REFERENCES:**   The term "herein", "hereof" or "hereunder" or similar terms used in this Agreement refer to this entire Agreement and not to the particular provision in which the term is used.  Unless otherwise stated, all references herein to paragraphs, subparagraphs or other provisions are references to paragraph, subparagraphs or other provisions of this Agreement.

**40.  SINGULAR ALSO MEANS PLURAL:**  Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

**41.  CAPTIONS:**  The captions in this Agreement are for convenience and reference only and in no way define, limit or describe the scope of this Agreement or the intent of any provision hereof.

**42.  NO ORAL CHANGES:**  This Agreement cannot be changed or any provision waived orally.  ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

**43.  EXHIBITS:**  All Exhibits described herein and attached hereto are incorporated herein by this reference for all purposes.

**44.  DATE OF PERFORMANCE:**   If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state in which the Property is located, the date for such performance shall be the next succeeding business day.

**45.  NO PRESUMPTION REGARDING DRAFTING:**  It is acknowledged and presumed that the substance and form of this Agreement have been fully reviewed by the parties hereto and approved as to form by their respective counsel.  It is further acknowledged and agreed that no presumption shall exist against either party hereto by virtue of this Agreement being considered to have been drafted by counsel for either party thereto.

**46.  COUNTERPARTS:**  This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of real estate under the laws of the State of New York.  It is binding upon and inures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the Seller and the Purchaser.

**47.  COUNTERPART FACSIMILE EXECUTION:** For purposes of, executing this Agreement, a document signed and transmitted by facsimile machine or other electronic means shall be treated as an original document.  The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document. At the request of either party, any facsimile document shall be re-executed by both parties in original form.  No party

hereto may raise the use of a facsimile machine or the fact that any signature was transmitted through the use of a facsimile machine or other electronic means as a defense to the enforcement of this Agreement or any amendment executed in compliance with this Paragraph. This Paragraph does not supersede the requirements of the "Notices" Paragraph.

**48. FIRPTA:** Seller represents and warrants to Purchaser that Seller is not a "foreign person", as that term is defined for purposes of the Foreign Investment in Real Property Tax Act, Internal Revenue Code ("IRC") Section 1445, as amended, and the regulations promulgated thereunder (collectively "FIRPTA").

**49. CONSULT YOUR ATTORNEY:** THIS IS INTENDED TO BE A LEGALLY BINDING AGREEMENT. READ IT CAREFULLY. NO REPRESENTATION OR RECOMMENDATION IS MADE BY SELLER, BROKER OR THEIR AGENTS OR EMPLOYEES AS TO THE LEGAL SUFFICIENCY, LEGAL EFFECT, OR TAX CONSEQUENCES OF THIS DOCUMENT OR THE TRANSACTION RELATING THERETO. THESE ARE QUESTIONS FOR YOUR ATTORNEY. CONSULT YOUR ATTORNEY BEFORE SIGNING. NEITHER THE SELLER NOR THE BROKER CAN GIVE YOU ANY LEGAL ADVICE.

**50. ABSOLUTE OFFERING:** Purchaser further acknowledges that this Agreement is executed and delivered by Purchaser pursuant to an auction conducted on behalf of Seller. In consideration of the following: (a) preserving the integrity of the auction process and assuring that all offers are made in conformity therewith and in reliance thereon; (b) the monies spent by Seller to arrange for the auction; (c) the opportunity of the Purchaser to bid for the Property; (d) the promise by the Seller to sell the Property to Purchaser at the highest bid placed at the auction and (e) for other good and valuable consideration, the receipt and adequacy of which is expressly acknowledged by Purchaser, including the mutual promises made by each party, this Agreement constitutes an irrevocable offer to purchase by Purchaser in accordance with this Agreement which cannot be revoked by Purchaser. Seller acknowledges to Purchaser that Seller will execute this Agreement after Purchaser executes the Agreement and deposits with Escrow Agent the Initial Earnest Money because the Property is being sold absolute, without reserve subject only to approval by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), at either a reserve price to be agreed upon hereafter or without reservation as to price.

**51. BANKRUPTCY COURT APPROVAL AND SALE ORDER:** The parties' obligations set forth in this Agreement are expressly subject to approval by the United States Bankruptcy Court for the Southern District of New York ("Bankruptcy Court Approval") pursuant to an Order (the "Sale Order") approving the sale to the Purchaser and to the terms and conditions of such Sale Order. The Sale Order shall include factual findings and ordering provisions that (i) title to the Property shall be transferred to the Purchaser free and clear of all liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy Code, with all such liens, claims and encumbrances to attach to the proceeds of the sale; (ii) the Purchaser is purchasing the Property in "good faith" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections offered thereby; (iii) the Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and at arms' length bargaining position; (iv) the sale of the Property is in the best interests of the Seller, its creditors and its estate; and (v) the stay provided under the Rule 6004(g) of the Federal Rules of Bankruptcy Procedure shall be waived to the extent necessary to permit a Closing to occur as soon as possible after entry of the Sale Order.

**52. <u>AUCTION PROCEDURES ORDER.</u>**  The Purchaser's right to purchase the Property is governed by certain procedures established by an order of the Bankruptcy Court (the "Auction Procedures Order"), attached hereto as Exhibit "A".  Where the terms of this Agreement and the Auction Procedures Order conflict, the terms of the Auction Procedures Order will prevail.

IN WITNESS HEREOF, Purchaser and Seller agree that the Date of this Agreement shall be the date the Seller executes this Agreement.

**SELLER:**  **PURCHASER:**

_____
(Signature)

_____
(Print Name)

_____  _____
Authorized Signatory  Date of Purchaser's Offer

_____  _____
Date of Seller's Acceptance  (Signature)

_____
(Print Name)

_____
Date of Purchaser's Offer

The attached Exhibits are hereby incorporated herein by reference: