**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza, as Chapter 11 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com
Deborah J. Piazza, Esq.
dpiazza@tarterkrinsky.com
Jill Makower, Esq.
jmakower@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

BRONX MIRACLE GOSPEL TABERNACLE  Chapter 11
WORD OF FAITH MINISTRIES, INC.
*aka* Bronx Miracle Gospel Tabernacle, Inc.  Case No. 19-12447 (SMB)

      Debtor.
---------------------------------------------------------------x

# CHAPTER 11 TRUSTEE'S PLAN OF REORGANIZATION
## <u>DATED OCTOBER 19, 2020</u>

# TABLE OF CONTENTS

**ARTICLE I INTRODUCTION** ................................................................................................ 1

**ARTICLE II DEFINITIONS. INTERPRETATION AND RULES OF CONSTRUCTION** ............................ 2

    **A.**    DEFINITIONS ................................................................................................ 2

    **B.**    INTERPRETATION, RULES OF CONSTRUCTION, COMPUTATION OF TIME AND CHOICE OF LAW ............ 10

**ARTICLE III DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS** ............................ 11

    **A.**    CLASS 1 – NEWELL SECURED CLAIM ............................................................ 12

    **B.**    CLASS 2 – NYC SECURED TAX CLAIM .......................................................... 12

    **C.**    CLASS 3 – NYC SECURED OATH CLAIM ........................................................ 12

    **D.**    CLASS 4 – GENERAL UNSECURED CLAIMS ...................................................... 12

**ARTICLE IV TREATMENT OF CLASSES OF CLAIMS AND UNCLASSIFIED CLAIMS** ...................... 12

    **A.**    UNCLASSIFIED CLAIMS ................................................................................ 12

        *1. United States Trustee Fees* ................................................................ 12
        *2. Administrative Claims* ...................................................................... 13
            **(a)**    **Generally** ................................................................ 13
            **(b)**    **Administrative Claims Incurred After Confirmation Date** ............ 13
        *3. Priority Tax Claims* .......................................................................... 14

    **B.**    CLASSIFIED CLAIMS .................................................................................... 14

        *1. Treatment of Class 1 Secured Claim (Newell Secured Claim)* ............ 14
        *2. Treatment of Class 2 Secured Claim (NYC Secured Tax Claim)* .......... 15
        *3. Treatment of Class 3 Secured Claim (NYC Secured OATH Claim)* ........ 15
        *4. Treatment of Class 4 General Unsecured Claims* .............................. 16

    **C.**    CONTROVERSY WITH RESPECT TO IMPAIRMENT ................................................ 17

**ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................... 17

    **A.**    EXECUTORY CONTRACTS AND UNEXPIRED LEASES .......................................... 17

    **B.**    REJECTION CLAIMS ...................................................................................... 17

    **C.**    BAR TO REJECTION CLAIMS .......................................................................... 17

**ARTICLE VI MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN** ............................ 18

    **A.**    IMPLEMENTATION ........................................................................................ 18

    **B.**    PLAN FUNDING .......................................................................................... 18

    **C.**    MANAGEMENT AFTER CONFIRMATION OF THE PLAN AND FILING OF TAX RETURNS ............ 18

    **D.**    DEBTOR'S CAUSES OF ACTION ...................................................................... 18

    **E.**    TRANSFER TAXES ........................................................................................ 18

    **F.**    BOOKS AND RECORDS .................................................................................. 19

**ARTICLE VII PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS** ...................... 19

    **A.**    RESOLUTION OF DISPUTED CLAIMS ................................................................ 19

| | | |
|---|---|---|
| **B.** | **RESERVE ACCOUNTS FOR DISPUTED CLAIMS** | 20 |
| **C.** | **ESTIMATION** | 20 |
| **D.** | **ALLOWANCE OF DISPUTED CLAIMS** | 21 |
| **E.** | **PAYMENT OF FUNDS FROM DISPUTED CLAIMS RESERVE** | 21 |

**ARTICLE VIII PROVISIONS GOVERNING DISTRIBUTIONS** ........ **22**

| | | |
|---|---|---|
| **A.** | **DISBURSING AGENT** | 22 |
| **B.** | **MINIMUM DISTRIBUTIONS** | 22 |
| **C.** | **UNCLAIMED DISTRIBUTIONS** | 22 |
| **D.** | **PROFESSIONAL FEES AND EXPENSES** | 23 |
| **E.** | **ROUNDING** | 24 |

**ARTICLE IX RETENTION OF JURISDICTION** ........ **24**

**ARTICLE X NOTICES** ........ **26**

**ARTICLE XI MISCELLANEOUS PROVISIONS** ........ **27**

| | | |
|---|---|---|
| **A.** | **APPLICABLE LAW** | 27 |
| **B.** | **UNENFORCEABILITY OF PARTICULAR PROVISIONS** | 27 |
| **C.** | **REVOCATION AND WITHDRAWAL PRIOR TO CONFIRMATION** | 27 |
| **D.** | **AMENDMENT AND MODIFICATION** | 27 |
| **E.** | **LIMITATION OF LIABILITY** | 28 |
| **F.** | **POST-CONFIRMATION PROFESSIONAL FEES** | 29 |
| **G.** | **SUCCESSORS AND ASSIGNS** | 29 |
| **H.** | **SUBSTANTIAL CONSUMMATION** | 30 |

# ARTICLE I

# INTRODUCTION

Deborah J. Piazza, as Chapter 11 trustee (the "Trustee") for the Debtor, hereby proposes the following plan of reorganization dated October 19, 2020 (the "Plan"), for the resolution of the Debtor's outstanding creditor Claims (as hereinafter defined). Reference is made to the Trustee's disclosure statement, dated October 19, 2020 (the "Disclosure Statement"), for a discussion of the Debtor's history and operations and a summary and analysis of the Plan and certain related matters.

This Plan provides for payment in full of all Allowed Claims (as defined herein), and with post-petition interest where applicable assuming Allowed Unsecured Claims are $150,000 or less in the aggregate. Therefore, all Classes of Creditors (as defined below) will be deemed to accept the Plan and no ballots for voting on the Plan will be distributed.

All holders of Claims are encouraged to review the Disclosure Statement and the Plan. To the extent the Plan is inconsistent with the Disclosure Statement, the Plan will govern. No materials other than the Disclosure Statement, exhibits and schedules attached thereto or referenced therein have been approved by the United States Bankruptcy Court for the Southern District of New York in connection with this Plan.

# ARTICLE II

## DEFINITIONS. INTERPRETATION AND RULES OF CONSTRUCTION

### A.    Definitions

In addition to those capitalized terms that are defined in other Articles of the Plan, the following terms (which appear in the Plan as capitalized terms) have the following meanings as used in the Plan.

**"Administrative Claim"** means any cost or expense of administration of the Chapter 11 Case allowed under §503(b) of the Bankruptcy Code that is entitled to priority under §507(a)(2) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the estate of the Debtor, operating the Debtor's church, and all compensation and reimbursement of expenses of Professionals allowed by the Bankruptcy Court under §§ 330, 331 and 503 of the Bankruptcy Code.

**"Allowed Amount"** shall mean the dollar amount of an Allowed Claim.

**"Allowed Claim"** means a Claim against the Debtor to the extent that the Claim is allowed pursuant to the Plan, or (a) a proof of such Claim was (i) timely filed, or (ii) deemed timely filed under applicable law or by reason of an order of the Bankruptcy Court; and (b)(i) after the applicable deadline for filing an objection to the Claim in accordance with the Plan has passed, the Trustee has not filed an objection or any such objection is withdrawn following the expiration of such applicable deadline, (ii) the Claim is allowed (but only to the extent allowed) by a Final Order, or (iii) the Claim is a Class 4 Claim that was Scheduled by the Debtor in accordance with Rule 1007 of the Bankruptcy Rules and not listed as disputed, contingent or unliquidated. Prior to the time that an objection has been or may be timely filed, for the purposes

of this Plan, a Claim shall be considered an Allowed Claim if (a) the Claim has been Scheduled; (b) the amount of the Claim specified in any filed proof of claim equals or is less than the amount of the Claim Scheduled by the Debtor as other than disputed, contingent or unliquidated; (c) the priority of the Claim specified in any filed proof of claim is of an equal or more junior priority than the priority of the Claim Scheduled by the Debtor; and (d) the Claim has not been Scheduled as disputed, contingent or unliquidated.  Terms such as "Allowed Priority Tax Claim" or "Allowed Secured Claim" mean, by way of example, an Allowed Claim that is also a Priority Tax Claim or Secured Claim, respectively.

**"Auction"** means the Trustee's auction of the Property conducted on July 20, 2020 which was authorized by the Bankruptcy Court.

**"Bankruptcy Code"** means Title 11 of the United States Code, as the same was in effect on the Filing Date, as amended from time to time, as applicable.

**"Bankruptcy Court"** means the United States Bankruptcy Court for the Southern District of New York or such other Court as may hereafter be granted jurisdiction over the Chapter 11 Case.

**"Bankruptcy Rules"** means the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules of the United States Bankruptcy Court for the Southern District of New York, as the same may from time to time be in effect and applicable to the Chapter 11 Case and proceedings therein.

**"Bar Date"** means June 29, 2020, which is the deadline to file proofs of Claim in the Chapter 11 Case as provided by order of the Bankruptcy Court [Dkt. No. 72], subsequent to which date a Proof of Claim may not be timely filed absent a Court order.

**"Broker Retention Order"** means the order entered by the Bankruptcy Court on April 2, 2020 [Dkt. No. 63] approving the Trustee's retention of Tamerlain Realty Corp. as her real estate broker.

**"Business Day"** means any day other than a Saturday, Sunday, or a "legal holiday" as such term is defined in Bankruptcy Rule 9006(a).

**"Cash"** means lawful currency of the United States and cash equivalents.

**"Chapter 11 Case"** means the case under Chapter 11 of the Bankruptcy Code commenced by the Debtor, Case No. 19-12447 (SMB), currently now pending in the Bankruptcy Court.

**"Claim"** means a claim against the Debtor or its property as defined in §101(5), and construed in §102(2), of the Bankruptcy Code.

**"Class"** means a group of Claims consisting of claims which are substantially similar to each other as classified pursuant to this Plan.

**"Confirmation"** means entry, within the meaning of Bankruptcy Rules 5003 and 9021, of the Confirmation Order.

**"Confirmation Date"** means the date upon which the Confirmation Order is entered in the Bankruptcy Court.

**"Confirmation Hearing"** means the hearing to be held by the Bankruptcy Court to consider Confirmation of this Plan.

**"Confirmation Order"** means the order of the Bankruptcy Court confirming this Plan pursuant to §1129 of the Bankruptcy Code.

**"Debtor"** means Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. aka Bronx Miracle Gospel Tabernacle, Inc.

**"Disbursing Agent"** means Deborah J. Piazza, who shall act as disbursing agent for the purpose of making all Distributions required under the Plan.

**"Disclosure Statement"** means the Trustee's Disclosure Statement to accompany her Plan of Reorganization dated October ____, 2020 (and all annexes attached thereto or referenced therein), which relates to the Plan and that is approved by the Bankruptcy Court pursuant to §1125 of the Bankruptcy Code.

**"Disputed Claim"** means a Claim or a request for payment of an Administrative Claim, as the case may be, as to which: (a) a proof of Claim or a request for payment of an administrative expense, as the case may be, has been filed with the Court or deemed filed under applicable law or order of the Court; (b) an objection has been timely filed; and (c) such objection has not been (i) withdrawn, (ii) overruled or denied in whole or part by a Final Order, or (iii) granted in whole or in part by a Final Order.  Prior to the time that an objection has been or may be timely filed, for purposes of this Plan, a Claim shall be considered a Disputed Claim: (i) to the extent and only to the extent the amount of the Claim specified in the proof of Claim exceeds the amount of any corresponding Claim listed by the Debtor in its Schedules, (ii) any corresponding Claim listed by the Debtor in its Schedules as disputed, contingent or unliquidated, irrespective of the amount scheduled, or (iii) if no corresponding Claim has been listed by the Debtor in its Schedules.

**"Disputed Claims Reserve"** means any depository account established pursuant to Article VII of this Plan.

**"Distribution Dates"** means any Business Day on or after the Effective Date on or by which Distributions of Cash are made pursuant to the Plan.

**"Distributions"** means the payments to creditors and others (e.g., Professional Persons) of Cash pursuant to and required by the Plan.

**"Effective Date"** means the date on which the Confirmation Order is entered and is not subject to a stay by any court with competent jurisdiction.

**"Estate"** means the estate created in the Chapter 11 Case under §541 of the Bankruptcy Code.

**"Executory Contract"** means an executory contract within the meaning of §365 of the Bankruptcy Code.

**"Face Amount"** means, with respect to any Claim:  (a) if the holder of such Claim has not timely filed proof thereof with the Bankruptcy Court, the amount, if any, of such Claim not listed in the Schedules as disputed, contingent or unliquidated; (b) if the holder of such Claim has timely filed proof thereof with the Bankruptcy Court, and the Trustee has not filed an objection, the amount stated in such proof; or (c) if a Claim has become an Allowed Claim pursuant to a Final Order, the amount of such creditor's Allowed Claim.

**"Filing Date"** means July 28, 2019, the date the Debtor filed its voluntary Chapter 11 petition with the Bankruptcy Court.

**"Final Order"** means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket of such court which, not having been reversed, modified, amended, or stayed and the time for seeking review of which by way of appeal, petition for certiorari, motion for reargument and rehearing or other review having expired, and

as to which no appeal, petition for certiorari, motion for reargument and rehearing or other review is pending, has become conclusive of all matters adjudicated thereby and is in full force and effect.

**"Governmental Unit"** shall have the meaning set forth at §101(27) of the Bankruptcy Code.

**"Insiders"** shall have the meaning contained in §101(31) of the Bankruptcy Code.

**"IRS"** means the United States Department of Treasury/Internal Revenue Service.

**"Lien"** means any charge against, or interest in, property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust or statutory lien.

**"Newell"** shall mean Newell Funding LLC, the holder of a foreclosure judgment against the Property.

**"Newell Allowed Secured Claim"** means $2,000,000 or such greater amount agreed between the Trustee and Newell or determined by the Bankruptcy Court.

**"Newell Secured Claim"** means the claim of Newell, filed as Claim no. 3 on the claims register and any amendments filed thereto.

**"NYC"** means New York City.

**"NYC Secured OATH Claim"** means the claim of NYC Office of Administrative Trials and Hearings, filed as Claim no. 5 on the claims register.

**"NYC Secured Tax Claim"** means the Secured Claim of NYC for any real estate taxes owed by the Debtor.

**"Person"** shall have the meaning ascribed to such term in §101(41) of the Bankruptcy Code.

**"Plan"** means this Plan of Reorganization, as altered, amended, or modified from time to time, and all attachments and exhibits thereto.

**"Priority Claim"** means any Allowed Claim entitled to priority pursuant to §507(a) of the Bankruptcy Code, other than (a) an Administrative Claim; and (b) a Priority Tax Claim.

**"Priority Tax Claim"** means a Claim by a Governmental Unit entitled to priority pursuant to any provision of §507(a)(8) of the Bankruptcy Code.

**"Pro Rata"** means with respect to the holder of an Allowed Unsecured Claim of a particular Class, the same proportion that the amount of such Allowed Claim bears to the aggregate amount of all Allowed Claims of such Class.

**"Professional"** means all attorneys, accountants, consultants or other Persons retained under an order of the Court on behalf of the Trustee in accordance with §327 of the Bankruptcy Code and to be compensated for services rendered pursuant to §§ 327, 328, 330, and 331 of the Bankruptcy Code.

**"Property"** means 2910 Barnes Avenue, Bronx, New York 10467.

**"Reorganized Debtor"** means the Debtor after the Effective Date.

**"Sale"** means the Trustee's sale of the Property.

**"Sale Order"** means the Bankruptcy Court's Order dated and entered on July 23, 2020 [Dkt. No. 105] approving the Sale of the Property to Samdani.

**"Samdani"** means Nasir Samdani, the purchaser of the Property.

**"Scheduled"** means as set forth in the Schedules of Assets and Liabilities.

**"Schedules of Assets and Liabilities"** means the Schedules of Assets and Liabilities and the Statement of Financial Affairs filed by the Debtor as required by §521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as the same have been or may be amended from time to time prior to the Effective Date.

**"Secured Claim"** means a Claim that is either (a) secured by a valid perfected and enforceable Lien on the property of the Debtor that is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, but only to the extent of the value, as set forth in an Allowed Claim or as determined by Final Order in accordance with §§ 506(a) or 1111(b) of the Bankruptcy Code, of the interest of the claimant in the Debtor's property securing such Claim; or (b) for which the holder asserts a valid setoff under §553 of the Bankruptcy Code. To the extent that the amount claimed by the holder of a Secured Claim exceeds the value of the property securing such Claim, the holder of such Secured Claim shall have an Unsecured Claim equal to the amount of the excess.

**"Transfer Taxes"** means, without limitation, (i) New York City or other applicable local real property transfer taxes, (ii) New York State mortgage recording taxes imposed under Article 11 of the New York State Tax Law, and (iii) and any and all other stamp taxes or similar taxes.

**"Trustee"** means Deborah J. Piazza, solely in her capacity as Chapter 11 Trustee of the Debtor.

**"Unexpired Lease"** means an unexpired lease within the meaning of §365 of the Bankruptcy Code.

**"Unimpaired Class"** means a Class that is not impaired for purposes of § 1124 of the Bankruptcy Code.

**"Unsecured Claim"** means a Claim against the Debtor that is not an Administrative Claim, Priority Tax Claim, Priority Claim, or Secured Claim.

**"Unsecured Creditor"** means the holder of an Unsecured Claim.

**B.**     **Interpretation, Rules of Construction,**
**Computation of Time and Choice of Law**

In the event of a conflict between the Plan and the Disclosure Statement, the contents of the Plan shall control over the contents of the Disclosure Statement. The provisions of the Confirmation Order shall control over the contents of the Plan.

Any term used in the Plan that is not otherwise defined in the Plan either in Article II.A (Definitions) or elsewhere, but that is used in the Bankruptcy Code or the Bankruptcy Rules has the meaning assigned to that term in (and shall be construed in accordance with the rules of construction under) the Bankruptcy Code or the Bankruptcy Rules. Without limiting the foregoing, the rules of construction set forth in §102 of the Bankruptcy Code shall apply. The definitions and rules of construction contained herein shall also apply to the Disclosure Statement and to the exhibits to the Plan except to the extent expressly so stated in the Disclosure Statement or in each particular exhibit to the Plan.

The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular Article, Section, Subsection, or Clause contained in the Plan. The word "including" shall mean "including, without limitation."

Any reference in the Plan to an existing document or exhibit means such document or exhibit, as it may have been amended, restated, modified, or supplemented as of the Effective Date.

Captions and headings to Articles, Sections, Subsections, and Clauses in the Plan are inserted for convenience of reference only and shall neither constitute a part of the Plan nor in any way affect the interpretation of the provisions hereof.

Whenever from the context it is appropriate, each term stated in either the singular or the plural shall include both the singular and the plural.

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

All exhibits to the Plan are incorporated into the Plan, and shall be deemed to be included in the Plan, regardless of when they are filed.

Subject to the provisions of any contract, certificate, bylaws, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with federal law, including the Bankruptcy Code and Bankruptcy Rules.

## ARTICLE III

## DESIGNATION OF CLASSES OF CLAIMS AND EQUITY INTERESTS

The following is a designation of the Classes of Claims under the Plan.  Administrative Claims, Priority Tax Claims, and fees due to the United States Trustee pursuant to 28 U.S.C. §1930 have not been classified and are excluded from the following Classes in accordance with §1123(a)(1) of the Bankruptcy Code.  A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class.

**A.**    **Class 1 – Newell Secured Claim**

Class 1 consists of the Newell Secured Claim against the Debtor.

**B.**    **Class 2 – NYC Secured Tax Claim**

Class 2 consists of the NYC Secured Tax Claim against the Debtor.

**C.**    **Class 3 – NYC Secured OATH Claim**

Class 3 consists of the NYC Secured OATH Claim against the Debtor.

**D.**    **Class 4 – General Unsecured Claims**

Class 4 consists of all Allowed Unsecured Claims against the Debtor.

## ARTICLE IV

### TREATMENT OF CLASSES OF CLAIMS
### AND UNCLASSIFIED CLAIMS

**A.**    **Unclassified Claims**

    **1.**    **United States Trustee Fees**

All fees payable by the Debtor's Estate under §1930 of Title 28 of the United States Code

plus interest, if any, under 31 U.S.C. § 3717 that have not been paid prior to the Effective Date

shall be paid by the Trustee on behalf of the Estate on the Effective Date. In addition, the Trustee

on or after the Effective Date, shall be liable for and the Disbursing Agent shall pay such fees

until the entry of a final decree in this case or until the case is converted or dismissed. The

Disbursing Agent shall file post-Confirmation operating reports with the Bankruptcy Court and

the United States Trustee until a final decree is entered.

2. <u>**Administrative Claims**</u>

    (a)    <u>**Generally**</u>

Except as provided otherwise in this Article IV of the Plan, each holder of an Allowed Administrative Claim (including, without limitation, the Trustee's commissions and Professionals' fees and expenses allowed in a Final Order of the Bankruptcy Court) shall be paid in full, in Cash, by the Disbursing Agent (i) on the later to occur of the Effective Date and the date the order allowing such Administrative Claim becomes a Final Order; or (ii) upon such less favorable terms as may be agreed between any holder of such Administrative Claim and the Trustee.  Notwithstanding the foregoing, pursuant to Broker Retention Order, the Trustee paid the 4% brokerage fee upon the closing of the Sale of the Property (2% to Tamerlain Realty Corp. and 2% to the co-broker).

    (b)    <u>**Administrative Claims Incurred After Confirmation Date**</u>

Administrative Claims representing obligations incurred by the Trustee after the Confirmation Date shall not be subject to application to the Bankruptcy Court and may be paid by the Disbursing Agent in the ordinary course of business and without further Bankruptcy Court approval.  As more fully set forth herein, after the Confirmation Date, the Disbursing Agent shall in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of Professionals employed by the Disbursing Agent, in connection with the implementation and consummation of this Plan, the Claims reconciliation process and any other matters as to which such Professionals may be engaged.  The fees and expenses of such Professionals shall be submitted monthly to the Trustee and the Office of the United States Trustee by such Professionals in the form of a detailed invoice therefor, and shall

be paid by the Disbursing Agent within ten (10) Business Days after such submission unless otherwise restricted by other provisions of the Plan. If the Trustee disputes the reasonableness of any such invoice within ten (10) days of receipt of such proposed fees, the Disbursing Agent shall timely pay the undisputed portion of such invoice, and the Trustee or the affected Professional may, after attempting to resolve the dispute, submit such dispute to the Bankruptcy Court for a determination of the reasonableness of such invoice.

### 3.    **Priority Tax Claims**

Each holder of an Allowed Priority Tax Claim that has not been paid prior to the Effective Date shall be paid in full or such lesser amount as agreed between the holder of such Priority Tax Claim and the Trustee, in Cash on the later of (i) the Effective Date; and (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

The holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of interest, or on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except to the extent allowed as a part of an Allowed Priority Tax Claim pursuant to §507(a)(2) of the Bankruptcy Code.

### B.    **Classified Claims**

### 1.    **Treatment of Class 1 Secured Claim (Newell Secured Claim)**

Allowed Claims in Classes 1,2,3 and 4 shall receive the following treatment under the plan in full settlement, release and discharge thereof.

Newell's Class 1 Claim is unimpaired under the Plan. Newell is therefore deemed to accept the Plan.

The Newell Allowed Secured Claim has been paid from the Sale proceeds. In the event the Trustee and Newell agree the Newell Allowed Secured Claim exceeds $2,000,000, the Trustee shall pay same on or prior to the Effective Date. In the event the Bankruptcy Court determines the Newell Allowed Secured Claim exceeds $2,000,000, the Trustee shall pay the Allowed Amount upon entry of an order establishing the Newell Allowed Secured Claim.

      **2.**        **Treatment of Class 2 Secured Claim (NYC Secured Tax Claim)**

NYC's Class 2 Claim is unimpaired under the Plan. NYC is therefore deemed to accept Plan.

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, and only to the extent the Holder of the NYC Secured Tax Claim was not paid and satisfied, in full satisfaction of the NYC Secured Tax Claim, the holder of the NYC Secured Tax Claim shall receive (i) a Cash payment from the Disbursing Agent in the full amount of its Allowed Secured Claim on the later of (x) on the Effective Date, or (y) the date such taxes are due under applicable law, or (z) as soon as practicable after such claim becomes an Allowed Secured Claim, or (ii) such other treatment as may otherwise be agreed to in writing by the Trustee and the Holder of such NYC Secured Tax Claim.

      **3.**        **Treatment of Class 3 Secured Claim (NYC Secured OATH Claim)**

NYC's Class 3 Claim is unimpaired under the Plan.  NYC is therefore deemed to accept the Plan.

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, and only to the extent the Holder of the NYC Secured OATH Claim was not paid and satisfied, in full satisfaction of the NYC Secured OATH Claim, the holder of the NYC Secured OATH Claim shall receive (i) a Cash payment from the Disbursing Agent in the full amount of its Allowed

Secured Claim with post-petition interest at nine (9%) per annum percent on the later of (x) on the Effective Date, or (y) the date such amounts are due under applicable law, or (z) as soon as practicable after such claim becomes an Allowed Secured Claim, or (ii) such other treatment as may otherwise be agreed to in writing by the Trustee and the Holder of such NYC Secured OATH Claim.  The Trustee reserves the right to object to the NYC Secured OATH Claim and/or seek to have the Debtor's defaults relating to such Claim and/or the underlying violations vacated and to have the related fines reduced.

4.      **Treatment of Class 4 General Unsecured Claims**

Class 4 is unimpaired under the Plan.  Holders of Claims in Class 4 are therefore deemed to accept the Plan.

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction and settlement (as applicable), of the Class 4 Unsecured Claims, the Holders of the Class 4 Unsecured Claims shall receive (i) a Cash payment from the Disbursing Agent in the full amount of each Holder's Allowed Unsecured Claim with post-petition interest at three (3%) percent per annum on the Effective Date, or as soon thereafter as practicable after such Claim becomes an Allowed Unsecured Claim, or (ii) such other treatment as may otherwise be agreed to in writing by the Trustee and the Holder of such Unsecured Claim, or (iii) such other treatment as provided for by Bankruptcy Court Order.  The Trustee believes a three (3%) percent interest rate from the Filing Date until payment is sufficient for the Court to determine holders of Allowed Class 4 Claims are unimpaired. In the event Allowed Class 4 Claims exceed $150,000 in the aggregate, the Trustee reserves the right to file an amended plan or seek such other relief not inconsistent with the the the Bankruptcy Code.

**C.**    **Controversy with Respect to Impairment**

In the event of a controversy as to whether a Class of Claims is Impaired, the Court shall determine such controversy at the Confirmation Hearing.

## ARTICLE V

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**A.**    **Executory Contracts and Unexpired Leases**

On the Effective Date, all Executory Contracts and Unexpired Leases to which Debtor is a party, if any, shall be deemed rejected.

**B.**    **Rejection Claims**

Allowed Claims arising from the rejection of any Executory Contract or Unexpired Lease of the Debtor shall be treated as a Class 4 Unsecured Claim.

**C.**    **Bar to Rejection Claims**

A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan shall not be timely filed unless it is filed with the Bankruptcy Court and served so that it is received by the Disbursing Agent not later than 30 days after the earlier of (i) the date of entry of a Final Order approving such rejection (unless such Final Order expressly provides a Bar Date with respect to such Claim, in which event no Proof of Claim with respect to such Claim shall be deemed timely unless it is filed with the Bankruptcy Court and served in the manner provided in such Final Order), and (ii) the Effective Date. Any such Proof of Claim not timely filed and served shall be forever barred from assertion and may not be enforced against the property of the Estate, the Debtor, or its successors or their respective properties.

## ARTICLE VI

## MEANS FOR EXECUTION AND IMPLEMENTATION OF THE PLAN

**A.     Implementation**

The closing of the Sale of the Property to Samdani occurred on October 6, 2020. All holders of Allowed Claims will receive Distributions from the Sale proceeds.

**B.     Plan Funding**

Funding for the Plan shall be from the proceeds of the Sale of the Debtor's Property.

**C.     Management After Confirmation of the Plan and Filing of Tax Returns**

Until such time as the Plan has been substantially consummated, Deborah J. Piazza shall be the Disbursing Agent under the Plan.   The Disbursing Agent is authorized to take whatever actions are necessary to effectuate the provisions of this Plan.   Other than the Distributions required by the Plan and the resolution of all Claims, the Reorganized Debtor shall be entitled to resume management and control of all of the Debtor's assets other than Cash held by the Trustee.

**D.     Debtor's Causes of Action**

Effective as of the Effective Date, all causes of action and/or claims which the Debtor has or may have against any third party, if any, shall revert to the Reorganized Debtor.   The Reorganized Debtor shall be entitled to assert such claims, if any, as it deems appropriate, subject to any and all defenses, offsets and counterclaims.

**E.     Transfer Taxes**

(a) The Trustee's Sale of the Property is a conveyance pursuant to section 363 of the Bankruptcy Code, and the Property is being transferred from a not for profit corporation.

Accordingly, the Sale is not subject to any New York City transfer tax or any New York State transfer tax.  See N.Y. Admin. Code § 11–2106(b)(2); N.Y. Tax Law § 1405(b)(8).

    (b) Pursuant to § 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the register's office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.

**F.**    **Books and Records**

All records under the control of the Trustee relating solely to the Property will be transferred to Samdani in connection with the Sale.

To the extent any books and records (including any digital records and computer hardware) are not transferred by the Sale, they shall be abandoned and revert to the Reorganized Debtor.

Notwithstanding the transfer of any of the Debtor's books and records by the Trustee, the Trustee shall be entitled to retain copies for the purposes of filing tax returns and for the purposes of investigating whether causes of action exist.

## ARTICLE VII

### PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

**A.**    **Resolution of Disputed Claims**

Objections to Disputed Claims shall be filed with the Bankruptcy Court by the Trustee and served upon the holder of such Disputed Claim to which objection is made not later than thirty (30) days subsequent to the Effective Date, unless extended by Court order within such thirty (30) day period for cause.  Disputed Claims shall be divided into two (2) portions:  the "non-disputed portion" and the "disputed portion."  The Disbursing Agent shall pay the non-

disputed portion of a Disputed Claim in accordance with the Plan's provisions for payment of Allowed Claims in its Class.

**B.    Reserve Accounts for Disputed Claims**

On and after the date on which the Disbursing Agent makes her first payment and any subsequent payment to holders of Allowed Claims pursuant to Article IV of this Plan, the Disbursing Agent shall hold, in one or more Disputed Claims Reserves, Cash in an aggregate amount sufficient to pay each holder of a Disputed Claim (i) the amount of Cash that such holder would have been entitled to receive under this Plan for the disputed portion of such Claim if such disputed portion of such Claim had been an Allowed Claim on the date of such payment, or (ii) such lesser amount as the Court may estimate pursuant to Section C of this Article VII of this Plan or may otherwise order.  Cash withheld and reserved for payments to holders of Disputed Claims shall be held and deposited by the Disbursing Agent in one or more segregated reserve accounts to be used to satisfy such Claims under the Plan, if and when such Disputed Claims become Allowed Claims.

**C.    Estimation**

The Trustee may, at any time, request the Court estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code regardless of whether the Trustee has previously objected to such Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during litigation, concerning any objection to such Claim.  In the event that the Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed Amount of such Claim, the amount on which a reserve is to be calculated for purposes of the Disputed Claims Reserve, or a maximum limitation on such Claim, as determined by the Court.  If the estimated

amount constitutes a maximum limitation on such Claim, the Trustee may elect to pursue any supplemental proceedings to object to the ultimate payment of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not necessarily exclusive of one another.

**D.    Allowance of Disputed Claims**

If, on or after the Effective Date, any Disputed Claim becomes an Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the Claim becomes an Allowed Claim, or as soon thereafter as is practicable, distribute from the Disputed Claims Reserve to the holder of such Allowed Claim the amount of Cash that such holder would have been entitled to receive under this Plan if such disputed portion of such Claim had been an Allowed Claim on the Effective Date, which shall not exceed the amount of Cash reserved on account of such Claim.  Notwithstanding anything to the contrary contained in this Plan, the Disbursing Agent shall make a Distribution on the non-disputed portion of an Unsecured Claim in accordance with the provisions of the Plan.

**E.    Payment of Funds from Disputed Claims Reserve**

If at any time, or from time to time after the Effective Date, there shall be Cash in the Disputed Claims Reserve in an amount in excess of the amount which the Trustee is required at such time to reserve on account of Disputed Claims under this Plan or pursuant to any Order of the Bankruptcy Court, such excess funds shall be remitted to the Disbursing Agent for Distribution under the Plan.

## ARTICLE VIII

## PROVISIONS GOVERNING DISTRIBUTIONS

**A.    Disbursing Agent**

The Trustee shall act as Disbursing Agent on behalf of the Estate for purposes of making all Distributions under the Plan.  The Disbursing Agent shall not be liable for any act or omission taken or omitted to be taken in her capacity as a Disbursing Agent other than acts or omissions resulting from her willful misconduct, gross negligence, fraud or breach of fiduciary duty.  The Disbursing Agent shall not be required to obtain a bond other than the bond secured in connection with her appointment.

**B.    Minimum Distributions**

If a Distribution to be made to a holder of an Allowed Claim on or after the Effective Date would be $25 or less, notwithstanding any contrary provision of this Plan, no such Distribution will be made to such holder unless a request therefor is made in writing to the Disbursing Agent.

**C.    Unclaimed Distributions**

Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders unless <u>no</u> proof of Claim has been filed, in which case then to the address set forth on the Schedules, unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

If any Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is notified in writing of such holder's then

current address, at which time, subject to the next paragraph, all Distributions shall be made to such holder, without interest.

All Claims for undeliverable Distributions shall be made on or before the earlier of (i) with respect to the initial Distributions made on or after the Effective Date, one hundred and twenty (120) days after the date such undeliverable Distribution was initially made; and (ii) with respect to the Distributions made on a subsequent interim payment date, ninety (90) days after the date such undeliverable Distribution was initially made.  If any Claim for an undeliverable Distribution is not timely made as provided in the foregoing sentence, such Claim shall be forever barred unless the holder of such Claim moves the Court, on notice to the Disbursing Agent, to reinstate such Claim, and such motion is granted, provided that Available Cash remains from which such Distributions on account of such Claim could be made.  After such date (as applicable), all unclaimed Distributions shall be applied first to satisfy the costs of administering and fully consummating this Plan, then to Available Cash for Distribution in accordance with this Plan.

D.      **Professional Fees and Expenses**

Within forty-five (45) days after the Confirmation Date each of the Professionals requesting compensation in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date or be forever barred from obtaining such compensation and reimbursement; provided, however,  the Broker Retention Order states: "any brokerage fee that shall be owing to Tamerlain in accordance with this Order shall be paid on the closing date of the sale of the

Property, and under no circumstances shall the total brokerage fee paid to Tamerlain, including any cooperating broker, exceed four (4%) percent of the gross sale price of the Property[.]"

**E.**     **Rounding**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect the rounding of such fraction to the nearest whole cent with the one-half cent being rounded up to the nearest whole cent.

**ARTICLE IX**

**RETENTION OF JURISDICTION**

Following Confirmation, except as provided below, the Bankruptcy Court shall retain such jurisdiction as is legally permissible after Confirmation, including, without limitation, for the following purposes:

1.     To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions.

2.     To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

3.     To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

4.     To hear and determine motions to approve the rejection, assumption or assumption and assignment of Executory Contracts or Unexpired Leases under §365 of the Bankruptcy Code.

5.      To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Trustee during the pendency of the Chapter 11 Case, including the Sale.

6.      To hear and determine all Claims arising from the rejection of Executory Contracts or Unexpired Leases.

7.      To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

8.      To make orders allowing amendment of the Schedules for any purpose, including, without limitation, to pursue objections to Claims not previously listed as disputed, contingent or unliquidated.

9.      To hear and determine all applications for compensation of Professionals' fees and reimbursement of expenses arising out of or relating to the Chapter 11 Case or any Claims.

10.      To hear and determine any and all motions to abandon property of the Debtor's Estate.

11.      To make such other orders or give such directions as permitted by §1142 of the Bankruptcy Code.

12.      To consider and order any modifications or amendments requested to the Plan.

13.      To remedy any defect or omission, or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

14.      To make all orders necessary or appropriate to carry out the provisions of the Plan.

15.      To enforce all orders previously entered by the Bankruptcy Court.

16.     To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code, including hearing any matters related to claims asserted against the Trustee.

## ARTICLE X

## NOTICES

Except as otherwise herein provided, all notices required to be made in or under the Plan shall be in writing and shall be mailed by registered or certified mail, return receipt requested:

| | |
|---|---|
| If to the Trustee: | Deborah J. Piazza, Esq.<br>Tarter Krinsky & Drogin LLP<br>1350 Broadway,11th Floor<br>New York, NY 10018 |
| With a copy to: | Tarter Krinsky & Drogin LLP<br>1350 Broadway, 11th Floor<br>New York, New York 10018<br>Attn:  Scott S. Markowitz, Esq. and Jill Makower, Esq. |
| If to the Debtor: | Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. aka Bronx Miracle Gospel Tabernacle, Inc.<br>c/o Pastor Keith Elijah Thompson<br>2934 Pearsall Avenue<br>Bronx, NY 10469 |
| | -and - |
| | Karamvir Dahiya, Esq.<br>Dahiya Law Offices, LLC<br>75 Maiden Lane, Suite 506<br>New York, New York 10038 |

Any person may change the address at which he/she is to receive notices for purposes of this Plan by sending written notice pursuant to this provision to the Trustee or the Disbursing Agent.  Furthermore, notice shall be given to the above and their successors.

**ARTICLE XI**

**MISCELLANEOUS PROVISIONS**

**A.**    **Applicable Law**

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights and obligations arising under this Plan are governed under New York Law.

**B.**    **Unenforceability of Particular Provisions**

Should any provision in this Plan be determined to be unenforceable in whole or in part, such determination shall in no way limit or affect the enforceability and operative effect of the remainder of this Plan, including any of its provisions to the extent not determined to be unenforceable.

**C.**    **Revocation and Withdrawal Prior to Confirmation**

The Trustee reserves the right to revoke and withdraw this Plan prior to the Confirmation Date.  If the Trustee revokes or withdraws this Plan, or if the Confirmation Date, or the Effective Date does not occur, this Plan shall be deemed null and void, and in such event nothing contained herein shall be deemed to constitute a waiver or release of any claim by or against the Debtor or any other entity, or to prejudice in any manner the rights of the Trustee or Debtor or any entity in any further proceedings involving the Debtor.

**D.**    **Amendment and Modification**

The Trustee may propose amendments to, or modification of, this Plan at any time at or before Confirmation.  After Confirmation of the Plan, the Trustee may, with the approval of the Bankruptcy Court and so long as it does not materially adversely affect the treatment of any Claim, amend the Plan to remedy any defect or omission or reconsider any inconsistencies in the

Plan or in the Confirmation Order as necessary or desirable to carry out the purpose and effect of the Plan.

E.    **Limitation of Liability**

**The Trustee (except as provided in the Plan) and her employees and agents (including any Professionals employed by one or more of them), shall have no liability to any holder of a Secured Claim, an Administrative Claim, Priority Claim, Unsecured Claim, or any other person under any theory of liability for any act taken or omission made with respect to the Debtor since the Filing Date or in connection with, related to, or arising out of, the formulation, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, agreement or document created in connection with the Plan, the pursuit of approval of the Disclosure Statement or the solicitation of votes for or confirmation of the Plan, or the administration of the Chapter 11 Case, the Plan or the property to be distributed under the Plan, except for their respective willful misconduct, gross negligence or breach of fiduciary duty as determined by Final Order of the Bankruptcy Court and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  The limitation of liability set forth herein shall be deemed to be no greater in scope than the protections afforded under §1125(e) of the Bankruptcy Code.  In addition, nothing herein shall be interpreted to permit a release in violation of §1.8(h)(1) of the New York State Rules of Professional Conduct.  Nothing herein shall limit the right of the United States Government, local governments or any of their agencies to assert any claim against the foregoing parties, including without limitation, any claim arising under the Internal**

**Revenue Code, the environmental laws, or the criminal laws of the United States, nor shall anything in the Confirmation Order or Plan limit, impair, or in any way affect the application of any laws or regulations of the United States or local governments. Any action commenced by any person or entity against the Trustee shall only be pursued in the Bankruptcy Court unless permission is granted by the Bankruptcy Court to pursue the Trustee in another court.**

**F.    Post-Confirmation Professional Fees**

Subsequent to the Confirmation Date and all other restrictions contained in this Plan, the Trustee shall be authorized and directed to pay reasonable professional fees and expenses relating to the post-Confirmation administration of the Estate and this Plan incurred by Professionals in accordance with the procedures set forth herein.

**G.    Successors and Assigns**

The rights, duties and obligations of any Person named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such Person.

**H.**    **Substantial Consummation**

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101(a) and 1127(b) of the Bankruptcy Code.

Dated: New York, New York
      October 19, 2020

Deborah J. Piazza as *Chapter 11 Trustee of Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. aka Bronx Miracle Gospel Tabernacle, Inc.*


By:   /s/ Scott S. Markowitz           
      Scott S. Markowitz, Esq.
      Deborah J. Piazza, Esq.
      Jill Makower, Esq.
      1350 Broadway, 11th Floor
      New York, New York 10018
      (212) 216-8000
      smarkowitz@tarterkrinsky.com
      dpiazza@tarterkrinsky.com
      jmakower@tarterkrinsky.com
