**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza, as Chapter 11 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com
Jill Makower, Esq.
jmakower@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

BRONX MIRACLE GOSPEL TABERNACLE      Chapter 11
WORD OF FAITH MINISTRIES, INC.
*aka* Bronx Miracle Gospel Tabernacle, Inc.      Case No. 19-12447 (SMB)

                Debtor.
---------------------------------------------------------------x

## CHAPTER 11  TRUSTEE'S DISCLOSURE STATEMENT TO ACCOMPANY HER PLAN OF REORGANIZATION FOR THE DEBTOR DATED OCTOBER 19, 2020

# TABLE OF CONTENTS

DISCLOSURE STATEMENT ........................................................................................................ 1

I INTRODUCTION.......................................................................................................................... 1

CAUTIONARY STATEMENT ...................................................................................................... 4

SUMMARY OF CLASSIFICATION AND TREATMENT ........................................................... 4

II VOTING AND CONFIRMATION OF PLAN............................................................................. 6

    A.    No Classes Are Impaired Under The Plan ....................................................................... 6

    B.    Class Acceptance Of The Plan ........................................................................................ 6

III THE DEBTOR AND ITS OPERATIONS .................................................................................. 6

    A.    The Debtor........................................................................................................................ 6

    B.    The Property..................................................................................................................... 7

    C.    Lender's Secured Debt .................................................................................................... 7

    D.    The Debtor's Prior Chapter 11 Case............................................................................... 7

    E.    The Debtor's Current Chapter 11 Filing ......................................................................... 8

    F.    Schedules of Assets and Liabilities ................................................................................ 8

    G.    Significant Post-Petition Events ..................................................................................... 8

        1.    Newell's Motion For Appointment of A Chapter 11 Trustee................................ 8
        2.    Retention of Professionals ...................................................................................... 9
        3.    Sale of the Property ................................................................................................ 9
        4.    Debtor's And Debtor's Adherents' Motion To Vacate The Appointment Order And The Sale
        Order .................................................................................................................... 10
        5.    Debtor's And Church Members' Motions To Stay The Sale of the Property, And Debtor's
        Appeal ................................................................................................................. 11
        6.    The Closing of The Sale of The Property ............................................................ 11

    H.    Operating Reports.......................................................................................................... 12

    I.    Bar Date And Objections To Claims ............................................................................. 13

IV SUMMARY OF THE PLAN.................................................................................................... 17

    A.    General .......................................................................................................................... 17

        1.    Brief Explanation of Chapter 11 ......................................................................... 17
        2.    Classification of Claims and Interests Generally ................................................ 18

    B.    Classification and Treatment of Claims Under the Plan ............................................... 19

        1.    Unclassified Claims .............................................................................................. 19
            (a)    *United States Trustee Fees*............................................................................ 19
            (b)    *Administrative Claims*.................................................................................. 20
            (c)    *Priority Tax Claims*....................................................................................... 21
        2.    Classified Claims ................................................................................................. 22
        a.    Class 1 – Newell Secured Claim.......................................................................... 22
        b.    Class 2 – NYC Secured Tax Claim ...................................................................... 22
        c.    Class 3 – NYC Secured OATH Claim .................................................................. 23
        d.    Class 4 - General Unsecured Claims ................................................................... 23

    C.    Conditions to and Means for Consummation of the Plan ............................................. 24

        1.    Conditions Precedent to Occurrence of the Effective Date .................................. 24

  2. **Funding of the Plan** .......................................................................................... 24

  3. **Causes of Action** ............................................................................................. 24

  4. **Abandonment** ................................................................................................... 25

  5. **Transfer Taxes** ................................................................................................. 25

 **D.** **Objections to Claims** .............................................................................................. 25

 **E.** **Resolution of Disputed Claims** ............................................................................. 26

 **F.** **Reserve Accounts for Disputed Claims** ............................................................... 26

 **G.** **Estimation** ............................................................................................................... 26

 **H.** **Allowance of Disputed Claims** .............................................................................. 27

 **I.** **Payment of Funds from Disputed Claims Reserve** ............................................. 27

 **J.** **Limitation on Liability** .......................................................................................... 27

 **K.** **Certain Other Provisions of The Plan** ................................................................. 29

  1. **Disbursing Agent** ............................................................................................. 29

  2. **Payments by Cash** ........................................................................................... 29

  3. **Unclaimed Distributions** ................................................................................. 29

  4. **Executory Contracts and Unexpired Leases** ................................................. 30

   (a) *Assumption and Rejection Generally* ...................................................... *30*

   (b) *Rejection of Executory Contracts and Unexpired Leases* ...................... *31*

  5. **Professional Fees and Expenses** ...................................................................... 31

  6. **Abandonment and Destruction of Books and Records** ................................ 31

  7. **Retention of Jurisdiction** ................................................................................. 31

**V CONFIRMATION PROCEDURES** ............................................................................... **33**

 **A.** **Solicitation of Votes; Acceptance** ......................................................................... 34

 **B.** **Confirmation Hearing** ........................................................................................... 34

 **C.** **Best Interests Test/Liquidation Analysis** ............................................................. 35

**VI CERTAIN FEDERAL INCOME TAX CONSIDERATIONS** .................................... **36**

**VII CONCLUSION AND RECOMMENDATION** ............................................................ **38**

## DISCLOSURE STATEMENT

On July 28, 2019 (the "Filing Date"), Bronx Miracle Gospel Tabernacle Word Of Faith Ministries, Inc. *aka* Bronx Miracle Gospel Tabernacle, Inc. (the "Debtor") filed a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

On January 8, 2020, the Bankruptcy Court entered an order (the "Appointment Order") [Dkt. No. 41][1] directing *inter alia,* the appointment of a Chapter 11 trustee in the Debtor's Chapter 11 case (the "Chapter 11 Case") and on January 27, 2020, the Bankruptcy Court entered an order [Dkt. No. 45] confirming the appointment of Deborah J. Piazza as the Chapter 11 trustee (the "Trustee") of the Debtor.

Pursuant to §1125 of the Bankruptcy Code, the Trustee submits this disclosure statement (the "Disclosure Statement") relating to her plan of reorganization, dated October 19, 2020 (the "Plan").

## I

## INTRODUCTION

The Trustee provides this Disclosure Statement to all of the Debtor's known creditors and other parties in interest in order to provide adequate information regarding the Plan. All holders of Claims are hereby advised and encouraged to read this Disclosure Statement and the Plan in their entirety.

The Plan summary and statements made in this Disclosure Statement are qualified in their entirety by reference to the Plan (a copy of which accompanies this Disclosure Statement as

---

[1] Unless otherwise noted, docket number citations refer to the docket in this case.

Exhibit "A").[2]

By Order dated October ____, 2020, the Bankruptcy Court (i) preliminarily and conditionally approved this Disclosure Statement as containing adequate information of a kind and in sufficient detail to enable creditors of the Debtor to make an informed judgment about the Plan, and (ii) scheduled a combined hearing on the final approval of the Disclosure Statement and the confirmation of the Plan. Any objections to the adequacy of this Disclosure Statement or confirmation of the Plan may be made at the Confirmation Hearing.  The Court's preliminary approval of this Disclosure Statement does not constitute a recommendation by the Court either for or against the Plan. No statements or information concerning the Plan and the transactions contemplated thereby have been authorized, other than the statements and information set forth in this Disclosure Statement. All other statements regarding the Plan and the transactions contemplated, whether written or oral, are unauthorized.  The Bankruptcy Court has scheduled a telephonic hearing to consider Confirmation of the Plan and Final Approval of the Disclosure Statement for December ____, 2020 at 10:00 a.m. at the United States Bankruptcy Court located at One Bowling Green, New York, New York.[3]  The Confirmation Hearing may be adjourned from time to time without further notice other than by announcement in Court on the scheduled date of the Confirmation Hearing.  At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code.

**No representations concerning the Debtor, the estimated value of the Debtor's property and/or the estimated assets to be generated from the reorganization or the liquidation of the Debtor's Property or any other assets are authorized by the Trustee**

---

[2] Capitalized terms not otherwise defined in this Disclosure Statement have the meanings assigned to them in the Plan.

[3] In order to participate at the hearing telephonically, any party in interest may sign up or register at www.court-solutions.com. Please contact Court Solutions at  917-746-7476 or info@Court-Solutions.com for general questions.

other than as set forth in this Disclosure Statement.

THE TRUSTEE BELIEVES THE PLAN PROVIDES THE GREATEST AND EARLIEST POSSIBLE RECOVERIES TO ALL CREDITORS UNDER THE CIRCUMSTANCES. THE TRUSTEE BELIEVES THE PLAN IS IN THE BEST INTEREST OF EACH AND EVERY CLASS OF CREDITORS IN THAT ALL CREDITORS SHOULD RECEIVE 100% RECOVERY ON ACCOUNT OF THEIR ALLOWED CLAIMS.

This Disclosure Statement is based upon information available to the Trustee as of the date of the Disclosure Statement and does not reflect events that may occur subsequent to that date, which may have a material impact on the information contained in this Disclosure Statement. The Trustee will not make any effort to supplement or amend this Disclosure Statement to reflect changes subsequent to the date hereof.

THIS DOCUMENT WAS COMPILED FROM INFORMATION OBTAINED BY THE TRUSTEE FROM NUMEROUS SOURCES BELIEVED TO BE ACCURATE TO THE BEST OF THE TRUSTEE'S KNOWLEDGE, INFORMATION AND BELIEF.

ALTHOUGH THE TRUSTEE'S PROFESSIONAL ADVISORS HAVE ASSISTED IN THE PREPARATION OF THIS DISCLOSURE STATEMENT BASED UPON THE FACTUAL INFORMATION AND ASSUMPTIONS RESPECTING THE FINANCIAL, BUSINESS AND ACCOUNTING DATA PROVIDED BY THE TRUSTEE, THE TRUSTEE'S PROFESSIONAL ADVISORS HAVE NOT INDEPENDENTLY VERIFIED THE INFORMATION SET FORTH IN THIS DISCLOSURE STATEMENT AND MAKE NO REPRESENTATIONS OR WARRANTIES AS TO SUCH INFORMATION. SUCH PROFESSIONAL ADVISORS DO NOT REPRESENT OR WARRANT THAT THIS

DISCLOSURE STATEMENT IS COMPLETE OR IS FREE FROM ANY INACCURACY OR OMISSION.

HOLDERS OF CLAIMS SHOULD CAREFULLY READ AND CONSIDER THIS DISCLOSURE STATEMENT.

## CAUTIONARY STATEMENT

CERTAIN INFORMATION INCLUDED IN THIS DISCLOSURE STATEMENT CONTAINS FORWARD-LOOKING STATEMENTS WITHIN THE MEANING OF THE SECURITIES ACT OF 1933, AS AMENDED, THE SECURITIES EXCHANGE ACT OF 1934, AS AMENDED, AND THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995, AS AMENDED. SUCH FORWARD-LOOKING INFORMATION IS BASED ON INFORMATION AVAILABLE WHEN SUCH STATEMENTS ARE MADE AND IS SUBJECT TO RISKS AND UNCERTAINTIES THAT COULD CAUSE ACTUAL RESULTS TO DIFFER MATERIALLY FROM THOSE EXPRESSED IN THIS DISCLOSURE STATEMENT.

## SUMMARY OF CLASSIFICATION AND TREATMENT

Detailed elsewhere in this Disclosure Statement is a description of the technical aspects of the classification of Claims, the relative allocations of property to holders of Claims, the methodology as to how such property is to be distributed, the risks inherent in the proposed Plan, and the applicable bankruptcy and tax consequences of the proposed reorganization. However, the Trustee believes that a broad overview of what, in the opinion of the Trustee, creditors are likely to receive under the Plan, will be helpful for your consideration of the Plan.

The following is a summary of the classification of all Claims under the Plan and the proposed treatment of each such Classes under the Plan. This summary is qualified in its entirety

by reference to provisions set forth in the Plan, the terms of which are controlling.

| CLASS | DESCRIPTION | KIND OF PROPERTY DISTRIBUTED TO CLASS | PROJECTED ULTIMATE DISTRIBUTION AS PERCENTAGE OF ALLOWED CLAIM |
|---|---|---|---|
| Unclassified Claims | a. Professional Fees and Expenses | Cash | 100% as allowed by Court or such lesser amount as agreed between the holder of such Claim and the Trustee. |
| | b. Accounts payable and other obligations which arose post-petition | Cash | 100% on the Effective Date or such lesser amount as agreed between the holder of such Claim and the Trustee. |
| | c. Priority Tax Claims | Cash | 100% of such Allowed Priority Tax Claims on the Effective Date or such lesser amount as agreed between the holder of such claim and the Trustee. |
| Class 1 | Newell Secured Claim | Cash | 100% of the Allowed Amount of such Claim as agreed between Newell and the Trustee or if an agreement cannot be reached between the Trustee and Newell, the Allowed Amount determined by the Bankruptcy Court. Newell has already received $2 million from the closing proceeds from the sale of the Debtor's Property. |
| Class 2 | NYC Secured Tax Claim | Cash | 100% of such Allowed NYC Secured Tax Claim on the Effective Date or such lesser amount as agreed between the holder of such claim and the Trustee. |
| Class 3 | NYC Secured OATH Claim | Cash | 100% of such Allowed NYC Secured OATH Claim with post-petition interest at nine (9%) percent per annum on the Effective Date or such lesser amount as agreed between the holder of such claim and the Trustee. The Trustee reserves the right to object to the NYC Secured OATH Claim and/or seek to have the Debtor's defaults relating to such Claim and/or the underlying violations vacated and to have the related fines reduced. |
| Class 4 | General Unsecured Claims | Cash | 100% of such Allowed Class 4 Claims, plus post-petition interest at 3% per annum on the Effective Date. |

## II

## VOTING AND CONFIRMATION OF PLAN

### A.    No Classes Are Impaired Under The Plan

Under the Bankruptcy Code, any holders of Claims in Classes that are "impaired" under the Plan are entitled to vote to accept or reject the Plan, unless such Class neither receives nor retains any property under the Plan (in which case such Class is deemed to have rejected the Plan). Bankruptcy Code §1124 provides generally that a Class is impaired if the legal, equitable or contractual rights of the Claims or interests in that Class are altered.

No Classes of Claims are "impaired" under the Plan, and therefore, no holders of Claims are entitled to vote on the Plan. Accordingly, no ballots are being sent to any Claim holders.

Any controversy as to whether any Claim or Class of Claims is impaired under the Plan shall, after notice of any hearing, be determined by the Bankruptcy Court.

### B.    Class Acceptance Of The Plan

All Classes are unimpaired and therefore, pursuant to Bankruptcy Code § 1126(f), each holder of a Claim of each Class is conclusively presumed to have accepted the Plan. Thus, the Trustee is not required to solicit acceptances from the holders of any Claims of any Classes.

## III

## THE DEBTOR AND ITS OPERATIONS

### A.    The Debtor

The Debtor is a religious corporation organized pursuant to Article 10 of the Religious Corporations Law of the State of New York[4] and a not for profit corporation exempt from

---

[4] The certificate of incorporation for Bronx Miracle Gospel Tabernacle, Inc. was originally filed with Bronx County, New York on April 25, 1980 under index number 598-80. On or about June 30, 2005, the name of the corporation was changed to Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc.

taxation pursuant to section 501(c)(3) of the Internal Revenue Code.

## B.    The Property

The Debtor's primary asset is the Property, which is known as and located at 2910 Barnes Avenue, Bronx, New York, situated on which is a church (formerly a synagogue) and a small, stand-alone garage.

The Debtor operated its ministry from the Property until approximately March 24, 2020, when the Trustee was required to shut down the Property due to the COVID-19 pandemic and to comply with a March 12, 2020 Executive Order issued by Governor Cuomo restricting occupancy at places of business or public accommodation.

## C.    Lender's Secured Debt

On March 6, 2008, Newell, the Debtor's lender, made a loan to the Debtor in the principal amount of $425,000 (the "Loan") secured by a mortgage (the "Mortgage") upon the Property.[5]  The Loan matured on March 5, 2009 and was not repaid.

On January 23, 2015, Newell commenced a mortgage foreclosure action and was granted a judgment of foreclosure on March 2, 2017 (the "Foreclosure Judgment"), which determined the amount owed to Newell was $1,196,033.99, together with interest from October 16, 2015 plus additional amounts provided for in the Foreclosure Judgment aggregating $1,354,338.50  (the "Judgment Amount").

## D.    The Debtor's Prior Chapter 11 Case

On May 22, 2017, the Debtor filed a previous Chapter 11 case in this Court, Case No. 17-11395-SMB (the "Prior Chapter 11 Case").

The Debtor's Prior Chapter 11 Case was assigned to the Honorable Stuart M. Bernstein, United States Bankruptcy Judge.  The Bankruptcy Court granted stay relief to Newell, and the

---

[5]  The Debtor's pastor, Rev. Dr. Keith Elijah Thompson and his wife, Yvonne Thompson, guaranteed the Loan.

United States Trustee subsequently moved on January 8, 2018 to dismiss the Debtor's Prior Chapter 11 Case.  The Bankruptcy Court dismissed the Prior Chapter 11 Case by order entered on May 24, 2018 pursuant to Bankruptcy Code § 1112(b), based on continuing loss and diminution of the Estate and the absence of a reasonable likelihood of rehabilitation.

**E.**     **The Debtor's Current Chapter 11 Filing**

On the Filing Date (July 28, 2019), the Debtor filed this Chapter 11 Case in the Bankruptcy Court.  The Chapter 11 Case (like the Prior Chapter 11 Case) was assigned to the Honorable Stuart M. Bernstein, United States Bankruptcy Judge.

**F.**     **Schedules of Assets and Liabilities**

On August 12, 2019, the Debtor filed its Schedules of Assets and Liabilities.

**G.**     **Significant Post-Petition Events**

**1.**     **Newell's Motion For Appointment of A Chapter 11 Trustee**

On December 9, 2019, Newell filed a motion (the "Lender Motion") [Dkt. No. 39] seeking appointment of a Chapter 11 trustee pursuant to Bankruptcy Code § 1104(a), or, in the alternative, granting relief from the automatic stay pursuant to Bankruptcy Code § 362(d) to permit Newell to complete a foreclosure sale of the Property.  The Bankruptcy Court granted the Lender Motion to the extent it sought appointment of a Chapter 11 trustee.

On January 8, 2020, the Bankruptcy Court entered the Appointment Order directing the United States Trustee to appoint a Chapter 11 trustee, and on January 27, 2020, the Bankruptcy Court entered an order [Dkt. No. 45] confirming the appointment of Deborah J. Piazza as the Chapter 11 Trustee.

2.    **Retention of Professionals**

By order entered on February 11, 2020, the Trustee retained Tarter Krinsky & Drogin LLP as her counsel in this case, effective as of January 28, 2020 [Dkt. No. 48].

By order entered on February 12, 2020, the Trustee retained Vernon Consulting, Inc. as her accountant in this case, effective January 27, 2020 [Dkt. No. 50].

On April 2, 2020, the Bankruptcy Court approved the Trustee's application to retain Tamerlain Realty Corp. ("Tamerlain") as her real estate broker to market and sell the Property [Dkt. No. 63].

3.    **Sale of the Property**

On May 29, 2020, the Trustee filed a motion [Dkt. No. 74-1] (the "Sale Motion") seeking, *inter alia*, approval of procedures for submitting bids for the Property and authorizing the Trustee to conduct an auction of the Property.

On June 18, 2020, the Bankruptcy Court entered an order (the "Procedures Order") [Dkt. No. 81] which, among other things, approved certain auction and sale procedures (the "Auction Procedures"), scheduled the Auction for July 20, 2020 at 10:00 a.m., and scheduled a hearing on the Sale Relief, including the Trustee's request to approve a sale to the bidder(s) submitting the highest or otherwise best offer for the Property as determined in accordance with the Auction Procedures, for July 23, 2020 at 10:00 a.m. (the "Sale Hearing").

Pursuant to the Procedures Order, the Trustee conducted the Auction of the Property on July 20, 2020. The successful bidder at the Auction was Samdani, who made the highest bid on the Property in the amount of $2,875,000. On July 23, 2020, the Bankruptcy Court approved the Sale of the Property to Samdani and entered the Sale Order [ECF No. 105]. Pursuant to the Purchase Agreement by and between the Trustee and Samdani, the initial closing was set for

August 26, 2020 (the "Initial Closing"). Samdani had the right to request an extension of the closing until September 15, 2020 with a $500 per day increase in the purchase price. Samdani requested an extension until September 15, 2020 but was not ready to close by that date. Samdani requested the Trustee extend the closing date to through and including October 6, 2020. The Trustee agreed to the extension on condition Samdani deposit an additional 10% of the purchase price which would be non-refundable in the event Samdani failed to close by October 6, 2020. The Trustee and Samdani entered into a stipulation extending the closing date to through and including October 6, 2020 and Samdani deposited an additional $287,500 as a supplemental contract deposit. The Bankruptcy Court approved the stipulation.

4.      **Debtor's And Debtor's Adherents' Motion To Vacate The Appointment Order And The Sale Order**

On August 5, 2020, the Debtor and its "adherents or members" filed a motion dated August 5, 2020 (the "Rule 60(b) Motion"), by order to show cause, seeking an order: (i) rescinding the Appointment Order entered on January 7, 2020 which appointed an operating trustee, (ii) terminating the appointment of the Trustee and reinstating the Debtor as debtor-in-possession, and (iii) voiding the Trustee's Sale of the Property.

On August 5, 2020, the Bankruptcy Court entered an order (the "OSC") [Dkt. No. 108], scheduling an expedited hearing on the Rule 60(b) Motion to be conducted on August 14, 2020, and directing that pending the hearing on the Motion, the Trustee shall not transfer Estate funds to Newell or its agents and shall not transfer the Deed of the Property (the "OSC Stay Provision").

The Trustee filed opposition to the Rule 60(b) Motion [ECF Nos. 111, 112] and Newell filed opposition to the Rule 60(b) Motion [Dkt. No. 110]. The Bankruptcy Court conducted a hearing on the Rule 60(b) Motion on August 14, 2020, at which the Bankruptcy Court denied the

Rule 60(b) Motion.  On August 17, 2020, the Bankruptcy Court entered an order (the "August 17 Order") [ECF No. 116] denying the Rule 60(b) Motion and providing "The OSC Stay Provision is hereby vacated, and the Trustee is authorized, upon entry of this Order, to close on any sale of the Property authorized by the Court's July 23, 2020 order [ECF No. 105]."

The Sale Order was not appealed, and is a Final Order.

5.    **Debtor's And Church Members' Motions To Stay The Sale of the Property, And Debtor's Appeal**

Instead of appealing the Sale Order, the Debtor and members of the Debtor's Church (collectively, the "Petitioners") filed, on September 10, 2020, a Petition for writ of prohibition and mandamus (the "Petition") and Emergency Motion for injunctive relief in the United States District Court for the Southern District of New York.  District Judge Alison Nathan denied the Petition and the Emergency Motion in an order entered on September 11, 2020 (the "September 11 Order").

On September 30, 2020, the Petitioners filed a Notice of Appeal of the September 11 Order, Case No. 20-3313 (2d Cir.) and a motion (the "Stay Motion") in the Second Circuit Court of Appeals, seeking a stay of the Debtor's Case or of the Trustee's transfer of a deed to the Property.

The Trustee and Newell opposed the Stay Motion.  The Second Circuit Court of Appeals denied the Stay Motion by order entered on October 5, 2020.

6.    **The Closing of The Sale of The Property**

On October 6, 2020, the Trustee closed on the Sale of the Property to Samdani.  The final purchase price for the Property was $2,895,000. From the Sale proceeds, the Trustee paid Newell $2,000,000 on account of its judgment of foreclosure.  The Trustee also paid her retained broker, Tamerlain Realty Corp. $57,500, representing 2% of Samdani's successful bid at the Auction.

The Trustee delivered $50,000 of the Sale proceeds to the title company in escrow to cover various boiler violations levied against the Property by the City of New York. As such, the Trustee is currently holding $787,500 of the Sale proceeds of which $57,500 shall be paid to the co-broker. The remaining $730,000 shall be utilized to pay the Trustee's professional fees, statutory commissions and all other Allowed Claims. Any surplus remaining after payment of these Allowed Claims, shall be returned to the Debtor.

**H.**     **Operating Reports**

Pursuant to the requirements of the Office of the United States Trustee for the Southern District of New York, the Debtor was required to file monthly operating reports with the Bankruptcy Court. The Debtor failed to file any operating reports. Therefore, the Trustee's retained accountant, Vernon Consulting Inc., prepared operating reports for the Debtor using the information contained in the Debtor's Schedules and Statement of Financial Affairs and the Debtor's bank statements. On July 16, 2020, the Trustee filed those operating reports for the period from the Filing Date through June 30, 2020 and subsequently filed the operating reports for July 2020, August 2020 and September 2020. The Trustee cannot attest to the accuracy of all of the information contained in the operating reports prior to the Trustee's appointment. The Trustee made substantial efforts with the assistance of her retained accountant to obtain information from the Debtor in order to prepare the operating reports. However, the Debtor did not provide full cooperation. The Trustee believes the reports are substantially accurate.

Copies of the monthly reports may be obtained from the Bankruptcy Court during normal business hours or may be obtained upon written request made to counsel for the Trustee. The operating reports reflect little activity as little or no income has been generated since the Filing Date.

## I.    Bar Date And Objections To Claims

In accordance with the requirements of § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtor filed its Schedules of Assets and Liabilities, including schedules of all of its known creditors and the amounts and priorities of the Claims the Debtor believes are owed to such creditors.    Pursuant to § 501 of the Bankruptcy Code, any creditor or interest holder may file a Proof of Claim and, unless Disputed, such filed Proof of Claim supersedes the amount and priority set forth in the Debtor's Schedules of Assets and Liabilities.    On May 19, 2020, the Bankruptcy Court entered an order [Dkt No. 72] fixing June 29, 2020 as the last date for filing Proofs of Claim in the Debtor's Chapter 11 Case (the "Bar Date").

The Plan provides the Trustee has thirty (30) days after the Plan's Effective Date to file objections to filed Claims, unless further extended by court order.    If the Trustee does not file an objection to a properly filed proof of claim on or before thirty (30) days after the Effective Date (or as extended by the Bankruptcy Court) then such Claim will be deemed Allowed and will be entitled to the Distribution under the Plan on account of its Allowed Claim.

As set forth above, the Bankruptcy Court established June 29, 2020, as the last date to file proofs of claims for amounts owed by the Debtor as of the Filing Date. The following proofs of claim have been filed in the Debtor's case:

| Claim No. | Claimant | Amount | Type |
|-----------|----------|--------|------|
| 1 | NYC Dept. of Finance (Amended) | $89,018.04 | Secured |
| 2 | Office of the U.S. Trustee | $1,950.00[6] | General unsecured |

---

[6] This Claim arises from unpaid U.S. Trustee fees in the Debtor's prior Chapter 11 case.

| 3 | Newell Funding LLC | $1,962,595.93 (as of 5/31/20) | Secured |
| 4 | Maxine Hall | $25,000.00 | General unsecured |
| 5 | NYC Office of the Administrative Trials and Hearings | $36,944.99 | $32,944.99 (Secured); $4,000 (General unsecured) |
| 6 | Erold Williams | $50,000.00 | Priority |
| | **Total** | **$2,165,508.96** | |

The NYC Department of Finance has advised the Trustee it has reinstated the tax exemption that had been removed due to the Debtor's failure to timely file for such exemption. As such, the real estate taxes have been abated by the NYC Department of Finance.

As set forth above, the Newell Secured Claim was paid from the proceeds of the closing on the Sale of the Property.

The total amount of filed proofs of claim asserting general unsecured claims is approximately $31,000. In addition, the Debtor Scheduled various unsecured claims totaling approximately $3,000,000. Set forth below, is a chart reflecting the Scheduled unsecured claims.

| Claim | Scheduled Amount | Unliquidated/Disputed or Contingent |
|---|---|---|
| 829 Holding Corp. | $1,400,000.00 | Yes |
| Clair & Gjertsen | $6,000.00 | No |
| Con Edison | $3,850.00 | No |
| Keyesss Corp. | $1,400,000.00 | Yes |

| | | |
|---|---|---|
| Marcia & Fred Campbell | $5,000.00 | No |
| Mr. Bernel Richardson | $8,000.00 | No |
| Mr. Cleveland Barnes | $2,500.00 | No |
| Mr. Erold D. Williams | $50,000.00 | No |
| Mr. Franklyn Robinson | $25,000.00 | No |
| Mr. Horace Hall | $15,000.00 | No |
| Mr. William S. Wright | $20,000.00 | No |
| Mrs. Nadine Mcdonald | $2,000.00 | No |
| Mrs. Susan Moore | $2,000.00 | No |
| Ms. Annie Moore | $10,000.00 | No |
| Ms. Carolyn Skinner | $25,000.00 | No |
| Ms. Cynthia Williams | $20,000.00 | No |
| Ms. Hermin Young | $40,000.00 | No |
| Ms. Icymay Thomas | $5,000.00 | No |
| Ms. Jean Weise | $2,500.00 | No |
| Ms. Jeanette Brown | $27,000.00 | No |
| Ms. Maxine Rose Hall | $25,000.00 | No |
| Ms. Pribcess Dubidad | $10,000.00 | No |

| | | |
|---|---|---|
| Ms. Tracy-Ann Moore | $5,000.00 | No |
| Ms. Winsome Rainford | $2,000.00 | No |
| Optimum | $375.00 | No |
| Pastor Keith Elijah Thompson | $30,000.00 | No |
| Sharon & Steve Burton | $8,000.00 | No |
| Storage Extra Space | $331.00 | No |
| T-Mobile | $830.00 | No |
| **TOTAL** | **$3,150,386.00** | |

These Claims total $3,150,386.00. Since this case is a Chapter 11 Case, Scheduled creditors listed as neither disputed, contingent or unliquidated, are not required to file a proof of claim unless they disagree with the Scheduled amounts or the classification. A total of $2,800,000.00 consisting of the Scheduled Claims of 829 Holding Corp. and Keyesss Corp. are not Allowed Claims as they were Scheduled as contingent and disputed and failed to file a proof of claim prior to the Bar Date. Most of the remaining Scheduled Claims of approximately $300,000.00 are allegedly owed to members of the Debtor's Church. The Trustee questions the validity of all of these Scheduled Claims. Only Maxine Hall and Erold D. Williams filed proofs of claim, and no supporting documentation was included with these proofs of claim. The Trustee will attempt to resolve these Claims consensually and if the Trustee is unsuccessful, she intends to file objections to many of these Scheduled Claims.

# IV

# SUMMARY OF THE PLAN

The Trustee submits the treatment of Creditors under the Plan is more favorable than the treatment creditors would receive if the Chapter 11 Case was converted to Chapter 7.  In any event, however, conversion of the Debtor's case is not a likely option because Bankruptcy Code § 1112(c) provides:

> "The court may not convert a case under this chapter to a case under chapter 7 of this title if  the debtor is a farmer or a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion."

11 U.S.C. § 1112(c).  The Trustee submits the Plan is in the best interests of all Creditors.

**THE SUMMARY OF THE PLAN SET FORTH BELOW IS QUALIFIED IN ITS ENTIRETY BY REFERENCE TO THE PROVISIONS SET FORTH IN THE PLAN, THE TERMS OF WHICH CONTROL.**

A.    **General**

1.    **Brief Explanation of Chapter 11**

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. Under Chapter 11, a debtor is authorized to reorganize its business for the benefit of itself and its creditors and equity interest holders, or to engage in the orderly liquidation of its assets.

The Debtor is a religious organization and not a for profit corporation, and does not have equity interest holders.

Upon the filing of a petition for reorganization under Chapter 11 and during the pendency of the case, the Bankruptcy Code imposes an automatic stay of all attempts to collect on Claims against the Debtor and to enforce Liens against the Debtor's property.

Confirmation and consummation of a Chapter 11 plan is the principal objective of a

Chapter 11 case.  In general, a plan divides the Claims against, and equity interests in, a debtor into separate Classes and allocates plan distributions among those Classes. If the legal, equitable and contractual rights of a Class are unaffected by the Plan, such Class is considered "unimpaired."  All unimpaired Classes are deemed to have <u>accepted</u> the Plan and, therefore, are not entitled to vote thereon.  Bankruptcy Code §1126(g), on the other hand, provides that all Classes of Claims and equity interests that do not receive or retain any property under the Plan on account of such Claims and equity interests are deemed to have <u>rejected</u> the Plan.  Under the Bankruptcy Code, all other Classes of Claims and equity interests are considered "impaired" and are entitled to vote on the Plan.

Under the Plan, all Classes of Claims are unimpaired and deemed to accept the Plan. Therefore, the Trustee contemplates no voting on the Plan will take place, and is not soliciting any votes on the Plan.

As a condition to consensual Confirmation, Bankruptcy Code §1129(a) requires that: (a) each impaired Class of Claims or equity interests votes to accepts the Plan; and (b) the Plan meets the other requirements of §1129(a).

### 2.    <u>Classification of Claims and Interests Generally</u>

Bankruptcy Code §101(5) defines a Claim as: (a) a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured;" or (b) a "right to an equitable remedy for breach or performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."  11 U.S.C. § 101(5).

Bankruptcy Code §1123 provides that a plan of reorganization shall designate classes of

claims against and equity interests in a debtor.  Bankruptcy Code §1122 further requires that each class of claims and equity interests contain only claims or equity interests that are "substantially similar" to each other. The Trustee believes she has classified all Claims in compliance with the requirements of §§ 1122 and 1123 (and no equity interests in the Debtor exist).  However, it is possible that a holder of a Claim may challenge such classification and that the Bankruptcy Court may find that a different classification is required for the Plan to be confirmed. In such event, the Trustee would, to the extent permitted by the Bankruptcy Court, modify the classifications in the Plan as required.  Any such reclassification could adversely affect the Class of which such holder was initially a member, or any other Class under the Plan, by changing the composition of such Class and the vote required of that Class (if any) for approval of the Plan. Furthermore, a reclassification of Claims could necessitate solicitation of votes.

**B.**      **Classification and Treatment of Claims Under the Plan**

The following describes the classification of Claims under the Plan and the treatment that holders of Allowed Claims are to receive if the Plan is confirmed and becomes effective. A Claim is classified in a particular Class only to the extent that the Claim fits within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim fits within the description of such different Class.

1.      **Unclassified Claims**

The Plan does not classify Administrative Claims, statutory fees due to the United States Trustee, or Priority Tax Claims, but does provide for the following treatment of such Claims.

(a)      **United States Trustee Fees**

All fees payable by the Debtor under §1930 of Title 28 of the United States Code

that have not been paid prior to the Effective Date shall be paid by the Trustee on behalf of the Debtor on the Effective Date. The Disbursing Agent shall file post-Confirmation operating reports with the Bankruptcy Court and the United States Trustee until a final decree is entered.

(b)    **Administrative Claims**

An "Administrative Claim" is a Claim for payment of an administrative expense of a kind specified in Bankruptcy Code §503(b) and referred to in Bankruptcy Code §507(a)(2), including the actual and necessary costs and expenses of preserving the estate or operating the Debtor's business after the commencement of the Chapter 11 Case, compensation for legal and other services and reimbursement of expenses awarded or allowed under Bankruptcy Code § 330(a), certain retiree benefits, certain reclamation Claims, and all fees and charges against the Estate pursuant to Chapter 123 of Title 28 of the United States Code.

The Plan provides that each holder of an Allowed Administrative Claim (including, without limitation, Trustee commissions and the Professionals' fees and expenses allowed in a Final Order of the Bankruptcy Court) shall be paid in Cash in full by the Disbursing Agent (a) upon the later of the Effective Date and the date upon which the Court enters a Final Order allowing such Administrative Expense Claim; (b) upon such other terms as may exist in accordance with the ordinary course of business of the Trustee; or (c) upon such less favorable terms as may be agreed between any holder of such Administrative Claim and the Trustee.

The Plan further provides that holders of Administrative Claims, including Trustee's commissions and Professionals holding Claims for services rendered during the Chapter 11 Case, must file requests for payment within forty-five (45) days after the Confirmation Date.  The Trustee estimates the aggregate amounts due to Professionals, will total approximately $575,000 and shall consist of the professional fees and expenses of Tarter Krinsky & Drogin LLP

(Trustee's retained counsel), the professional fees and expenses of Vernon Consulting Inc. (Trustee's retained account), the 2% brokerage commission of Tamerlain ($57,500), the 2% commission of the co-broker ($57,500), and the Trustee's statutory commissions.

Administrative Claims representing obligations incurred by the Trustee after the date and time of the entry of the Confirmation Order (including, without limitation, Claims for Professionals' fees and expenses) shall not be subject to application to the Bankruptcy Court and may be paid by the Disbursing Agent in the ordinary course of business and without Bankruptcy Court approval subject to the other restrictions for the use of the Sale proceeds set forth in the Plan. After the Confirmation Date, the Disbursing Agent shall, in the ordinary course of business and without the necessity for any approval by the Court, pay the reasonable fees and expenses of the Professionals employed by the Trustee in connection with the implementation and consummation of the Plan, the Claims reconciliation process, and any other matters as to which such Professionals may be engaged.   The Plan provides that the fees and expenses of such Professionals shall be submitted monthly to the Trustee and the U.S. Trustee by such Professionals in the form of a detailed invoice therefor, and shall be paid by the Disbursing Agent upon such submission. If the Trustee or the U.S. Trustee disputes the reasonableness of any such invoice and, if the dispute cannot be resolved by the parties, all unresolved disputes shall be submitted to the Bankruptcy Court on notice to the Trustee and the U.S. Trustee for a determination of the reasonableness of such invoice.

 (c) **Priority Tax Claims**

Each holder of a Priority Tax Claim that has not been paid prior to the Effective Date shall be paid in full or such lesser amount as agreed between the holder of such Priority Tax Claim and the Trustee on the later of (i) the Effective Date, or (ii) the date on which such Priority

Tax Claim becomes an Allowed Priority Tax Claim, or as soon thereafter as is practicable.

The holder of an Allowed Priority Tax Claim shall not be entitled to receive any payment on account of interest, or on account of any penalty arising with respect to or in connection with the Allowed Priority Tax Claim, except to the extent allowed as a part of an Allowed Priority Tax Claim pursuant to §507(a)(2) of the Bankruptcy Code.

The Trustee does not believe there are any Priority Tax Claims.

2.    **Classified Claims**

a.    **Class 1 – Newell Secured Claim**

Class 1 consists of the Newell Secured Claim. The Newell Secured Claim is secured by a Lien (first mortgage) on the Property. Newell obtained a foreclosure judgment prior to the Filing Date. The Allowed Newell Secured Claim, which the Trustee paid from the Sale closing proceeds, totaled approximately $2,000,000 which includes all post-petition interest and certain legal fees as required by section 506(b) of the Bankruptcy Code. Newell has asserted total amount of its Class 1 Claim is approximately $2,072,000. The Trustee and Newell will attempt to reach an agreement as to the remainining $72,000 of its Class 1 Claim. The Plan provides the Trustee shall pay the agreed amount and if the Trustee and Newell are unable to agree, the Trustee will pay the amount determined by the Bankruptcy Court.

Class 1 is unimpaired under the Plan and deemed to accept the Plan.

b.    **Class 2 – NYC Secured Tax Claim**

Class 2 consists of the NYC Secured Tax Claim which is for real estate taxes allegedly owed by the Debtor to NYC.  As set forth above, the NYC Department of Finance reinstated the Debtor's tax exemption and therefore NYC's Secured Tax Claim should be zero or very minimum.  Subject to the provisions of Article VII of the Plan with respect to Disputed Claims,

and only to the extent the holder of the NYC Secured Tax Claim was not paid and satisfied, in full satisfaction of the NYC Secured Tax Claim, the holder of the NYC Secured Tax Claim shall receive (i) a Cash payment from the Disbursing Agent in the full amount of its Allowed Secured Claim on the later of (x) the Effective Date, or (y) the date such taxes are due under applicable law, or (z) as soon as practicable after such claim becomes an Allowed Secured Claim, or (ii) such other treatment as may otherwise be agreed to in writing by the Trustee and the holder of such NYC Secured Tax Claim.

Class 2 is unimpaired under the Plan and deemed to accept the Plan.

**c.    Class 3 – NYC Secured OATH Claim**

Class 3 consists of the NYC Secured OATH Claim, which is the Claim of NYC Office of Administrative Trials and Hearings, filed as Claim no. 5 on the claims register.

Subject to the provisions of Article VII of the Plan with respect to Disputed Claims, and only to the extent the Holder of the NYC Secured OATH Claim was not paid and satisfied, in full satisfaction of the NYC Secured OATH Claim, the holder of the NYC Secured OATH Claim shall receive (i) a Cash payment from the Disbursing Agent in the full amount of its Allowed Secured Claim with post-petition interest at nine (9%) percent per annum on the later of (x) on the Effective Date, or (y) the date such amounts are due under applicable law, or (z) as soon as practicable after such claim becomes an Allowed Secured Claim, or (ii) such other treatment as may otherwise be agreed to in writing by the Trustee and the Holder of such NYC Secured OATH Claim.

Class 3 is unimpaird under the Plan and deemed to accept the Plan.

**d.    Class 4 - General Unsecured Claims**

Class 4 consists of all Unsecured Claims against the Debtor that are not entitled to

priority under Bankruptcy Code §507(a), and that are not classified in any other Class.

The Plan provides that subject to the provisions of Article VII of the Plan with respect to Disputed Claims, in full satisfaction and settlement (as applicable), of the Class 4 Unsecured Claims, the holders of the Class 4 Unsecured Claims shall receive (i) a Cash payment from the Disbursing Agent in the full amount of each holder's Allowed Unsecured Claim with post-petition interest at three (3%) percent per annum on the Effective Date, or as soon thereafter as practicable after such Claim becomes an Allowed Unsecured Claim, or (ii) such other treatment as may otherwise be agreed to in writing by the Trustee and the holder of such Unsecured Claim, or (iii) such other treatment as provided for by Bankruptcy Court Order.  The Trustee estimates the total amount of Allowed Unsecured Claims shall be no more than $125,000.00. If Allowed Class 4 Claims exceed $150,000.00 in the aggregate, the Plan may not be feasible as there will not be sufficient monies to pay all Allowed Class 4 Claims in full as provided in the Plan.  In this situation, the Trustee reserves the right to amend the Plan or seek other relief consistent with the Bankruptcy Code.

Class 4 is unimpaired under the Plan and deemed to accept the Plan.

**C.**      **Conditions to and Means for Consummation of the Plan**

    1.      **Conditions Precedent to Occurrence of the Effective Date**

The Effective Date shall be the date on which the Confirmation Order shall have been entered and not subject to any stays by any court with competent jurisdiction.

    2.      **Funding of the Plan**

Funding for the Plan shall be from the proceeds realized from the Sale of the Property.

    3.      **Causes of Action**

Effective as of the Effective Date, all causes of action and/or claims which the Debtor has

or may have against any third party shall revert to the Reorganized Debtor. The Reorganized Debtor shall be entitled to assert such claims as it deems appropriate.

4. **Abandonment**

Effective as of the Effective Date, pursuant to section 554 of the Bankruptcy Code, the Trustee shall be deemed to have abandoned any interest she may have in any of the Debtor's personal property whether located at the Property or anywhere else. Nothing herein shall be deemed to be interpreted to mean the Trustee abandons any of the Cash in the Estate generated from the closing of the Sale of the Property or any other Cash in which the Debtor or the Estate owns an interest.

5. **Transfer Taxes**

The Trustee's Sale of the Property is a conveyance pursuant to § 363 of the Bankruptcy Code, and the Property is being transferred from a not for profit corporation. Accordingly, the Sale is not subject to any New York City transfer tax or any New York State transfer tax. See N.Y. Admin. Code § 11–2106(b)(2); N.Y. Tax Law § 1405(b)(8).

Pursuant to § 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the Bronx County register's office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.

D. **Objections to Claims**

The Plan provides that all objections to Claims shall be filed by the Trustee and served on the holders of such Claims no later than thirty (30) days subsequent to the Effective Date, subject to extension for cause. If the objection to a proof of Claim that relates to a Disputed Claim has not been filed by the applicable date, the Claim to which the proof of Claim relates shall be treated as an Allowed Claim for purposes of Distributions under the Plan.

**E.**    **Resolution of Disputed Claims**

The Plan provides that Disputed Claims shall be divided into two (2) portions:  the "non-disputed portion" and the "disputed portion."  The Disbursing Agent shall pay the non-disputed portion of a Disputed Claim in accordance with Plan provisions for payment of Allowed Claims in its Class.  The disputed portion will be protected by the Disputed Claims Reserve.

**F.**    **Reserve Accounts for Disputed Claims**

The Plan provides that on and after the date on which the Disbursing Agent makes its first payment and any subsequent payment to holders of Allowed Claims pursuant to Article IV of the Plan, the Disbursing Agent shall hold in one or more Disputed Claims Reserves, Cash in an aggregate amount sufficient to pay each holder of a Disputed Claim (i) the amount of Cash that such holder would have been entitled to receive under the Plan for the disputed portion of such Claim if such disputed portion of such Claim had been an Allowed Claim on the date of such payment; or (ii) such lesser amount as the Court may estimate pursuant to Section C of Article VII of the Plan or may otherwise order. Cash withheld and reserved for payments to holders of Disputed Claims shall be held and deposited by the Disbursing Agent in one or more segregated reserve accounts to be used to satisfy such Claims if and when such Disputed Claims become Allowed Claims.

**G.**    **Estimation**

The Plan provides the Trustee may, at any time, request that the Court estimate any Disputed Claim pursuant to §502(c) of the Bankruptcy Code, regardless of whether the Trustee has previously objected to such Claim.  The Court will retain jurisdiction to estimate any Claim at any time, including during litigation concerning any objection to such Claim.  In the event the Court estimates any Disputed Claim, that estimated amount may constitute either the Allowed

Amount of such Claim, the amount on which a reserve is to be calculated for purposes of the

Disputed Claims Reserve, or a maximum limitation on such Claim, as determined by the Court.

If the estimated amount constitutes a maximum limitation on such Claim, the Trustee may elect

to pursue any supplemental proceedings to object to any ultimate payment of such Claim.  All of

the aforementioned Claims objection, estimation and resolution procedures are cumulative and

not necessarily exclusive of one another.

## H.   <u>Allowance of Disputed Claims</u>

The Plan provides that if, on or after the Effective Date, any Disputed Claim becomes an

Allowed Claim, the Disbursing Agent shall, within thirty (30) days after the date on which the

Claim becomes an Allowed Claim, or as soon thereafter as is practicable, pay to the holder of

such Allowed Claim the amount of Cash that such holder would have been entitled to receive

under the Plan if such disputed portion of such Claim had been an Allowed Claim on the

Effective Date.  Notwithstanding anything to the contrary contained in the Plan, the Disbursing

Agent shall make a Distribution on the non-disputed portion of an Unsecured Claim in

accordance with the provisions of the Plan.

## I.   <u>Payment of Funds from Disputed Claims Reserve</u>

The Plan provides that if at any time, or from time to time, after the Effective Date, there

shall be Cash in the Disputed Claims Reserve in an amount in excess of the amount which the

Trustee is required at such time to reserve on account of Disputed Claims under the Plan or

pursuant to any Order of the Bankruptcy Court, such excess funds shall be remitted to the

Disbursing Agent for Distribution under the Plan.

## J.   <u>Limitation on Liability</u>

**The Plan provides that the Trustee (except as provided in the Plan) and her**

employees and agents (including any Professionals employed by one or more of them), shall have no liability to any holder of a Secured Claim, an Administrative Claim, Priority Claim, Unsecured Claim, or any other person under any theory of liability for any act taken or omission made with respect to the Debtor since the Filing Date or in connection with, related to, or arising out of, the formulation, implementation, confirmation, or consummation of the Plan, the Disclosure Statement, or any other contract, instrument, release, agreement or document created in connection with the Plan, the pursuit of approval of the Disclosure Statement or the solicitation of votes for or confirmation of the Plan, or the administration of the  Chapter 11 Case, the Plan or the property to be distributed under the Plan, except for their respective willful misconduct, gross negligence or breach of fiduciary duty as determined by Final Order of the Bankruptcy Court and, in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  The limitation of liability set forth herein shall be deemed to be no greater in scope than the protections afforded under §1125(e) of the Bankruptcy Code.  In addition, nothing herein shall be interpreted to permit a release in violation of §1.8(h)(1) of the New York State Rules of Professional Conduct.  Nothing herein shall limit the right of the United States Government, local governments or any of their agencies to assert any claim against the foregoing parties, including without limitation, any claim arising under the Internal Revenue Code, the environmental laws, or the criminal laws of the United States, nor shall anything in the Confirmation Order or Plan limit, impair, or in any way affect the application of any laws or regulations of the United States or local governments.  Any action commenced by any person or entity against the Trustee shall only be pursued in the Bankruptcy Court unless permission is

**granted by the Bankruptcy Court to pursue the Trustee in another court.**

**K.      Certain Other Provisions of The Plan**

The Plan contains other provisions consistent with the requirements of Chapter 11 of the Bankruptcy Code, including provisions for the Distribution of Cash and the collection and disposition of assets of the Debtor's Estate.

1.      **Disbursing Agent**

Deborah J. Piazza shall act as the Disbursing Agent under the Plan and shall be in charge of all matters relating to the Distributions required by the Plan.  The Disbursing Agent shall not be required to obtain a bond other than the bond secured upon the Trustee's appointment.  In the event the Disbursing Agent changes prior to the entry of an order of final decree closing the Debtor's Chapter 11 Case, the Bankruptcy Court and the United States Trustee shall be notified in writing of the identity and address of the new Disbursing Agent.

2.      **Payments by Cash**

Payments to be made by the Disbursing Agent pursuant to the Plan shall be made by check drawn on a domestic bank.

3.      **Unclaimed Distributions**

The Plan provides that Distributions to holders of Allowed Claims shall be made at the address of each such holder as set forth on the proofs of Claim filed by such holders (unless no Proof of Claim has been filed, in which case then to the address set forth on the Schedules filed with the Court), unless superseded by a written notice to the Disbursing Agent providing actual knowledge to the Disbursing Agent of a change of address.

The Plan further provides that if any holder's Distribution is returned as undeliverable, no further Distributions to such holder shall be made unless and until the Disbursing Agent is

notified in writing of such holder's then current address, at which time all Distributions shall be made to such holder, without interest.

The Plan further provides that all Claims for undeliverable Distributions shall be made on or before the earlier of (i) with respect to the initial Distributions made on or after the Effective Date, one hundred and twenty (120) days after the date such undeliverable Distribution was initially made; and (ii) with respect to the Distributions made on a subsequent interim payment date, ninety (90) days after the date such undeliverable Distribution was initially made. If any Claim for an undeliverable Distribution is not timely made as provided in the foregoing sentence, such Claim shall be forever barred unless the holder of such Claim moves the Court, on notice to the Disbursing Agent, to reinstate such Claim, and such motion shall be granted, provided that Available Cash remains from which such Distributions on account of such Claim could be made.

After such date (as applicable), all unclaimed property shall be applied first to satisfy the costs of administering and fully consummating this Plan, then to Available Cash for Distribution in accordance with this Plan.

4.      **Executory Contracts and Unexpired Leases**

(a)      **Assumption and Rejection Generally**

Subject to approval of the Bankruptcy Court, the Bankruptcy Code empowers a Trustee to assume or reject Executory Contracts and Unexpired Leases. As a general matter, an "executory contract" is a contract under which material performance (other than the payment of money) remains due by each party thereto. If an executory contract is rejected, the non-debtor party to that contract may file a Claim for any damages incurred by reason of the rejection. In the case of rejection of leases for non-residential real property, resulting damage Claims are subject to certain limitations imposed by the Bankruptcy Code. If an Executory Contract or

unexpired lease is assumed, the Trustee is bound to perform its/her obligations arising thereunder in accordance with the terms of such agreement.

        (b)      **Rejection of Executory Contracts and Unexpired Leases**

The Plan provides that on the Effective Date Executory Contracts and Unexpired Leases shall be deemed rejected. The Trustee is unaware of any Executory Contracts or Unexpired Leases that exist.

        5.      **Professional Fees and Expenses**

The Plan provides that each of the Professionals requesting compensation in the Chapter 11 Case shall file an application for an allowance of final compensation and reimbursement of expenses in the Chapter 11 Case incurred through the Confirmation Date or be forever barred from obtaining such compensation and reimbursement within forty five (45) days after the Confirmation Date; provided, however, that in accordance with the Broker Retention Order, "any brokerage fee that shall be owing to Tamerlain in accordance with this Order shall be paid on the closing date of the sale of the Property, and under no circumstances shall the total brokerage fee paid to Tamerlain, including any cooperating broker, exceed four (4%) percent of the gross sale price of the Property[.]"

        6.      **Abandonment and Destruction of Books and Records**

To the extent there are any books and records, they shall be abandoned and/or destroyed in the discretion of the Trustee on the date the Chapter 11 Case is closed.

        7.      **Retention of Jurisdiction**

The Plan provides that, from and after the Confirmation Date and until such time as all payments and Distributions required to be made by the Disbursing Agent have been made, the Bankruptcy Court shall retain jurisdiction over the Debtor's Chapter 11 Case for all purposes

permitted under the Code, including, without limitation, the following:

(a)    To hear and determine any dispute relating to the Plan or any property described in the Plan and to enforce its provisions.

(b)    To hear and determine all issues arising out of any motions, applications, adversary proceedings or contested or litigated matters in the Chapter 11 Case pending at the Confirmation Date or commenced thereafter.

(c)    To order recovery of any assets of the Debtor, whether title is presently held in the name of the Debtor or a third party.

(d)    To hear and determine motions to approve the rejection or assumption of Executory Contracts and Unexpired Leases under §365 of the Bankruptcy Code.

(e)    To hear and determine all issues relating to any purchases, sales or contracts made or undertaken by the Trustee during the pendency of the Chapter 11 Case, including the Sale.

(f)    To hear and determine all claims arising from the rejection of Executory Contracts or Unexpired Leases.

(g)    To hear and determine all objections to Claims and all controversies concerning classification, allowance, valuation, liquidation, estimation, or satisfaction of Claims.

(h)    To make orders allowing amendment of the Schedules of Assets and Liabilities for any purpose including, without limitation, to prosecute objections to Claims not previously listed as disputed, contingent or unliquidated.

(i)    To hear and determine all applications for compensation of Professionals and similar fees and reimbursement of expenses arising out of or relating to the Chapter 11 Case or any Claims.

(j)    To hear and determine any and all motions to abandon property of the Debtor's Estate.

(k)    To make such other orders or give such directions as permitted by §1142 of the Bankruptcy Code.

(l)    To consider and order any modifications or amendments requested to the Plan.

(m)    To remedy any defect or omission or reconcile any inconsistency in the Plan or the Confirmation Order in such manner as may be necessary or desirable to carry out the purposes and intent of the Plan.

(n)    To make all orders necessary or appropriate to carry out the provisions of the Plan.

(o)    To enforce all orders previously entered by the Bankruptcy Court.

(p)    To determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the Bankruptcy Code, including hearing any matters related to any claims asserted against the Trustee.

## V

## **CONFIRMATION PROCEDURES**

In order for the Plan to be confirmed by the Bankruptcy Court, all of the applicable requirements of Bankruptcy Code §1129 must be met. These include, among others, requirements that the Plan:  (i) is accepted by all impaired Classes or, if rejected by an impaired Class, "does not discriminate unfairly" and is "fair and equitable" as to each rejecting Class; (ii) is feasible; and (iii) is in the best interests of holders of Claims or equity interests in each impaired Class.

A.    **Solicitation of Votes; Acceptance**

The Trustee is not soliciting the acceptance of the Plan from any holders of Claims, as all Classes are unimpaired under the Plan.

B.    **Confirmation Hearing**

Bankruptcy Code § 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan (the Confirmation Hearing) after the period for submission of Ballots (if any) has expired.   The Confirmation Hearing may be postponed from time to time by the Bankruptcy Court without further notice except for an announcement of the postponement made at the Confirmation Hearing.   Bankruptcy Code §1128(b) provides that any party in interest may object to confirmation of the Plan.   Objections to Confirmation of the Plan must be made in writing, specifying in detail the name and address of the person or entity objecting, the grounds for the objection and the nature and amount of the Claim held by the objector, and must otherwise comply with the requirements of the Bankruptcy Rules and the Local Bankruptcy Rules. Objections must be filed with the Clerk of the Bankruptcy Court, with a courtesy copy delivered to the chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, and served upon the parties so designated in the Order and Notice accompanying this Disclosure Statement on or before the time and date designated in such Order and Notice. **FAILURE TO TIMELY FILE AND SERVE AN OBJECTION TO CONFIRMATION MAY BE DEEMED BY THE BANKRUPTCY COURT TO BE CONSENT TO CONFIRMATION OF THE PLAN.**

At the Confirmation Hearing, the Bankruptcy Court will determine, among other things, whether the following confirmation requirements specified in Bankruptcy Code §1129 have been satisfied:

1.      The Plan complies with the applicable provisions of the Bankruptcy Code.

2.      The Trustee, on behalf of the Estate, has complied with the applicable provisions of the Bankruptcy Code.

3.       The Plan has been proposed in good faith and not by any means proscribed by law.

4.      Any payment made or promised by the Trustee, on behalf of the Estate for services or for costs and expenses in, or in connection with, the Chapter 11 Case, or in connection with the Plan and incident to the Chapter 11 Case, has been approved by, or is subject to approval of, the Bankruptcy Court as reasonable.

5.      The Trustee will not employ or retain any person or entity to serve as a director, or officer or voting trustee of the Debtor.

6.      Each holder of a Claim in an impaired Class either has accepted the Plan or will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such entity would receive or retain if the Debtor were liquidated on such date under Chapter 7 of the Bankruptcy Code.  See "Best Interests Test" below.

7.      Unless the Trustee is required to seek non-consensual confirmation of the Plan, each Class of Claims has either accepted the Plan or is not impaired under the Plan.

8.      Except to the extent that the holder of a Claim has agreed to different treatment, the Plan provides that:  (a) Allowed Administrative Claims will be paid in full on the later of the Effective Date, or the date the Claim is Allowed; and (b) Priority Tax Claims will be paid in full on the Effective Date.

C.      **Best Interests Test/Liquidation Analysis**

The "best interests of creditors" test requires that the Bankruptcy Court find either that all

members of each impaired Class have accepted the Plan or that each holder of an Allowed Claim or interest of each impaired Class of Claims or interests will receive or retain under the Plan on account of such Claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under Chapter 7 of the Bankruptcy Code on such date.

Pursuant to Bankruptcy Code § 1112(c), the Chapter 11 Case may not be converted to Chaper 7.  In any event, the "best interest of creditors" test is satisfied because all holders of Allowed Unsecured Claims are expected to receive 100% of their Allowed Claims plus interest.

# VI

## <u>CERTAIN FEDERAL INCOME TAX CONSIDERATIONS</u>

The following summary of certain U.S. Federal income tax consequences is for informational purposes only and is not a substitute for careful tax planning and advice based upon the particular circumstances pertaining to each holder of an Allowed Claim. Each holder of an Allowed Claim is urged to consult his, her or its own tax advisors. This summary does not cover all potential U.S. federal income tax consequences that could possibly arise under the Plan and does not address the Plan's U.S. federal income tax consequences for any holder of an Allowed Claim that is a partnership (or other pass-through entity) or otherwise subject to special tax rules.

The Trustee has not requested any ruling from the Internal Revenue Service or any other taxing authority with respect to such matters nor will she, with respect to the federal income tax consequences of the Plan, obtain any opinion of counsel.  Consequently, there can be no assurance that the treatment set forth in the following discussion will be accepted by the IRS. The Trustee offers no statements or opinions that are to be relied upon by the creditors as to the

treatment of creditors' claims under the Plan. Matters not discussed in this Disclosure Statement may affect the tax consequences of the Plan on any particular holder of a Claim.

This summary is based upon the laws in effect on the date of this Disclosure Statement and existing judicial and administrative interpretations thereof, all of which are subject to change, possibly with retroactive effect. Holders of Allowed Claims should consult their own tax advisors as to the Plan's specific federal, state, local and foreign income and other tax consequences.

The tax consequences to creditors will differ and will depend on factors specific to each Creditor, including but not limited to: (i) whether the Claim (or portion thereof) constitutes a claim for principal or interest; (ii) the origin of the Claim; (iii) the type of consideration received by the creditor in exchange for the Claim; (iv) whether the creditor is a United States person or foreign person for tax purposes; (v) whether the creditor reports income on the accrual or cash basis method; (vi) whether the creditor has taken a bad debt deduction or otherwise recognized loss with respect to a Claim.

THERE ARE MANY FACTORS WHICH WILL DETERMINE THE TAX CONSEQUENCES TO EACH CREDITOR. FURTHERMORE, THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX, AND IN SOME CASES, UNCERTAIN. THEREFORE IT IS IMPORTANT THAT EACH CREDITOR OBTAIN HIS, HER OR ITS OWN TAX ADVICE REGARDING THE TAX CONSEQUENCES TO SUCH CREDITOR AS A RESULT OF THE PLAN.

THE DISCUSSION HEREIN IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED, BY ANY CREDITOR FOR THE PURPOSE OF AVOIDING TAX PENALTIES THAT MAY BE IMPOSED ON A TAX PAYER. THE DISCUSSION HEREIN

WAS WRITTEN TO SUPPORT THE TRANSACTIONS DESCRIBED IN THIS DISCLOSURE STATEMENT. EACH CREDITOR SHOULD SEEK ADVICE BASED UPON THE CREDITOR'S PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISOR.

## VII

## CONCLUSION AND RECOMMENDATION

The Trustee believes that confirmation and implementation of the Plan is preferable to any other alternative.  The only other alternative is a dismissal of the Chapter 11 Case.

Dated: New York, New York
        October 19, 2020

**Deborah J. Piazza**, as *Chapter 11 Trustee of Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. aka Bronx Miracle Gospel Tabernacle, Inc.*


By:___ /s/ Scott S. Markowitz_____
        Scott S. Markowitz, Esq.
        Deborah J. Piazza, Esq.
        Jill Makower, Esq.
        1350 Broadway, 11th Floor
        New York, New York 10018
        (212) 216-8000
        smarkowitz@tarterkrinsky.com
        dpiazza@tarterkrinsky.com
        jmakower@tarterkrinsky.com