**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
**In re:**

    **Bronx Miracle Gospel Tabernacle Word**
    **of Faith Ministries fka Bronx Miracle**
    **Gospel Tabernacle,**                                                          **Case No. 19-12447 (SMB)**

                          **Debtor**                                        **Chapter 11**
-----------------------------------------------------------X

### Affirmation in support of the Claims of the Parishioners and Creditors

Bronx Miracle Gospel Tabernacle Word of Faith Ministries fka Bronx Miracle Gospel Tabernacle (the "Church" or the "Debtor") through the undersigned counsel affirms as follows in support of the filed amended claims and in opposition to the Operating Trustee objection to the filed and or scheduled claims:

      The Operating Trustee ("Trustee") files her Omnibus Objection to the Scheduled Claims of the Petition. Her objection to the Petition scheduled claims can be summarized in one paragraph of theirs,

> The Individual Scheduled Claims should be expunged because the Debtor's Schedule E/F states no basis for any of the Individual Scheduled Claims, and upon information and belief, none exists. Further, the investigation of the Debtor's financial affairs conducted by the Trustee, her counsel and her accountant has yielded no evidence of any loans made to the Debtor by,any person ,or entity other than. Newell.

Trustee Motion ¶ 22. It states that "no basis" was provided. The basis has now been provided in the amended schedule of E/F. The Operating Trustee conjectural self-serving impression that "upon information and belief, none exists" has no evidentiary support indeed. None of the members of the Church were approached regarding their claims. See Affidavit of Pastor. No proper homework was done by the Trustee.

      Trustee was pleaded that books and records and computer be given to the undersigned. It was flatly refused. That is denial of due process.

1

**Standing Issue:**

The Church has a standing to support the claims and argue for their viability. The parishioner as Church members irrespective of their status as a lenders are an extension of the Church.  That is the religious duty of the Church to argue for the same. Pastor Affidavit, ¶ ("Christians of the Church, the congregants are an extension of the Church. The Church appears for the Congregants too in our religious system").

The Trustee brings the element of standing disregarding the religious obligation of the Church.  The Church members "are an extension of the Church." *Ibid,* the Pastor's affidavit.  Of course there is no doubt this Trustee has moved, filed and operated as if it was grocery store that went in bankruptcy and that it had perishable goods.  Such was not the case. It is a Church, entitled to special protection in our state.  This is a "a religious corporation, one of a class of litigants that the Legislature has determined to be entitled to special safeguards." *Berlin v. New Hope Holiness Church of God, Inc.,* 93 A.D.2d 798, 799, 460 N.Y.S.2d 961, 963 (1983). The Trustee did not consider anything *special* of this religious corporation. The Court too somehow just went along with the Trustee despite the presence of the super statute, RFRA," (the Religious Freedom Restoration Act of 1994, 107 Stat. 1488, 42 U.S.C. § 2000bb et seq.)  which clearly applies here even if the Trustee is deemed [which it is not] to be not a government, for RFRA covers not only government actors, it covers the acts of the federal laws. Indeed it,

> "*applies to all Federal law, and the implementation of that law*, whether statutory or otherwise, and whether adopted before or after November 16, 1993." *Id.* § 2000bb–3(a). The RFRA's remedial provision states that "[a] person whose religious exercise has been burdened in violation of this section may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." *Id.* § 2000bb–1(c). "[G]overnment" is in turn defined to include any "branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States." *Id.* § 2000bb–2(1).

2

*Hankins v. Lyght,* 441 F.3d 96, 102 (2d Cir. 2006). "RFRA's reach ensures its intrusion at every level of government, displacing laws and prohibiting official actions of almost every description and regardless of subject matter." *Tanvir v. Tanzin*, 894 F.3d 449, 461 (2d Cir. 2018), cert. granted sub nom. Despite such protections, the Church did not get its due. "In far too many places, for far too long, our first freedom has fallen on deaf ears*." Roman Catholic Diocese of Brooklyn v. Cuomo,* No. 20A87, 2020 WL 6948354, at *5 (U.S. Nov. 25, 2020) (Justice Gorsuch concurring opinion finding Governor Coumo prohibitions against the religious entities unlawful).

Thus, artificial fictions of the separateness of the Church from Christians or members would put undue burden and pressure and there is nothing stated by the trustee that which is compelling state interest to have a fictionalized separateness of the Church members or creditors from its Church. There is no conflict of interest here between the Church and its members. Church is its members.

### Maxine Hall POC

Ms. Hall claim is proper. The Church does not dispute it. The undersigned has been informed by the administrative secretary of the Church that it was a one-time loan of $25,000. The records of the Church and the Church computers would have more information on this loan.

### Erold Williams POC

Erold Williams has a proper claim of $50,000. The loan was given in 2010 and promissory note signed and also renewed in 2015 and subsequent paperwork is in custody and control of the Trustee. It is just very unfair that we have not been given our records, though we are being challenged on our parishioners claims and honesty.

### **Claims of other Parishioners**

As is clear from the Pastors and Church Administrator affidavit the claims are proper and buttressing of the same could only be possible upon records that is unlawfully taken over by the operating trustee.

### **Claims are Valid and Proper under the Circumstances**

"The "basic federal rule" in bankruptcy is that state law governs the substance of claims." *Raleigh v. Illinois Dep't of Revenue,* 530 U.S. 15, 20, 120 S. Ct. 1951, 1955, 147 L. Ed. 2d 13 (2000). "Bankruptcy courts are not authorized in the name of equity to make wholesale substitution of underlying law controlling the validity of creditors' entitlements, but are limited to what the Bankruptcy Code itself provides." Id.

A religious church, a debtor admits claim that the creditor asserts, and an unlawfully appointed trustee says no. It serves trustee's interest and not that of the Church or the Creditor. But "in the absence of any evidence to contradict the amounts of the claims, there is no basis to disallow the claims pursuant to Code § 502(b). *In re Irons,* 343 B.R. 32, 41 (Bankr. N.D.N.Y. 2006). Even oral loans are enforceable. "[A]n oral agreement may be enforceable so long as the terms are clear and definite and the conduct of the parties evinces mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms. An oral contract to repay a loan may be enforceable if the elements indicated above are met*.*" *J.D. v. A.D., Jr.,* 54 Misc. 3d 1221(A), 54 N.Y.S.3d 610 (N.Y. Sup. Ct. 2017) (Inner citation omitted). And we have that here. See Pastor and the Church Administrator's Affidavits. Both the Church and creditors "evinces mutual assent "sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Kramer v. Greene,* 142 A.D.3d 438, 439, 36

4

N.Y.S.3d 448 (2016). We are willing to call them as witnesses and they will testify to that effect.

Operating Trustee has not brought any viable objection to the claims. Also,

> even where a party in interest objects, the court "shall allow" the claim "except to the extent that" the claim implicates any of the nine exceptions enumerated in § 502(b). Those exceptions apply where the claim at issue is "unenforceable against the debtor ... under any agreement or applicable law," § 502(b)(1); "is for unmatured interest," § 502(b)(2); "is for [property tax that] exceeds the value of the [estate's] interest" in the property, § 502(b)(3); "is for services of an insider or attorney of the debtor" and "exceeds the reasonable value of such services," § 502(b)(4); is for unmatured debt on certain alimony and child support obligations, § 502(b)(5); is for certain "damages resulting from the termination" of a lease or employment contract, §§ 502(b)(6) and (7); "results from a reduction, due to late payment, in the amount of ... credit available to the debtor in connection with an employment tax on wages, salaries, or commissions earned from the debtor," § 502(b)(8); or was brought to the court's attention through an untimely proof of claim, §502(b)(9).

*Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.,* 549 U.S. 443, 449, 127 S. Ct. 1199, 1204, 167 L. Ed. 2d 178 (2007). The objection by the trustee to the valid claims does not fall into any of these *exceptions*. The trustee claims for Erold Williams,

> Williams· Claim asserts no basis is for a claim against the Debtor. Although Williams alleges the Claim is based on money loaned ... Williams attached no evidence of any loan. Therefore, the Claim should be expunged.

Trustee Objection ¶ 16. But Mr. Williams very clearly mentions, "Money Loaned," a language that he picks up from the Proof of Claim itself. The POC does not demand anything extra about the "basis." See the POC. The Trustee objection is baseless. Mr. Williams could not attach the paperwork, as he has none with him. There is paperwork with the Church, to which we have been denied access.

To Maxine Hall's POC the trustee claims, the trustee brings the same objection. However that is infirm objection, Ms. Hall is using the language prescribed in the POC. Trustee also

5

claims lack of paperwork. However, we cannot now without access to the computers and files answer to that query. Also, if the claims asserted by creditor is agreed to by the borrower, that is the end of objection. That is nothing special about a trustee objecting to the POC, the rudimentary aspects of law remain same. With such admission of liability in the Schedules, the claims are above contentions. "Judicial admissions are formal concessions [that are] binding upon the party making them. They may not be controverted at trial or on appeal. Indeed, they are 'not evidence at all but rather have the effect of withdrawing a fact from contention." *Maurizio v. Goldsmith,* 84 F. Supp. 2d 455, 464 (S.D.N.Y.), aff'd, 230 F.3d 518 (2d Cir. 2000).

About those claims that which are listed on the schedules, the Trustee did not find the basis listed. The schedules A, B, D and E/F have been amended to list the basis, thus the objections are moot. Also, the foregoing arguments equally applies to the Amended Schedule claims. Therefore the Trustee has no tenable objection.

Now I wish to bring to the Court attention very unethical moves by the legal team of bankruptcy Operating Trustee. Ms. Makower filed a letter on November 30, 2020 wherein she said the following:

> The Debtor has no good faith basis for the requested adjournment or for any additional time to access the Debtor's records to prepare amended schedules or opposition to the claim objections or fee applications. The Trustee's counsel has offered on many occasions to provide the Debtor with access to the Debtor's files, computers and personal property, but Debtor's counsel, Mr. Dahiya, failed to make any arrangements to do that. Notably, on September 29, 2020, a week before the closing on the Trustee's sale of the Property, the Trustee's counsel advised Mr. Dahiya he would need to provide a few dates over the next week if the Debtor wants to arrange a truck or movers to take the Debtor's personal property. Mr. Dahiya advised the Trustee's counsel by email on September 29, 2020 that he would fix a date in the next 3 days to retrieve Debtor's personal property. Mr. Dahiya never followed through, and never made any arrangements to pick up the Debtor's personal property or to come to the church to review the

6

> Debtor's books and records. On October 6, 2020, the Trustee closed on the sale of the Property.

These statements are false. Let them produce one single email either allowing us access to the computer and the files. However, I will produce email wherein they blocked my request for the files and the computers. Attached is the email. I will leave it to the Court to judge the truth. **Ex. A.** What the trustee says is a red herring. She is mixing up the computers and files with the furniture etc. Yes, we did email about the furniture and other belongings, however the trustee never had the intention to part with the computer and or files. Also, we could not have taken the furniture without legal authority from this court. Let us not forget how the Christians were excluded from the Church by order of this Court, then how can they just go back without the order of this Court. Abandonment of the belongings was not undertaken properly. Also, no inventory has been undertaken to tell what was seized. They just cannot with their whims and fancy say, "go and pick up your stuff." Both the parties have to be there for reclamation. And the church members will have a right to know if there is anything missing. This trustee has recklessly abandoned the Church properties with the buyer. No safeguards, absolutely none. How can this Trustee without legal notification abandoning the properties ask us to pick up our belongings? Do these trustees have such tremendous powers, that they would take over everything with the assistance of the Court and then abandon it without the Courts supervision? Also, when the trustee controls all the monies and when the debtor has no financial wherewithal for trucks and movers. It is unfair.

Ms. Makower thus makes false statement regarding September 29, 2020 email. This trustee has failed in her fiduciary obligation and squandered the estate and of course our Church is now homeless. It did not have to be that way. However, the interest of the Church , call it a estate, was never considered. Now its members interest is being hurt.

7

Very respectfully, the appointment of the trustee and way her legal team [her own law firm] conducted this case, it has caused more harm to the estate than any benefit. The operating trustee has failed to safeguard our interest, our claims and claims of the estate. The estate has been squandered.

The trustee objection to the claims are highly improper under the given circumstances and we must be given back our computers and files, so that we can prepare our defense. Also, we will shortly moving to remove the trustee.

Dated: New York NY

/s/Karamvir dahiya
Karamvir Dahiya
Dahiya Law Offices, LLC
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000

**Subject:** Re: [EXT] Bronx Miracle Gospel Tabernacle Word of Faith Ministries Inc. Case No. 19-12447 (SMB)
**From:** Karamvir Dahiya <karam@legalpundit.com>
**Date:** 10/28/2020, 1:58 PM
**To:** Scott Markowitz <smarkowitz@tarterkrinsky.com>
**CC:** Deborah Piazza <dpiazza@tarterkrinsky.com>, Bronx Miracle <bronxmiracle@yahoo.com>, Bernel Richardson <bernelr43@gmail.com>
**BCC:** Karamvir Dahiya <karam@legalpundit.com>

Got it.  We will bring action very soon

Sent from my iPhone

> On Oct 28, 2020, at 1:28 PM, Scott Markowitz <smarkowitz@tarterkrinsky.com> wrote:
>
> No , the books and records belong to the debtor . The Trustee is not abandoning books and records at this time . You are free to contact the scheduled individuals . They are I think for the most part congregants at the church and the Pastor must know how to reach them . We are going to file an omnibus objection to all of these Claims as permitted by the order judge Bernstein just entered . The hearing Will be on Dec 8. That gives time to work out an agreement on the claims .
>
> <image9492b7.PNG>
>
> **Scott Markowitz | Partner**
> D: 212-216-8005 | F: 212-216-8001
> smarkowitz@tarterkrinsky.com | Bio
>
> Tarter Krinsky & Drogin LLP
> 1350 Broadway | New York | NY | 10018
> www.tarterkrinsky.com | LinkedIn
> COVID-19 RESOURCE CENTER
>
>> On Oct 28, 2020, at 12:58 PM, KARAMVIR DAHIYA <karam@legalpundit.com> wrote:
>>
>>  Scott, I need the Churches files and computers asap, please tell me where they are. Can you please get them dropped to 75 Maiden Lane, Suite 506 NY NY 10038. This is my office. I need the same because I will haves to prepare and amend the schedules and prepare for my clients case.  Please let me know when and how you would do the same.  I also have included the Pastor, the Deacon, and the staff of the Church, Ms. Brown in this email. This is very important. We need it asap. Thank you very much.  Please pay attention, this is very urgent.
>> Sincerely,
>> Karamvir Dahiya
>>
>>> On Oct 28, 2020, at 11:47 AM, Scott Markowitz <SMarkowitz@tarterkrinsky.com> wrote: