Hearing Date and Time: JANUARY 27, 2021 AT 10:00 AM
Objection Deadline: January 20, 2021 at 5:00 PM

DAHIYA LAW OFFICES LLC
*Attorney for the Debtor*
75 Maiden Lane Suite 506
New York NY 10038
Tel: 212 766 8000
karam@dahiya.law

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
**In re:**

    **Bronx Miracle Gospel Tabernacle Word**
    **of Faith Ministries aka Bronx Miracle**
    **Gospel Tabernacle,**                                   Case No. 19-12447 (SMB)

                      **Debtor**
-------------------------------------------------------------X

### NOTICE OF MOTION FOR TERMINATION OF THE APPOINTMENT OF THE OPERATING TRUSTEE

PLEASE TAKE NOTICE, that the debtor, Bronx Miracle Gospel Tabernacle Word of Faith Ministries aka Bronx Miracle Gospel Tabernacle (the Debtor), on January 27, 2021 at 10:00 am, shall move the Court presided over by Honorable Stuart M. Bernstein, United States Bankruptcy Judge for relief of termination of the appointment of the Operating Trustee and for reinstating of the Debtor in Possession pursuant to 11 U.S.C. §§ 105, 1105 and FRBP 9014, via a telephonic hearing before the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, and for other ancillary attendant relief.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the Motion or the relief to be sought at the Hearing:

(1) shall be set forth in a writing describing the basis therefor, and conform to the Federal Rules of Bankruptcy Procedure and the Local Rules of the United States Bankruptcy Court for the Southern District of New York; and

(2) shall be filed and served as follows, so as to be received no later than 7 days prior to the return date of this Motion. Also, the same,

1

      (i) shall be filed with the United States Bankruptcy Court for the Southern District of New York (a) in accordance with General Order M-399, electronically, by registered users of the Bankruptcy Court's case filing system, or (b) in accordance with Local Bankruptcy Rules 5005-1 and 9004-1, submitted to the Clerk of the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004;

      (ii) shall be submitted in hard-copy form directly to the chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, at the Bankruptcy Court, One Bowling Green, New York, New York 10004 in accordance with Local Bankruptcy Rule 9070-1; and shall be served upon: (a) the operating Trustee, Deboraha J. Piazza, c/o Scott S. Markowitz, Esq. 1350 Broadway, 11th Floor, New York, New York 10018, mailto:smarkowitz@tarterkrinsky.com; (b) the Office of the United States Trustee, Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Serene K. Nakano, Esq.; and (c) the undersigned counsel for the Debtor Church.

Dated: December 7, 2020
New York NY

                                                /s/Karamvir dahiya
                                                Dahiya Law Offices, LLC
                                                75 Maiden Lane Suite 506
                                                New York NY 10038
                                                Tel: 212 766 8000
                                                karam@dahiya.law

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

    Bronx Miracle Gospel Tabernacle Word
    of Faith Ministries aka Bronx Miracle
    Gospel Tabernacle,                                  Case No. 19-12447 (SMB)

                    **Debtor**
-----------------------------------------------------------X

## Affirmation in Support of the Motion to Remove the Operating Trustee and reinstate the Debtor in Possession

The debtor, Bronx Miracle Gospel Tabernacle Word of Faith Ministries aka Bronx Miracl Gospel Tabernacle, (the "Church" or the "Debtor") through the undesigned respectfully represent the following for the removal of the trustee and reinstating the Debtor in possession:

Pursuant to application of a usurious lender, Thomas Borek (Newell Funding) the Court ordered an appointment of the operating trustee, 11 U.S.C. 1104 on January 7, 2020. The U.S. Trustee appointed Ms. Deborah Piazza as the Operating Trustee. This was indeed an extraordinary step in this case. Such appointment served Borek's purpose but destroyed the Church, its equity and its members zeal and any religious protection that is accorded by the state or the federal laws. Such a court-imposed trustee contravened the Bankruptcy Code and other federal provisions like RFRA.

The appointment of the operating trustee was an extraordinary remedy set in motion for Borek. *In re Euro–American Lodging Corp.,* 365 B.R. 421, 426 (Bankr.S.D.N.Y.2007) (noting the appointment of a § 1104 trustee is an extraordinary remedy"); *In re Sharon Steel Corp.,* 871 F.2d 1217, 1225 (3d Cir.1989) ("It is settled that appointment of a trustee should be the exception, rather than the rule."). This Court found "cause" within the meaning of § 1104(a)(1) in Newell Funding Motion and ruled,

    Upon the Motion Of Newell Funding, LLC To Appoint A Chapter 11
    Trustee Or In The Alternative For Relief From The Automatic Stay [D.I.

1

> 39] (the "Motion"), filed by Newell Funding, LLC ("Newell"), seeking to appoint a chapter 11 trustee, pursuant to 11 U.S.C. §1104(a), for Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. (the "Debtor") or, in the alternative, granting relief from the automatic stay pursuant to 11 U.S.C. §362(d) to permit Newell to complete a foreclosure sale, and the arguments of counsel presented at the hearing held on January 7, 2020; the Court being satisfied that the relief granted herein is appropriate under the circumstances; and good and sufficient cause appearing for the entry of this Order . . . .
> **ORDERED**, that the Motion is granted in part in that the Court hereby orders the appointment of a chapter 11 trustee, pursuant to 11 U.S.C. §1104(a) for the Debtor . . . .

Court Dkt. # 41. It is unclear from the Order, the triggering cause of such an "extraordinary" step. And pursuant to the Court's order, the U.S. Trustee appointed the Operating Trustee, selected from the pool of the trustee that the U.S. Trustee ensembles to carry out the enforcement of this federal law. Both the ordering Court and U.S. Trustee appointment of the Operating Trustee is a governmental action executed for the implementation of the Title 11 provisions, thus amenable to the extant provisions of RFRA.

Swiftly upon appointment, the Operating Trustee moved to have her own firm appointed as the counsel for the estate to execute the Sale of the Church. This was done way before the examining the underlying issues. It was clear this Trustee agenda was pure sale and nothing else. There was no examination of Borek and review of the underlying litigation papers. No meaningful study was undertaken to minutely examine the claims of the estate. Rather estate was seen hostile to the trustee, and she went along with Borek. Carved out a relief from their legal fees in case the sale produced less than Borek's claim, used Borek's broker to sell and conducted the sale. The sale was carried out zoom without necessary marketing marketing [looking into serious covid-19 restrains, a climate totally hostile for the sale of assets, thus diminishing the estate value]. The Church House real estate exceeding in value 5.5 million was sold for 2.8 million There was no participation allowed to the Debtor's clergy and or their attorney and similarly with the closing, they were not allowed. It was a complete takeover. And no meaningful dialogue between this

2

Trustee and the Church. The Church was sold for $2.8m with $2m paid to Borek and now half a million demanded in legal fees by the Operating Trustee—the Church is liquidated and completed crippled leaving no chances for resurrection. Whatever little is left the Church is begging to allow it to regain its autonomy.

Respectfully this Court exceeded its jurisdiction in the appointment of the Operating Trustee and approving its sale.

The liquidation of the Church was in violation of the Bankruptcy Code. Section 303 of the Bankruptcy Code permitting commencement of involuntary bankruptcy case against the debtors prohibits such a proceeding against the non-profit corporation or organization. 11 U.S.C.§ 303(a). Church is one such non-profit organization, it is a religious organization. It is registered in this manner with the New York state. *See, e.g.*, *In re Yehud Monosson USA, Inc.,* 458 B.R. 750, 755 (B.A.P. 8th Cir.) ("[T]he test for whether a debtor is moneyed, business, or commercial corporation is determined by a consideration of 'the classification of the corporation by the state; the powers conferred upon it; and the character and extent of its main activities.'"). Thus, the Church cannot be a subject of an involuntary bankruptcy proceeding. This is so since Bankruptcy Act of 1898's prohibition on involuntary bankruptcy relief against "eleemosynary [i.e., charitable] institutions" such as "churches, schools, and charitable organizations and foundation[s]." H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 321 (1977); Sen. Rep. No. 95-989, 95th Cong., 2d Sess. 33 (1978), reprinted in 1978 U.S.C.C.A.N. 5963, 6277, 5787 & 5819.

Similar restriction is also established by another provision of the Bankruptcy Code, 11 U.S.C. § 1112(c). This section precludes conversion of a chapter 11 case to chapter 7 "if the debtor is a . . . corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion." 11 U.S.C. § 1112(c).

3

Since the direct liquidation could not have been undertaken, the Court's appointment for achieving what is proscribed directly is equally prohibitive. "*Quando aliquid prohibetur ex directo, prohibetur et per obliquum*," meaning what is directly prohibited cannot be done indirectly is an old abiding maxim in law. Thus, the operating trustee acted in violation of the Bankruptcy Code, even her own appointment was in violation of the Bankruptcy. Chief Justice Marshall, in *Wayman v. Southard,* 10 Wheat. [23 U.S.] 1, says: "It is a general rule that what cannot be done directly from defect of power cannot be done indirectly."

**The Appointment and her continuing operation violates the fundamental religious tenets of the Faith based Church**

The speed with which the operating trustee moved is phenomenal in ousting the Christians from the Church, in confiscating the Church belonging, joining hands with the lender's broker and auctioning the Church over Zoom. There was no regard for the faith, religious sentiments of the Christians. All powers were arrogated to the Operating Trustee. The operating trustee decided whatever the lender wanted. "It is almost inconceivable that a court would attempt to displace church decision makers in favor of a trustee." David A. Skeel, Jr., Sovereignty" Issues and the Church Bankruptcy Cases, 29 Seton Hall Legis. J. 345, 354 (2005). The way the seizure of the Church happened—bibles, beads, cloaks, sacraments, confessional records, computers, other belongings and then the trustee demanding passwords for the church all amounted to "becoming involved in the ecclesiastical functions of the church." See *Lemon v. Kurtzman*, 403 U.S. 602, 615 (1971).

**Appointment of the Trustee and her continuing presence violates Religious laws**

Congress enacted RFRA, the Religious Freedom Restoration Act of 1994, 107 Stat. 1488, 42 U.S.C. § 2000bb et seq., which provides, in pertinent part, that "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general

4

applicability." 42 U.S.C. § 2000bb-1(a). As amended by the Religious Land Use and Institutionalized Persons Act of 2000, 114 Stat. 803, 42 U.S.C. § 2000cc et seq., RFRA limits the definition of "government" to the federal government and U.S. territories. 42 U.S.C. § 2000bb-2(1) & (2). RFRA is, by its terms, applicable "to all Federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after November 16, 1993," and any "Federal statutory law adopted after November 16, 1993, is subject to [RFRA] unless such law explicitly excludes such application by reference to [RFRA]." 42 U.S.C. § 2000bb-3(a) & (b). Thus Bankruptcy Code is subject to RFRA and so is the operating trustee as appointed by the U.S. Trustee, a government and pursuant to the order of this Court, clearly a government unit.

Thus, if government substantially burdens a person's exercise of religion, that person may assert violation of RFRA as a claim or defense in a judicial proceeding and obtain appropriate relief against the government. 42 U.S.C. § 2000bb-1(c). To prevail in such a proceeding, the government must establish that the application of the burden to the person is the least restrictive means of furthering a compelling governmental interest. See 42 U.S.C. § 2000bb-1(b).

Here, the Church invokes as before that its religious rights and autonomy has been hurt and that the liquidation of the Church was and continuing administration by the operating trustee violates RFRA. Neither the U.S. Trustee nor its agent, the Operating Trustee has established that she is involved in a compelling government interest and her acts from sale to liquidation to bankrupting the Church is the "least restive means" of achieving that unsaid compelling government interest.

Viewing the operating trustee as non-governmental entity is untenable. *In Re Bernard L. Madoff Investment 14 Securities*, 2015 WL 3892765, p. 3(SDNY 2016). First of all there is no escape from the fact that it is the government Unit, this Court that ordered and the U.S. Trustee

5

again a governmental body appointed the Operating Trustee, which clear converts to a government action. Second, RFRA applies to both the government *acts* and *actors.* RFRA "operates as a sweeping 'superstatute,'cutting across all other federal statutes ... and modifying their reach." Michael S. Paulsen, A RFRA Runs Through It: Religious Freedom and the U.S. Code, 56 Mont. L. Rev. 249, 253 (1995). Since RFRA's adoption, Congress has maintained RFRA's protections in every law it has passed—no statute, including the Bankruptcy Code, has "explicitly exclude[d]" RFRA's application. Title 11 is subject to RFRA. Indeed it applies to "all Federal law, and the implementation of that law." 42 U.S.C. § 2000bb-3(a). Declaring a U.S. Trustee appointed chapter 11 operating trustee as a non-governmental entity is not enough to defeat RFRA application. It is contrary to our circuit precedent. RFRA allows parties who "claim that a federal statute * * *substantially burdens the exercise of their religion to assert the RFRA as a defense to any action asserting a claim based on [that statute]." *Hankins v. Lyght*, 441 F.3d 96,104 (2d Cir. 2006). See also, *E.E.O.C. v. Catholic University of America*, 83 F.3d 455, 470 (D.C. Cir. 1996) (holding through RFRA, Congress had create[d] a compelling interest defense for the benefit of those whose free exercise rights would be burdened by a neutral federal law of general application."); *In re Young ("Young I"),* 82 F.3d 1407 (8th Cir. 1996).

Thus, RFRA sweeps under it even private actors, statute's specific mandate that RFRA's protections apply to "all Federal law and its implementation." The judicial relief provision speaks broadly of a person's right to assert a RFRA "violation as a claim or defense in a judicial proceeding."42 U.S.C. § 2000bb-1(c) (emphasis added). Our circuit explicitly stated that "RFRA's language surely seems broad enough to encompass" a suit "by a private party seeking relief under a federal statute against another private party who claims that the statute substantially burdens his or her exercise of religion." *Hankins* 441 F.3d at 103.Also, even if arguendo, the operating trustee

6

and subsequent sale of the Church by her were private actions, even that amount to a state action, for her conduct taking over the church, seizing all the belongings of the church, ousting the Christians from the Church and then selling the Church in an auction without letting the church members attend it, were indeed burdening constitutional rights and were a state action that which will attract RFRA. "It matters not that the law has been enforced in a civil action and that it is common law only . . ." *New York Times Co. v. Sullivan* 376 U.S. 254, 265 (1964) "The test is not the form in which state power has been applied but, whatever the form, whether such power has in fact been exercised." *Id.*

RFRA defines "government" to include "a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States * * *." 42 U.S.C. § 2000bb–2(1).. It is clear that, a private party acts under color of law when "there is a sufficiently close nexus" between the government and the challenged conduct so that the conduct "may fairly be treated as that of the [government] itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). It is the operating trustee appointed pursuant to the order of the bankruptcy judge. It is hard to imagine a much more a government appointee than that appointed pursuant to the order of the bankruptcy judge, even if the said appointment is pursuant to the request of a creditor. This particular conduct of the appointment of the trustee was a government action. Also, the issue is not if the operating trustee is a state actor, whether a particular private party is generally a "state actor[]," rather, "the question is whether *particular conduct*" is " 'state action.' " *Jackson,* 419 U.S. at 349-350 (emphasis added).

The Court appointment of an operating trustee and then subsequent seizure of the Church by the trustee and its sale were quintessentially state action. And there is no doubt that the operating trustee owes her title/power/status principally to the choices of federal officers acting pursuant to

7

federal law. And its conduct in this case is compelled by choices enshrined in the Bankruptcy Code. Indeed, the bankruptcy judge recognizes such statutory duties and powers,

> Once the Court directed the appointment of a chapter 11 trustee and approved Ms. Piazza's appointment as the Trustee, the debtor ceased to be a debtor in possession and the Trustee became the representative of the estate. 11 U.S.C. § 323(a). Any entity in possession, custody or control of property that the Trustee could use, sell or lease under Bankruptcy Code § 363 was required to deliver the property to the trustee and account for the property or its value.2 11 U.S.C. § 542(a). . . .

Bankruptcy Court Order March 23, 2020. The operating trustee is appointed pursuant to section 1104 of the Bankruptcy Code, and her appointment vests with the U.S. Trustee, an official of the Department of Justice.. She takes over the estate of the bankruptcy debtor and enjoys qualified immunity [see *Barton* Doctrine] as a full-fledged arm of the Court administering the asset. Also, the U.S. Trustee office is charged with "monitoring" its activities, subject to the "general supervision" of the Attorney General. 28 U.S.C. §§ 586(a)(3)(E), (c). The operating trustee has all the powers granted to the chapter 7 trustee liquidating the Debtor's assets. 11 U.S.C. § 704. It is the federal law that which determines her choices and not her personal choices. *Jackson,* 419 U.S. at 357.

The operating trustee backed up by full panoply of federal powers, seized the entire Church and its properties, locked it and then sold it in an auction—if she is not a government actor, it is hard to imagine what a government actor would be like. See *Lugar v. Edmondons Oil Co*. 457 U.S. 922 (1982) (private party authorized by statute to attach and sequester disputed property acts under the color of law and this suable as a state actor under 42 U.S.C. § 1983, provided the state both permits the party to resolve the dispute without judicial supervision and provides a state official to assist the party in the attachment).

8

Also, when we had initially raised the issue of such religious restriction, this Court had found waiver. However these foregoing defense were never waived. This Court relying on the dissent in *Hankins* case, which applied RFRA to bar a private party suit, found that the Church had waived its RFRA rights . See id. (quoting *Hankins v. Lyght,* 441 F.3d 96, 114-115 (2d Cir. 2006) (Sotomayor, J., dissenting)). However, such a waiver was never decided in *Hankins*. Also, to be an effective waiver of fundamental rights, the waiving party must perform "ordinarily an intentional relinquishment or abandonment of a known right or privilege,"*Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Also, the abandonment must be a "knowing, intelligent act done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). Such is not the case here in our matter.

This Court had reasoned that since the Church voluntarily sought bankruptcy protection, they are subject of its consequences. And also, that by not raising RFRA, it was waived. However, just the because the Church sought chapter11 protection, it did mean that it gave up its religious autonomy or gave up RFRA rights. *Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72 (1990); *Sherbert v. Verner,* 374 U.S. 398, 406 (1963) ("[T]o condition the availability of benefits upon [an] appellant's willingness to violate a cardinal principle of her religious faith effectively penalizes the free exercise of her constitutional liberties."); *Church of Scientology Flag Serv. Org. v. City of Clearwater,* 2 F.3d 1514, 1538 (11th Cir. 1993) ("An unconstitutional entanglement may not be excused on the ground that it is imposed only as . . . a prerequisite to receiving a valuable privilege."). Thus, there is no waiver of the rights provided under RFRA and or RLUIPA.

Congress made it exceptionally plain that RFRA is meant to provide broad protection from all legal burdens on the exercise of religion. In passing the statute, Congress was conscious that "laws [that are] neutral toward religion may burden religious exercise as surely as laws intended

9

to interfere with religious exercise." 42 U.S.C. § 2000bb(a)(2) (emphasis added). That is why it expressly applied the Act's prohibitions to "all Federal law, and the implementation of that law." Id. § 2000bb-3(a). And, in 2000, Congress amended RFRA's definition of the "exercise of religion" to ensure that it "be construed in favor of broad protection of religious exercise to the maximum extent permitted by the terms of this chapter and the Constitution." Id. at 2000cc-3(g).

The operating trustee improperly sold the Church house the only asset of the Church. The operating trustee wanting to satisfy a sole usurious lender could not have been a compelling reason, even though the lender's application was responsible for her appointment. RFRA sets forth an affirmative mandate that, when carrying out their duties, every member of the federal government (including federal administrative agencies) "shall not substantially burden a person's exercise of religion," absent a compelling interest and use of the least restrictive means. 42 U.S.C. § 2000bb-1(a)–(b) (emphasis added); see also id. § 2000bb-2(1) (defining the "government" under the Act as every "branch, department, agency, instrumentality, and official" of the United States). And RFRA makes clear that it applies to "*all Federal law*, and the *implementation of that law*," unless a particular statute "explicitly excludes ... application" of RFRA. Id. § 2000bb-3(a)–(b) (emphasis added). We have not found that the Bankruptcy Code is exempted from such application.

Thus is clear from the foregoing that Court exceeded its jurisdiction. *First,* there is no allowance of third party administrator for a Church under the Bankruptcy Code and or for an involuntary appoitnemnt of an operating trustee. *Second*, she could not have liquidated the Church, as the Bankruptcy Code does not permit it. *Third,* RFRA, RLUIPA and First Amendment of the Religious clause does not permit such an appointment and the liquidation of the Church by the bankruptcy judge. "RFRA's reach ensures its intrusion at every level of government, displacing laws and prohibiting official actions of almost every description and regardless of subject matter."

10

*Tanvir v. Tanzin*, 894 F.3d 449, 461 (2d Cir. 2018), cert. granted sub nom. FNU *Tanzin v. Tanvir,* 140 S. Ct. 550, 205 L. Ed. 2d 353 (2019) (quoting *City of Boerne* v. Flores, 521 U.S. at 532,117 S.Ct. 2157 (further stating that RFRA's restrictions "apply to every agency and official of the Federal ... Government[ ]").

We would say now enough is enough. Our Church, its prayer house, every built equity all has been sold and wealth of claims against the wrongdoer squandered by the recklessness of the Trustee who could have paused to study, examine, and see things like a professional. Indeed it so easy to hire and sell the property, pay the brokers and make hefty dividends to oneself [half a million to sell unlawfully a church] but to really parse through the clouded facts, find claims, defenses and where rigors of mind is involved, that is what requisitioned from a trustee. Irrespective, our Church became a loot, first it was Thomas Borek and then the Operating Trustee. Not sure if this is what is justice and what law is. Is it really true: "Governments have not always been tolerant of religious activity, and hostility toward religion has taken many shapes and forms—economic, political, and sometimes harshly oppressive?" *Walz v. Tax Comm'n of* City of New York, 397 U.S. 664, 673 (1970). If that is then "[i]n far too many places, for far too long, our first freedom has fallen on deaf ears*." Roman Catholic Diocese of Brooklyn v. Cuomo,* No. 20A87, 2020 WL 6948354, at *5 (U.S. Nov. 25, 2020).

### The Case Warrants Reinstatement of the Debtor in Possession

We request that the Debtor in Possession be reinstated. 11 U.S.C.§ 1105. The sole triggering creditor pushing for the appointment of the trustee has been more amply rewarded. There is no complaining creditor left other than few Church members. Besides that the Court exceeded its jurisdiction in initial appointment, continuing presence of this operating trustee is very harmful for the estate. The operating trustee reached its peak in performance. The

11

performance was the sale of the Church property for 2.8 million which is now listed for sale at 5.5 million. The Trustee is only harming the estate. The estate has claims against Borek and it has to find a meaningful resurrection. With the operating trustee present here, it won't be possible. There is no doubt that the appointment of the trustee was improvidently granted, as the House Report notes:

> This section [§ 1105] authorizes the court to terminate the trustee's appointment and to restore the debtor to possession and management of the property of the estate, and to operation of the debtor's business. This section would permit the court to reverse its decision to order the appointment of a trustee in light of new evidence.

H.R. Rep. No. 595, 95th Cong., 1st Sess. 403 (1977).

The Church has suffered a lot, incompetence of its former counsels, not having discovery from Thomas Borek and not examining the structured usurpation of the Psator properties [which effectively mooted Borek's claim in this court]. The Operating Trustee did not do prosecute any claims, her position was further compromised by the carve out deal and aligning her interest with that of Borek including hiring his brokers for sale. Irrespective of whatever that has happened, we are not expecting anything meaningful from the continued presence of the operating trustee other than jeopardy and letting the Church claims go waste. There is no doubt that the Church has been uprooted and it would take time and patience to plant it again.

The Church very respectfully pleads that its autonomy be restored as a Church and the operating Trustee be removed.

Dated: New York NY
December 7, 2020

        */s/ Karamvir Dahiya*
Karamvir Dahiya for the Church