**HEARING DATE: February 24, 2021**
                                    **HEARING TIME: 10:00 A.M.**

TARTER KRINSKY & DROGIN LLP
*Attorneys for Deborah J. Piazza, as Chapter 11 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com
Jill Makower, Esq.
jmakower@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:

| | |
|---|---|
| BRONX MIRACLE GOSPEL TABERNACLE WORD OF FAITH MINISTRIES, INC. *aka* Bronx Miracle Gospel Tabernacle, Inc. | Chapter 11<br><br>Case No. 19-12447 (SMB) |
| Debtor. | |

---------------------------------------------------------------x

**NOTICE OF TRUSTEE'S MOTION PURSUANT TO 11 U.S.C. §§ 105(a), 1112(b)(1) AND 305(a) FOR AN ORDER DISMISSING THE DEBTOR'S CHAPTER 11 CASE AND GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE,** that upon the motion dated January 29, 2021 (the "Motion"), Deborah J. Piazza, as Chapter 11 trustee (the "Trustee") for Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. *aka* Bronx Miracle Gospel Tabernacle, Inc. (the "Debtor"), by her counsel Tarter Krinsky & Drogin LLP, shall move before the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, in his courtroom at the United States Bankruptcy Court, Southern District of New York, One Bowling Green, New York, New York 10004, on **February 24, 2021 at 10:00 a.m.**, (hearing to be held telephonically), or as soon thereafter as counsel may be heard, pursuant to 11 U.S.C. §§ 105(a), 1112(b)(1) and 305(a) for an order dismissing this Chapter 11 case, and authorizing the Trustee to make certain

distributions of property of the estate as set forth in **Exhibit "C"** annexed hereto.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief requested in the Motion shall be (a) filed with the Clerk of the Bankruptcy Court on the Court's ECF system; (b) served upon (i) Trustee's counsel, Tarter Krinsky & Drogin LLP, 1350 Broadway, 11th Floor, New York, New York 10018, Attn: Scott S. Markowitz, Esq. (smarkowitz@tarterkrinsky.com) and Jill Makower, Esq. (jmakower@tarterkrinsky.com); and (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Andrew D. Velez-Rivera, Esq. (andy.velez-rivera@usdoj.gov) and (c) delivered to the chambers of the Honorable Stuart M. Bernstein, United States Bankruptcy Judge, so that same are received on or before **February 17, 2021.**

**PLEASE TAKE FURTHER NOTICE,** that if you have no objections to the relief requested in the Motion, you need not appear at the hearing.

Dated: New York, New York
January 29, 2021

                                                         **TARTER KRINSKY & DROGIN LLP**
                                                         *Attorneys for Deborah J. Piazza,*
                                                         *as Chapter 11 Trustee*

                                                         By: /s/ Scott S. Markowitz
                                                             Scott S. Markowitz, Esq.
                                                              Jill Makower, Esq.
                                                              1350 Broadway, 11th Floor
                                                              New York, New York 10018
                                                              (212) 216-8000
                                                              smarkowitz@tarterkrinsky.com
                                                              jmakower@tarterkrinsky.com

**HEARING DATE: February 24, 2021**
**HEARING TIME:   10:00 A.M.**

TARTER KRINSKY & DROGIN LLP
*Attorneys for Deborah J. Piazza, as Chapter 11 Trustee*
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
Scott S. Markowitz, Esq.
smarkowitz@tarterkrinsky.com
Jill Makower, Esq.
jmakower@tarterkrinsky.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
In re:

BRONX MIRACLE GOSPEL TABERNACLE            Chapter 11
WORD OF FAITH MINISTRIES, INC.
*aka* Bronx Miracle Gospel Tabernacle, Inc.            Case No. 19-12447 (SMB)

                            Debtor.
------------------------------------------------------------x

**TRUSTEE'S MOTION FOR ORDER DISMISSING CHAPTER 11 CASE AND GRANTING RELATED RELIEF, PURSUANT TO 11 U.S.C §§ 105(a), 1112(b) AND 305(a)**

**TO:    THE HONORABLE STUART M. BERNSTEIN**
    **UNITED STATES BANKRUPTCY JUDGE**

Deborah J. Piazza, as Chapter 11 trustee (the "Trustee") for Bronx Miracle Gospel Tabernacle Word of Faith Ministries, Inc. *aka* Bronx Miracle Gospel Tabernacle, Inc. (the "Debtor"), by and through her attorneys, Tarter Krinsky & Drogin LLP, hereby files this motion for entry of an order, pursuant to sections 105(a), 305(a) and 1112(b) of title 11, United States Code (the "Bankruptcy Code") dismissing this Chapter 11 case and authorizing the Trustee to

make certain distributions of property of the estate as set forth in **Exhibit "C."** In support of this motion, the Trustee respectfully represents as follows:

## PRELIMINARY STATEMENT

1. After the Debtor's numerous acts of flagrant obstructionism designed solely to frustrate the Trustee's marketing and sale of the Debtor's only substantial asset - - the real property located at 2910 Barnes Avenue, Bronx, New York (the "Property") - - the Trustee conducted a spirited auction of the Property which concluded with a successful bid of $2,875,000. The Trustee closed on the sale on October 6, 2020. The final purchase price was $2,895,000 as a result of the buyer's delay in closing.

2. Shortly thereafter, on October 20, 2020, the Trustee filed a Disclosure Statement [ECF No. 127] and a plan of reorganization (the "Plan") [ECF No. 126] which, if confirmed, would have provided a substantial distribution on allowed general unsecured claims. Unfortunately, the Debtor, to the detriment of all creditors, continued to engage in obstructionism and frivolous litigation, including the filing of false amended schedules for the benefit of insiders, which has very significantly depleted the estate. The estate now holds $345,163.51, and the Debtor promises further litigation and frustration of any additional efforts by the Trustee to end this case through a simple plan of liquidation.

3. Since conversion of the Debtor's case without Debtor's consent is precluded pursuant to Bankruptcy Code section 1112(c) because the Debtor is "a corporation that is not a moneyed, business, or commercial corporation,"[1] and the Debtor represented at the last hearing in this case on January 27, 2020 that it will not file a plan, dismissal of this case is warranted and in the best interest of all creditors. The Trustee has advised the Court and the United States

---

[1] See 11 U.S.C. § 1112(c) ("The court may not convert a case under this chapter to a case under chapter 7 of this title if the debtor is a farmer or a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion.").

Trustee of its intention to seek dismissal.

## JURISDICTION

4. This Court has jurisdiction to consider this motion pursuant to 28 U.S.C. §§ 157 and 1334 and the standing Order of Referral of Cases to Bankruptcy Judges of the District Court of New York, dated July 10, 1984 (Ward, Acting CJ), as amended by order M-431, dated January 31, 2012 (Preska, C.D.J.). Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The statutory predicates for the relief requested are Bankruptcy Code sections 105(a), 305(a) and 1112(b).

## GENERAL BACKGROUND

5. On July 28, 2019 (the "Petition Date"), the Debtor filed a voluntary Chapter 11 petition under the Bankruptcy Code in this Court. This was the Debtor's second Chapter 11 case in this Court. The Debtor's first Chapter 11 case, Case No. 17-11395 (SMB) (the "Prior Chapter 11 Case"), was dismissed on May 24, 2018.

6. On December 9, 2019, the Debtor's lender, Newell Funding LLC ("Newell" or "Lender"), filed a motion (the "Lender Motion") [Dkt. No. 39] seeking appointment of a Chapter 11 trustee pursuant to Bankruptcy Code section 1104(a), or, in the alternative, granting relief from the automatic stay pursuant to Bankruptcy Code section 362(d) to permit Newell to complete a foreclosure sale of the Property.[2] The Lender Motion detailed the long and tortured history of the litigation between the Debtor and Lender, including proceedings in the Debtor's Prior Chapter 11 case, numerous state court foreclosure proceedings and proceedings in this Chapter 11 case. The Debtor did not oppose the appointment of a trustee.

---

[2] On January 23, 2015, Lender commenced a mortgage foreclosure action and was granted a judgment of foreclosure on March 2, 2017 (the "Foreclosure Judgment"), which determined the amount owed to Lender was $1,196,033.99, together with interest from October 16, 2015 plus additional amounts provided for in the Foreclosure Judgment aggregating $1,354,338.50 (the "Judgment Amount"). (See Lender Motion, ¶ 5). The Foreclosure Judgment is final and no longer appealable.

{Client/086324/1/02290074.DOC;2 }    3

7. On January 8, 2020, the Bankruptcy Court entered an order (the "Appointment Order"), directing the United States Trustee to appoint a Chapter 11 trustee. The Court appointed an operating trustee for "cause" and in the best interest of creditors, due to, among other things, the Debtor's long history of obstructionist tactics to delay and hinder Newell's rights as a mortgage lender, the Debtor's failures to demonstrate any prospects to reorganize, and Debtor's noncompliance with its obligations as a debtor in possession.

8. The Debtor did not appeal the Appointment Order. However, as set forth below, the Debtor has made two baseless motions, both unsuccessful, to vacate the Appointment Order.

9. On January 27, 2020, the Court entered an order [ECF No. 45] confirming the appointment of Deborah J. Piazza as the Chapter 11 Trustee.

10. On March 12, 2020, Governor Cuomo issued Executive Order No. 202.1 which, *inter alia*, directed that for the period from March 12, 2020 through April 11, 2020:

> "Any place of business or public accommodation, and any gathering or event for which attendance is anticipated to be fewer than five hundred people, **shall operate at no greater than fifty percent occupancy, and no greater than fifty percent of seating capacity**, for thirty days effective on Friday, March 13, 2020, except that any theater seating five hundred or more attendees for a live performance located in a city of one million or more shall not hold any further performances after 5pm on March 12, 2020."

Executive Order No. 202.1 [emphasis added].[3]

11. Beginning on or about March 16, 2020, the Debtor began its egregious conduct to obstruct the Trustee and her retained broker Nico Rossi of Tamerlain Realty Corp. ("Tamerlain") from marketing and selling the Property.

12. On March 18, 2020, the Trustee's counsel filed a letter (the "March 18 Letter")

---

[3] Subsequent Executive Orders issued by Governor Cuomo continued restrictions on gatherings in public accommodations.

{Client/086324/1/02290074.DOC;2 }    4

[ECF No. 52] to request a court conference to address the Debtor's flagrant obstruction of the Trustee's efforts to sell the Property and to request entry of an order enforcing the Trustee's rights under the Bankruptcy Code to have a locksmith change the locks and authorize the appropriate authorities to remove any occupants from the Property. The Trustee's March 18, 2020 letter detailed the Debtor's obstructionism.[4]

13. On March 24, 2020, the Bankruptcy Court entered a Memorandum Decision [ECF No. 58] which ruled the issue of whether Newell's mortgage is invalid under section 12(1) of the New York Religious Corporation Law is barred by collateral estoppel, and the Debtor's

---

[4] That letter stated:

> On Friday March 13, 2020, the Trustee put the Debtor's counsel, Anthony M. Vassallo, on notice that a potential buyer and broker would visit the Property on Monday afternoon, March 16, 2020. On Sunday, March 15, 2020, the Trustee's undersigned counsel advised Debtor's counsel there would need to be someone at the property on Monday March 16 at 12:30 PM to let the broker and prospective buyers into the Property. The Debtor's counsel communicated that to the Debtor.
>
> On Monday, March 16, 2020 at approximately 12:00 noon (30 minutes prior to the 12:30 P.M. visit), Trustee's undersigned counsel received a telephone call from the Debtor's representative, Minister Jeannette Y. Brown stating to the effect that due to the Coronavirus situation, the visit would need to be postponed toprotect the health and safety of the Debtor's congregants and employees. The Trustee's undersigned counsel immediately contacted Debtor's counsel and advised him, both by phone and email, that due to the Coronavirus pandemic, the Trustee has decided to exercise her right to shut down the Property effective that day.
>
> On March 16, 2020, at approximately 12:30 P.M., broker Nico Rossi came to the Property with potential purchasers, and the Debtor refused them entry into the Property. The Trustee's counsel made various requests to Mr. Vassallo that the Debtor provide the keys to Mr. Rossi, but the Debtor refused to surrender the keys and has still not provided a set of keys to the Trustee. At 5:00P.M. on March 16, 2020, the Trustee's counsel advised Mr. Vassallo by email that the Debtor's refusal to turn over the keys constitutes obstruction and violates section 362(a)(3) of the Bankruptcy Code. Debtor's counsel has not responded to that email or to any of the Trustee's subsequent emails or voicemails.
>
> On March 17, 2020, the Trustee's undersigned counsel came to the Property with Mr. Rossi at approximately 1:00 P.M. The Debtor's representatives, Reverend Thompson, Minister Brown and one other clergy member, were waiting outside the Property in a vehicle. Upon seeing the Trustee's undersigned counsel and Mr. Rossi, whom the Debtor's representatives had met once before, they entered the Property and locked the doors. At approximately 1:15 P.M., the Trustee's undersigned counsel, Mr. Rossi and a locksmith repeatedly knocked on the doors. The Debtor's representatives deliberately ignored those knocks.

[ECF No. 52].

improper attempt to relitigate that issue "does not affect the debtor's statutory duty to turn over the Property to the Trustee, and any effort by the debtor or anyone else to exercise control over the Property violates the automatic stay." Memorandum Decision, p. 4.

14. On May 24, 2020, the Bankruptcy Court also entered an *Order Directing Surrender and Vacatur of Property* (the "Surrender Order") [ECF No. 59]. The Surrender Order, *inter alia*, properly directed the Debtor and its representatives to immediately surrender the Property to the Trustee free of any occupants and to deliver all keys to the Property to Mr. Rossi, and to immediately cause the locks at the Property to be changed. The Trustee promptly changed the locks in accordance with the Surrender Order.

15. By order entered on April 2, 2020, the Bankruptcy Court approved the Trustee's application to retain Tamerlain as her real estate broker to market and sell the Property.

16. On May 29, 2020, the Trustee filed a motion [ECF No. 74-1] (the "Sale Motion") seeking, *inter alia*, approval of procedures for submitting bids for the Property and authorizing the Trustee to conduct an auction of the Property.

17. On June 18, 2020, this Court entered an order (the "Procedures Order") [ECF No. 81] after a hearing at which the Debtor's third counsel in this case, Monte Chandler, Esq., appeared and requested an adjournment of the bid procedures hearing but did not otherwise object to any of the bid procedures. The Procedures Order, among other things, approved certain auction and sale procedures (the "Auction Procedures"), scheduled the Auction[5] for July 20, 2020 at 10:00 a.m., and scheduled a hearing for July 23, 2020 at 10:00 a.m. on the Sale Relief, including the Trustee's request to approve a sale to the bidder(s) submitting the highest or otherwise best offer for the Property as determined in accordance with the Auction Procedures.

18. Under the Court-approved Auction Procedures, only qualified bidders were

---

[5] Capitalized terms not defined herein shall have the meanings given in the Sale Motion.

permitted to participate at the Auction, which was conducted via Zoom.

19. The marketing of the Property was successful and yielded seven (7) qualified bidders (including Newell).

20. The Debtor never made the Trustee an offer for the Property.

21. Pursuant to the Procedures Order, the Trustee conducted the Auction of the Property on July 20, 2020.

22. The successful bidder at the Auction, after spirited bidding for approximately thirty (30) minutes, was Nasir Samdani ("Samdani"), who made the highest bid on the Property in the amount of $2,875,000.

23. On July 23, 2020, the Bankruptcy Court approved the sale of the Property to Samdani and entered the Sale Order [ECF No. 105].

24. Approximately a few days prior to the Auction, the Debtor replaced its counsel, Monte Chandler, Esq. (Debtor's third counsel in the Debtor's Case) with Karamvir Dahiya, Esq. (Debtor's fourth attorney in the Debtor's Case).

25. On August 5, 2020, the Debtor and certain unnamed members of the Debtor's Church (the "Members") filed a motion (the "Reconsideration Motion") to (i) rescind the Appointment Order, (ii) terminate the Trustee's appointment and restore the Debtor to the status of debtor-in-possession, and (iii) void the Trustee's Sale of the Property approved by the Sale Order. In support of the relief requested, the Debtor and Church members erroneously argued: (a) the Appointment Order substantially burdened the Members' religious freedom and exercises and violated the *Religious Freedom Restoration Act* of 1993 ("RFRA"), 107 Stat. 1488, codified at 42 U.S.C. § 2000bb et seq; the *Religious Land Use and Institutionalized Persons Act* of 2000 ("RLUIP"), 114 Stat. 803, 42 U.S.C. § 2000cc et seq; and the *Free Exercise Clause* and the

*Establishment Clause* of the First Amendment; (b) the Appointment Order was not authorized under the Bankruptcy Code; (c) the Trustee violated the Free Exercise Clause and Establishment Clause; (d) the Trustee violated RLUIP; (e) the Trustee's appointment should be terminated under Bankruptcy Code section 1105 and the Debtor restored to possession; and (f) the Sale of the Property should be set aside.

26. The Bankruptcy Court denied the Reconsideration Motion in its entirety and read its decision into the record. The transcript of the hearing on the Reconsideration Motion including this Court's decision, reflects this Court held, inter alia: the Appointment Order is a final order and may not be vacated under Federal Rule of Civil Procedure 60(b)(4); the Appointment Order was authorized by section 1104 of the Bankruptcy Code; neither the Appointment Order, nor the Trustee, violated the First Amendment, RFRA or RLUIP; no grounds exist to terminate the Trustee's appointment under Bankruptcy Code section 1105; and no basis exists to set aside the Sale Order.

27. On August 17, 2020, the Bankruptcy Court entered an order (the "August 17 Order") [ECF No. 116] denying the Reconsideration Motion and ordering, in paragraph 2 thereof, as follows:

> "The OSC Stay Provision is hereby vacated, and the Trustee is authorized, upon entry of this Order, to close on any sale of the Property authorized by the Court's July 23, 2020 order [ECF No. 105].")

28. The Debtor didn't appeal the Sale Order, and the Sale Order became a final order.

29. Instead of appealing the Sale Order, the Debtor and the Members, on September 10, 2020, filed the following documents in the U.S. District Court for the Southern District of New York: (1) a petition for writ of prohibition and mandamus (the "Petition") seeking an order (a) setting aside the Appointment Order, (b) voiding the Trustee's sale of the Property which was

{Client/086324/1/02290074.DOC;2 }    8

approved by the Sale Order, and (c) directing mandatory withdrawal of the reference of the Debtor's Chapter 11 case pursuant to 28 U.S.C. § 157(d); and (2) an Emergency Motion for injunctive relief. District Judge Alison Nathan denied the Petition and the Emergency Motion in an order entered on September 11, 2020 (the "September 11 Order").

30. On September 30, 2020, the Debtor and the Members filed, in the Second Circuit Court of Appeals, a Notice of Appeal of the September 11 Order, and a motion (the "Stay Motion") seeking a stay of the Debtor's Chapter 11 case or of the Trustee's transfer of a deed to the Property.

31. This Second Circuit Court denied the Stay Motion by order entered on October 5, 2020. See **Exhibit "B."**

32. The Trustee closed on the Sale of the Property to Samdani on October 6, 2020.

33. On October 20, 2020, the Trustee filed her Plan and Disclosure Statement. The Disclosure Statement stated, at pp. 11-12:

> On October 6, 2020, the Trustee closed on the Sale of the Property to Samdani. The final purchase price for the Property was $2,895,000. From the Sale proceeds, the Trustee paid Newell $2,000,000 on account of its judgment of foreclosure. The Trustee also paid her retained broker, Tamerlain Realty Corp. $57,500, representing 2% of Samdani's successful bid at the Auction. The Trustee delivered $50,000 of the Sale proceeds to the title company in escrow to cover various boiler violations levied against the Property by the City of New York. As such, the Trustee is currently holding $787,500 of the Sale proceeds of which $57,500 shall be paid to the co-broker. The remaining $730,000 shall be utilized to pay the Trustee's professional fees, statutory commissions and all other Allowed Claims. Any surplus remaining after payment of these Allowed Claims, shall be returned to the Debtor.

34. On December 1, 2020, the Debtor filed its Amended Schedule E/F, signed solely by Reverend Thompson, in a bad faith attempt to thwart the Trustee's omnibus claim objection and to benefit the insiders by asserting new, amended claims of the insiders, after the bar date. The Amended Schedule E/F manipulated the scheduled claims for the benefit of insiders, to the

prejudice of the other unsecured creditors in this case. The Debtor filed its Amended Schedule E/F in bad faith, causing the non-insider creditors' general unsecured claims to be dwarfed by the insiders' claims. At the January 27, 2021 adjourned hearing on the Trustee's objections to scheduled insider claims, the Court ruled it would expunge $3 million of insider claims listed in the amended schedules held by Reverend Thompson's entities 829 Burke Holding and Kyesss Corp., and that it would expunge the $195,200 amended scheduled claim of Minister Jeanette Brown.[6] The Court adjourned the hearing on the Trustee's objections to Reverend Thompson's $224,000 amended scheduled claim.

35. On December 7, 2020, the Debtor filed a second motion pursuant to Bankruptcy Code section 1105 to remove the Trustee and reinstate the Debtor as debtor-in-possession. [ECF No. 163]. This was the Debtor's second motion for such relief. The Trustee opposed that motion and, after a hearing on January 27, 2021, the Bankruptcy Court denied it for the second time.

## RELIEF REQUESTED

36. By this Motion, the Trustee respectfully requests the Court enter an order pursuant to Bankruptcy Code §§ 105(a), 305(a) and 1112(b), dismissing this Chapter 11 case and authorizing the Trustee to make certain distributions on the allowed unpaid claims as set forth in **Exhibit "C"** annexed hereto.

37. At this juncture in the Debtor's Chapter 11 case, the Trustee submits there is no reason for the Debtor's Chapter 11 case to continue, and dismissal of this case is in the best interest of creditors.

---

[6] Minister Brown's claim was expunged based upon her continued failure to comply with the Court order and to provide the Trustee with a password to access the Debtor's emails.

**BASIS FOR RELIEF**

A.    **This Court Should Dismiss the Debtor's Bankruptcy Case for "Cause."**

38.    Section 105(a) of the Bankruptcy Code provides, in pertinent part, that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a).

39.    Section 1112(b) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested . . . dismissal is not in the best interests of creditors and the estate, the court shall . . . dismiss a case under [chapter 11 of the Bankruptcy Code] . . . if the movant establishes cause." 11 U.S.C. § 1112(b)(1). The determination of cause and the decision to dismiss a Chapter 11 bankruptcy case pursuant to § 1112(b) rests within the sound discretion of the court. See In re Gucci, 174 B.R. 401 (Bankr. S.D.N.Y. 1994); see also In re Dark Horse Tavern, 189 B.R. 576 (Bankr. N.D.N.Y. 1995); In re Nugelt, Inc., 142 B.R. 661, 665 (Bankr. D. Del. 1992) (noting that "[c]ourts have wide latitude in determining whether cause exists to . . . dismiss" a chapter 11 bankruptcy case).

40.    Section 1112(b)(4) of the Bankruptcy Code identifies certain examples of "cause" for dismissal of a Chapter 11 case. A bankruptcy court, however, is not constrained by those enumerated examples and may find "cause" based on the facts and circumstances of the particular Chapter 11 case. See In re Nugelt, Inc., 142 B.R. at 665. The legislative history of § 1112(b) of the Bankruptcy Code also indicates that the list set forth in §§ 1112(b)(4)(A)-(P) of the Bankruptcy Code is nonexclusive, such that a bankruptcy court has the ability to dismiss a Chapter 11 case for any reason cognizable to its equity powers. See H.R. Rep. No. 595, 95th Cong., 2d. Sess. 405-06 (1978); see also Official Comm. of Unsecured Creditors v. Nucor Corp.

(In re SGL Carbon Corp.), 200 F.3d 154, 160 (3d Cir. 1999); Carolin Corp. v. Miller, 886 F.2d 693, 699 (4th Cir. 1993).

41. The Trustee submits that ample cause exists for the dismissal of this Chapter 11 case. Indeed, as noted above, the Trustee has sold the Property, the Debtor's only significant asset. The Debtor and its representatives, through their flagrant obstructionism and misconduct in this case, their efforts to thwart the Trustee from ending this case through a simple plan of liquidation, and their endless frivolous litigation, have acted contrary to the interests of non-insider creditors and depleted the estate, which now holds $345,163.51. Further, the Debtor represented at the last hearing, on January 27, 2021, that will not file a plan.

42. In order for general unsecured creditors with allowed claims to receive any distributions, this case should be dismissed. Continuing the case will only increase administrative expenses and further erode any potential recovery for unsecured creditors.

43. The Debtor has no prospect for reorganization as the Property was sold and it has no other significant asset. The Debtor also has a limited number of creditors. As such, dismissal is appropriate under the circumstances. See, In re Roma Group, Inc., 165 B.R. 779, 780 (S.D.N.Y. 1999) (lack of assets makes it unlikely that a plan could be confirmed and supports dismissal); In re Woodbrook Assoc., 19 F3d 312, 317 (7th Cir. 1994) (the very purpose of §1112(b) is to cut short the plan confirmation process where it is pointless).

44. Conversion of this case is not an option, as the Debtor does not consent to conversion. See 11 U.S.C. § 1112(c) ("The court may not convert a case under this chapter to a case under chapter 7 of this title if the debtor is a farmer or a corporation that is not a moneyed, business, or commercial corporation, unless the debtor requests such conversion.").

45. Based on the above, "cause" exists warranting dismissal of this bankruptcy case.

**B.    Alternatively, Dismissal of the Debtor's Chapter 11 Case is Warranted under § 305(a)(1) of the Bankruptcy Code**

46.    Alternatively, cause exists to dismiss this Chapter 11 case pursuant to § 305(a) of the Bankruptcy Code, which provides, in pertinent part:

> (a)    The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if —
>
> (1)    the interests of creditors and the debtor would be better served by such dismissal or suspension;

11. U.S.C. § 305(a).

47.    Courts have considered a wide range of factors when construing § 305(a), including, but not limited to:

> (i)    economy and efficiency of administration;
>
> (ii)    whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court;
>
> (iii)    whether federal proceedings are necessary to reach a just and equitable solution;
>
> (iv)    whether there is an alternative means of achieving an equitable distribution of assets;
>
> (v)    whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case;
>
> (vi)    whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and
>
> (vii)    the purpose for which bankruptcy jurisdiction has been sought.

See In re Crown Village Farm LLC, 415 B.R. 86, 96 (Bankr. D. Del. 2009); In re Century/ML Cable Venture, 294 B.R. 9, 38 (Bankr. S.D.N.Y 2003).

{Client/086324/1/02290074.DOC;2 }                13

48. However, "the exact factors to be considered and the weight to be given to each of them is highly sensitive to the facts of each individual case." In re Mazzocone, 200 B.R. 568, 575 (E.D. Pa 1996).

49. Dismissal of this chapter 11 case is warranted under § 305(a)(1). As demonstrated above, dismissal is in the best interest of creditors, and represents the least expensive and most efficient method for concluding the Debtor's case.

50. Generally, unless the Court, for cause, orders otherwise, the dismissal of a case "vacates any order, judgment, or transfer ordered under section 522(i)(1), 542(i)(1), 542, 550, or 553 of this title" and "revests the property of the estate in the entity in which such property was vested immediately before commencement of the estate under this title." See 11 U.S.C. § 349(b)(1)-(3). The Trustee respectfully submits that, due to the sale of the Property and the Debtor's lack of any other significant assets, cause exists for all orders, settlements, and stipulations entered in the Debtor's chapter 11 case to remain valid and in effect, and that such orders, settlements, and stipulations remaining valid and in effect is in the best interests of the estates and all parties in interest. The Trustee further requests the Court provide in any dismissal order that notwithstanding the dismissal of the Chapter 11 case, the Barton doctrine is still applicable.

## TRUSTEE'S REQUEST FOR AUTHORITY TO MAKE DISTRIBUTIONS AS SET FORTH BELOW

51. As set forth above, the Trustee is currently holding $345,163.51 in the estate.

52. The Court's order entered on December 29, 2020 [ECF No. 177] (annexed hereto as **Exhibit "A"**) allowed certain nonpriority unsecured claims totaling $293,386.00. In addition to these claims, the recently amended schedules lists Reverend Thompson as holding a $224,000 unsecured claim. At the hearing held on January 27, 2021, the Trustee indicated a willingness to

allow Reverend Thompson's unsecured claim if the Debtor's Chapter 11 case was dismissed. Allowing Reverend Thompson's claim will increase the total allowed unsecured claims to $517,386. The Trustee hereby requests authorization to make distributions to such creditors in the amounts set forth on **Exhibit "C"** hereto in the column "Proposed Distribution.[7]"

53. The Trustee's counsel, Tarter Krinsky & Drogin LLP ("TKD"), filed a first interim fee application dated November 16, 2020 [ECF No. 143] requesting fees of $450,291 for the period January 28, 2020 through November 12, 2020 (the "Interim Application"). By order dated December 8, 2020, TKD was awarded 80% of its fees and 100% of its disbursements as an interim award. TKD has filed a final application seeking total fees incurred in the sum of $540,000 (less payments received of $360,232). If the Court awards TKD all of the fees requested in the final application, TKD will be entitled to receive an additional $179,768 consisting of the unpaid 20% from the Interim Application ($90,000) plus fees incurred from November 12, 2020 through February 24, 2021 ($89,768). This would leave $165,395.51 in the estate. The Trustee's statutory commissions on the distributions, assuming the Court awards the full statutory commissions set forth in section 326 of the Bankruptcy Code, is $108,000. See **Exhibit "D."** This would leave $57,395.51 remaining in the estate. Finally, the Trustee's accountant is seeking final fees of $23,834.03 less payments received of $15,621 leaving a balance in the estate of $49,182.48. Since this is a Chapter 11 case, the Trustee is obligated to pay the fees imposed under 28 U.S.C.§ 1930. Based on the distributions made to creditors and professionals, the estate is obligated to pay the U.S. Trustee $24,981.97 for the fourth quarter of 2020 plus $4,875 for the first quarter of 2021 for a total amount of $29,856.97. Additionally, the Trustee agreed to pay up to $20,000 from the estate to pay for the Debtor to hire a mover to

---

[7] As further detailed below, the proposed distribution to holders of allowed unsecured claim will be materially affected by whether Reverend Thompson's claim is allowed or disallowed.

remove and store its personal property still located at the Property. After payment of the U.S. Trustee's fees, this would leave only $19,325.51 in the estate. As such, if the Trustee utilizes the remaining monies to pay for moving and storage costs, there would be no distribution to the unsecured creditors.

54. In order to materially increase the distribution to holders of allowed unsecured claims, the Trustee proposes to reduce her legal fees and commissions **only** on condition the case is dismissed, as follows: Rather than $179,768 (20% from the Interim Application) plus $89,768 in additional fees incurred since the Interim Application, TKD will accept $90,000 for the balance of its fees thereby waiving approximately $90,000 of total fees. The Trustee will accept $70,000 in commissions thereby reducing her commissions by $38,000. This will result in additional $128,000 to pay unsecured creditors. As such, the Trustee proposes to distribute $130,000 to holders of allowed unsecured claims. This will result in an approximate 25% distribution to holders of allowed unsecured claims if Reverend Thompson's $224,000 claim is allowed. If Reverend Thompson's claim is disallowed, this will result in an approximate 44% distribution to holders of allowed unsecured claims. **Exhibit "C"** annexed hereto reflects this proposed distribution. The Trustee proposes to issue distribution checks and file proof of same on the docket and the dismissal order would be entered after the distributions are mailed to holders of allowed unsecured claims as reflected on Exhibit C.

## NOTICE

55. In compliance with Bankruptcy Rule 2002(a)(4), the Trustee shall serve a copy of this Motion upon (i) the United States Trustee for the Southern District of New York; (ii) any creditor who timely filed a proof of claim prior to the Bar Date or is listed in the Debtor's Schedules of Assets and Liabilities as neither disputed, contingent or unliquidated; and (iii) all

parties who served and filed a notice of appearance in this case.

## PREVIOUS MOTION

56. No previous motion for the relief sought herein has been made to this or any other court.

**WHEREFORE**, the Trustee respectfully requests the Court enter an order dismissing the Debtor's Chapter 11 case, authorizing the Trustee to make the distributions set forth on Schedules A and B hereto and grant the Trustee such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 29, 2021

**TARTER KRINSKY & DROGIN LLP**
*Attorneys for Deborah J. Piazza,*
*as Chapter 11 Trustee*

By: /s/ Scott S. Markowitz
Scott S. Markowitz, Esq.
Jill Makower, Esq.
1350 Broadway, 11th Floor
New York, New York 10018
(212) 216-8000
smarkowitz@tarterkrinsky.com
jmakower@tarterkrinsky.com